**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:21-cv-20706-GAYLES**

**MEUDY ALBÁN OSIO in her personal**
**capacity and in her capacity as the**
**personal representative of the Estate of**
**FERNANDO ALBERTO ALBÁN,**
**FERNANDO ALBÁN OSIO, and**
**MARIA FERNANDA ALBÁN OSIO**,

      Plaintiffs,

v.

**NICOLAS MADURO MOROS,**
**FUERZAS ARMADA REVOLUCIONARIAS**
**DE COLOMBIA a.k.a. FARC, CARTEL**
**OF THE SUNS a.k.a. Cartel de los Soles,**
**VLADIMIR PADRINO LOPEZ,**
**MAIKEL JOSE MORENO PEREZ,**
**NESTOR LUIS REVEROL TORRES, and**
**TAREK WILLIAM SAAB**,

      Defendants.

_____/

**<u>ORDER</u>**

      **THIS CAUSE** comes before the Court on Plaintiffs' Motion for Alternative Service Under

Rule 4(f)(3) (the "Motion") [ECF No. 17]. The Court has reviewed the Motion and the record and

is otherwise fully advised. For the reasons that follow, the Motion is denied without prejudice.

**BACKGROUND**

      On February 22, 2021, Plaintiffs filed their Complaint seeking damages from Defendants

for allegedly kidnapping, torturing, and murdering Fernando Alberto Albán. [ECF No. 1 at 4]. In

their Motion, Plaintiffs seek leave to serve Defendants Nicolas Maduro Moros, Vladimir Padrino

Lopez, Maikel Jose Moreno Perez, Nestor Luis Reverol Torres, and Tarek William Saab (collectively, the "Individual Defendants") via e-mail, text message, or social media (including Facebook and Twitter), pursuant to Federal Rule of Civil Procedure 4(f)(3). [ECF No. 17 at 1]. Within that electronic service, Plaintiffs intend to include a weblink to a service website where the Complaint, Summons, and other docket entries will be posted. *Id.* at 11 n.15. Plaintiffs note that the Individual Defendants, who are citizens and residents of Venezuela, are "international pariahs and fugitives from justice who pride themselves on flouting U.S. authority." *Id.* at 2. Plaintiffs argue that serving the Individual Defendants, "whether through the Hague Convention or any other means of service that, like the Hague Convention, requires facilitation by someone present in Venezuela, would expose [the process server] to a significant risk of punitive and retaliatory measures by the Maduro regime." *Id.* at 3.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 4(f)(3), an individual may be served outside of the United States: (1) "by any internationally agreed means of service that is reasonably calculated to give notice," such as the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"); (2) "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice;" or (3) "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1)–(3). "If a party cannot, or chooses not to, serve a defendant abroad using one of the methods specified in Rule 4(f)(1) and (2), the party may accomplish service" using the third method. *De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 750 (11th Cir. 2016). However, "before a court may exercise personal jurisdiction over a defendant . . . there must be authorization for service of summons on

2

the defendant." *Id.* at 748–49 (quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)); *see also id.* at 749 ("[A]n individual or entity is not obliged to engage in litigation unless officially notified of the action . . . under a court's authority, by formal process." (quoting *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 (11th Cir. 2003))).

While "compliance with the [Hague] Convention is mandatory in all cases to which it applies," *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) (citation omitted), the Court is permitted to order alternate means of service as long as the signatory nation has not expressly objected to those means, *see Codigo Music, LLC v. Televisa S.A.*, No. 15-CIV-21737, 2017 WL 4346968, at *7 (S.D. Fla. Sep. 29, 2017). "[T]he decision to issue an order allowing service by alternate means lies *solely within the discretion of the district court.*" *Chanel, Inc. v. Lin*, No. 08-CIV-23490, 2009 WL 1034627, at *1 (S.D. Fla. Apr. 16, 2009)  (citations omitted); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) ("[T]he Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond."). A district court examines three factors in determining whether to exercise its discretion and permit alternative service of process:

> First, the Court must be satisfied that the proposed method of service is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Second, the Court must determine if the proposed method of service minimizes offense to foreign law. Third, the Court must determine if the facts and circumstances warrant exercise of its discretion under Fed. R. Civ. P. 4(f).

*Tracfone Wireless, Inc. v. Hernandez*, 126 F. Supp. 3d 1357, 1364 (S.D. Fla. 2015) (citations and internal quotation marks omitted). "The alternative method of service, however, must comport

with constitutional notions [of] due process." *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 620 (S.D. Fla. 2011).

Courts are generally "reluctant to use their discretion to authorize alternate service when Hague Convention service is available." *Int'l Designs Corp., LLC v. Qingdao SeaForest Hair Prods. Co., Ltd.*, No. 17-CIV-60431, 2018 WL 2364297, at *2 (S.D. Fla. Jan. 4, 2018). Typically, district courts in the Eleventh Circuit permit alternate service "only where the defendant's foreign address is unknown; the defendant has successfully evaded service; failure to permit alternate service will result in unduly long delays in litigation; or where attempted Hague Convention service has failed." *Id.* at *3 (citing *Codigo Music*, 2017 WL 4346968, at *10 (denying motion for alternate service where plaintiffs knew defendant's address, there was no urgency, and defendant was not evading service)); *see also Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Inc.*, No. 05-CIV-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (upholding decision to authorize service by local counsel because, in part, the plaintiffs were unsuccessful at perfecting service under Rule 4(f)(1) for over a year). Though such requirements are not expressly provided for in Rule 4(f)(3), they are worthy of consideration "to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." *Ryan v. Brunswick Corp.*, No. 02-CIV-0133E(F), 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002).

## DISCUSSION

At this time, the Court does not find that the circumstances of this case warrant authorizing service of the Individual Defendants via e-mail, text message, social media, or weblink. The Court initially notes that "the Hague Convention only applies when 'transmittal abroad . . . is required as a necessary part of service.'" *Sucesores de Done Carlos Nunez y Dona Pura Galves, Inc. v. Société Générale, S.A.*, No. 19-CIV-22842, 2019 WL 5963830, at *1 (S.D. Fla. Nov. 13, 2019) (quoting

4

*Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 707). Additionally, Article 10 of the Hague Convention allows judicial documents to be sent "by postal channels, directly to persons abroad," provided that the signatory state receiving the documents does not object. Hague Convention, art. 10(a). Venezuela is a signatory to the Hague Convention.[1] However, Venezuela has objected to service by mail under Article 10 of the Hague Convention.[2]

Because service on the Individual Defendants would require transmittal of the Complaint and Summons to Venezuela, the Hague Convention applies. At this time, the Court does not have a sufficient basis to authorize alternative service on the Individual Defendants. Plaintiffs do not allege that the Individual Defendants' locations are unknown or that they have successfully evaded service in this case. Although Plaintiffs claim that service papers and other packages from the United States to Venezuela through the Ministry of the People's Power for External Affairs have lingered for months before being destroyed, *see* [ECF No. 17 at 4], the Court cannot rely solely on these general statements to authorize the alternative service methods requested. Moreover, Plaintiffs have not shown that they attempted service under the Hague Convention through the Ministry of the People's Power for External Affairs or that any such attempts failed.

The Court also has several concerns about the reliability of serving the Individual Defendants via e-mail, text message, social media outlets, and weblinks. First, Plaintiffs state that messages to the Individual Defendants via e-mail, text message, and/or social media outlets "go

---

[1] *See Statute of the Hague Conference on Private International Law*, Hague Convention on Private Int'l Law (HCCH), https://www.hcch.net/en/instruments/conventions/status-table/?cid=29 (last updated Mar. 3, 2021) (Venezuela became a signatory to the Hague Convention on July 25, 1979).

[2] *See* Bureau of Consular Affs., *Venezuela Judicial Assistance Country Information*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/VenezuelaBolivarianRepublicof.html (last updated Nov. 15, 2013) (select "Service of Process") (noting that "Venezuela formally objected to service under Article 10, and does not permit service via postal channels."); *Koch Mins. Sàrl v. Bolivarian Republic of Venezuela*, --- F. Supp. 3 ---, No. 17-CIV-2559, 2020 WL 7646764, at *8 (D.D.C. Dec. 23, 2020) ("Article 10 also allows for service by alternative means, such as service by postal channels, *directly* to persons abroad provided the State of destination does not object. Venezuela, however, objects to direct service upon parties by mail." (citations, alterations, and internal quotation marks omitted)).

through and do not bounce back." *See* [ECF No. 17-1]. However, this does not mean that the e-mail accounts, social media accounts, or phone numbers are actively monitored or that the messages or weblinks will be opened and read. *Cf. Commodity Futures Trading Comm'n v. Fingerhut*, No. 20-CIV-21887, 2020 WL 4499198, at *2–3 (S.D. Fla. May 29, 2020) (denying service via e-mail where the plaintiff failed to proffer evidence that the purported owner of the e-mail account had "used the alleged email address since 2017.").

Second, Plaintiffs state that Defendant "Maduro tweets original posts and retweets several times a day, nearly every day" and that "[h]e can be reached by direct private message by Facebook Messenger . . . ." [ECF No. 17 at 5]. Similarly, Plaintiffs state that the other Individual Defendants "are also actively engaged in social media, and can be reached by private, direct messages through their Twitter, Facebook and/or email addresses." *Id.* These general statements alone are insufficient to convince the Court that the Individual Defendants are themselves actively monitoring or posting on these accounts or, again, that they will receive, open, and read messages or weblinks sent to the accounts. In *Strange v. Islamic Republic of Iran*, a case in which the plaintiffs there sought to serve Hamid Karzai—the former President of the Islamic Republic of Afghanistan—via Twitter, the court noted that "numerous tweets . . . sent from Defendant Karzai's account by an unknown individual is not sufficient to establish [his] personal presence on Twitter." Case No. 14-CIV-435 (CKK), [ECF No. 122 at 3] (D.D.C. June 4, 2019). Moreover, "due to cyber-security concerns, Defendant Karzai may well have been reluctant to click on a link sent to him by a stranger." *Id.* at 4. Ultimately, the court there did not permit service via Twitter, even after the plaintiffs unsuccessfully attempted service through various other means. *Id.* at 1–2, 6.

Third, Plaintiffs rely on case law where district courts allowed service via alternative means—such as e-mail or social media—in patently different circumstances.[3] Notably, nearly all the plaintiffs first attempted service through traditional methods before seeking leave from the court to attempt service through alternative means. Unlike the facts presented here, district courts have also permitted service via electronic means such as e-mail and messages to social media accounts where the defendants' whereabouts were unknown or were exclusively digital in nature. *See, e.g.*, *ABS-CBN Corporation v. aceshowbiz.me*, Case No. 18-CIV-61553, [ECF No. 10 at 3] (S.D. Fla. July 17, 2018); *ABS-CBN Corp. v. cinesilip.su*, Case No. 18-CIV-62942, [ECF No. 9 at 1] (S.D. Fla. Dec. 6, 2018) ("Defendants have established Internet-based businesses and utilize electronic means as reliable forms of contact.").

Additionally, Plaintiffs' reliance on *Federal Trade Commission v. PCCare247 Inc.* is misplaced because the court there noted that "if the [plaintiff] were proposing to serve defendants *only* by means of Facebook, as opposed to using Facebook as a supplemental means of service, a substantial question would arise whether that service comports with due process." *Cf.* No. 12 Civ. 7189(PAE), 2013 WL 841037, at *5 (S.D.N.Y. Mar. 7, 2013) (permitting service via Facebook "to backstop the service upon each defendant at his, or its, known email address," and "not as the sole method of service . . . ."); *see also Fortunato v. Chase Bank USA, N.A.*, No. 11 Civ. 6608(JFK), 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012) (noting that "anyone can make a Facebook profile using real, fake, or incomplete information, and thus, there is no way for the Court to confirm" whether a Facebook profile belongs to the defendant to be served.). Similarly,

---

[3] The Court acknowledges that, in certain instances, district courts in the Eleventh Circuit have authorized service via e-mail pursuant to Fed. R. Civ. P. 4(f)(3). *See, e.g.*, *Seaboard Marine Ltd., Inc. v. Magnum Freight Corp.*, No. 17-CIV-21815, 2017 WL 7796153, at *2 (S.D. Fla. Sept. 21, 2017) (permitting service via e-mail where it appeared the defendant had been evading service); *Aliaga*, 272 F.R.D. at 620–21 (authorizing service via e-mail and local counsel where the plaintiff attempted service by other means and confirmed the defendant's e-mail addresses). As discussed, the circumstances in this case do not warrant the same.

7

in *St. Francis Assisi v. Kuwait Finance House*, the magistrate judge allowed service via Twitter to the individual defendant who "used the social-media platform to fundraise large sums of money for terrorist organizations by providing bank-account numbers to make donations," which was the subject of the lawsuit. No. 3:16-CIV-3240-LB, 2016 WL 5725002, at *1 (N.D. Cal. Sept. 30, 2016). However, the plaintiff there was unable to determine the individual defendant's whereabouts and the State of Kuwait was not a signatory to the Hague Convention. *Id.*

Here, Plaintiffs seek to serve three of the Individual Defendants *only* through social media, whether Facebook or Twitter, which raises due process concerns. *See PCCare247 Inc.*, 2013 WL 841037, at *5. Plaintiffs fair no better as to Defendants Maduro and Moreno Perez, whom they seek to serve through their social media accounts and either e-mail or text message. While courts permit service via e-mail in certain instances, courts allowing service via text message—albeit in other circuits—arose in distinctly different circumstances. *See, e.g.*, *CKR Law LLP v. Anderson Invs. Int'l, LLC*, --- F. Supp. 3d ---, 20 Civ. 7937, 2021 WL 935843, at *3–4 (S.D.N.Y. Mar. 12, 2021) (allowing service via two e-mail addresses and Whatsapp message after service by mail failed and contact was established with the defendant's corporate officer); *United States v. Fleming*, No. 20-CIV-1109-DWD, 2021 WL 1036075, at *1 (S.D. Ill. Mar. 11, 2021) (allowing service via e-mail and text message "at the telephone number where counsel reached" the defendant after the government "clearly establish[d] that traditional service methods [were] impractical . . . ."); *L.J. Star Incorp. v. Steel & O'Brien Mfg., Inc.*, No. 2:19-CIV-4527, 2020 WL 1957155, at *5–6 (S.D. Ohio Apr. 23, 2020) (allowing service via e-mail and WhatsApp message where the Hague Convention did not apply and the plaintiff made multiple attempts to contact the defendant). Without more, the Court is unconvinced that service via e-mail, text message, social

media outlets, or a weblink would be appropriate at this time to apprise the Individual Defendants of this litigation.

**CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** Plaintiffs' Motion for Alternative Service Under Rule 4(f)(3), [ECF No. 17], is **DENIED without prejudice**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 21st day of April, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE