IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:21-cv-20706-DPG

MEUDY ALBÁN OSIO in her personal capacity
And in her capacity as the personal representative
of the Estate of FERNANDO ALBERTO ALBÁN,
FERNANDO ALBÁN OSIO, and MARIA
FERNANDA ALBÁN OSIO,

   Plaintiffs,

vs.

NICOLAS MADURO MOROS,
FUERZAS ARMADA REVOLUCIONARIAS
DE COLOMBIA ("FARC");  THE CARTEL OF
THE SUNS A.K.A. CARTEL DE LOS SOLES;
VLADIMIR PADRINO LOPEZ; MAIKEL
JOSE MORENO PEREZ; NESTOR LUIS
REVEROL TORRES; and TAREK WILLIAM
SAAB

   Defendants,

_____/

## PLAINTIFFS' RENEWED MOTION FOR ALTERNATIVE SERVICE PURSUANT TO RULE 4(f)(3) AND PROOF OF SERVICE ON CERTAIN INDIVIDUAL DEFENDANTS PURSUANT TO RULE 4(l)

   Plaintiffs, by and through counsel, submit this (1) renewed motion for alternative service on certain individual defendants under Rule 4(f)(3), and (2) proof of service on several individual defendants (Vladimir Padrino Lopez, Maikel Jose Moreno Perez, and Tarek William Saab) under Rule 4(l)(2)(B).

1

## INTRODUCTION

In this lawsuit, Mr. Albán's estate and family sue Venezuelan dictator Nicolas Maduro and the Individual Defendants[1] who orchestrated Mr. Albán's brutal kidnapping torture and murder. On March 5, 2021, Plaintiffs, concerned that Maduro and the Individual Defendants—international pariahs who have been indicted or sanctioned by the United States and who pride themselves on flouting U.S authority—would evade conventional service, moved this Court to authorize alternative service.  ECF No. 17.

On April 21, 2021, this Court denied Plaintiffs' motion for alternative service without prejudice, directing the Plaintiffs to first attempt service through the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, T.I.A.S. No. 6638, 20 U.S.T. 361, more commonly known as the "Hague Convention."  ECF No. 27.  The April 21 order expressed concern that Plaintiffs' proposed methods of electronic service (e.g., text, WhatsApp, direct messages over Twitter and Facebook) might not reach Maduro and the Individual Defendants.  *Id*.

As set forth below, Plaintiffs have taken heed of this Court's guidance.  ***First***, Plaintiffs diligently sought to achieve Hague Convention service for the last six months, only to be thwarted by the Venezuelan Central Authority.[2]  Choosing to enable Maduro's efforts to avoid accountability, the Venezuelan Central Authority—under the control of Maduro—refused to accept Plaintiffs' service materials, violating Venezuela's treaty obligations under the Hague Convention.  ***Second***, Plaintiffs successfully effectuated service under Rule 4(f)(2)(A) by serving

---

[1] Maduro, Vladimir Padrino Lopez, Maikel Jose Moreno Perez, Tarek William Saab, and Nestor Luis Reverol Torres.

[2] The Central Authority in Venezuela is the Ministerio del Poder Popular para Relaciones Exteriores (Ministry of People's Power of Foreign Affairs Directorate of the Foreign Consular Service Office of Consular Affairs).

three of the Individual Defendants in a manner authorized by Venezuelan law, and herein submit proof of such service.  ***Third***, Plaintiffs, through this motion, seek leave for Rule 4(f)(3) alternative service on the Defendants who were not already served under Rule 4(f)(2)(A).  In this renewed motion, Plaintiffs have added additional service methods and have retained an expert on the Maduro Regime, who has provided guidance to ensure that the proposed methods are highly likely to reach the Individual Defendants.[3]  ***Finally***, in the event that the Court has any remaining service questions, Plaintiffs respectfully request a status conference so that Plaintiffs can address any questions.

## FACTUAL BACKGROUND

I.   **For the last six months, Plaintiffs have diligently sought to serve the Individual Defendants through the Hague Convention.**

   a.  **Plaintiffs attempted Hague Convention service through the Maduro Regime, but Venezuela breached the Hague Convention by refusing to assist.**

   Plaintiffs retained Maria J. Gutierrez to attempt Hague Convention service on the Individual Defendants.  Ms. Gutierrez is a Certified Process Server in Miami-Dade; she has been licensed since March 9, 2001, under CPS #1286, and is the founder of Judicial Process & Support, Inc., a company that specializes in international service of process.  *See* Second Decl. of Maria Gutierrez in Support of Plaintiffs' Motion for Alternative Service of Process Pursuant to Rule 4(f)(3), at ¶¶ 1-7 (attached as Exhibit 1).  Accordingly, Ms. Gutierrez completed the necessary materials ("Service Packages") for service under the Hague Convention.  *Id.* ¶ 8.

   To complete Hague Convention service, the Service Packages must be delivered to the designated "Central Authority" in Venezuela.  *Id.* ¶ 9; *see also* Hague Convention at Art. 2 ("Each

---

[3] In an abundance of caution, Plaintiffs also seek leave for Rule 4(f)(3) alternative service on the Defendants who were served under Rule 4(f)(2)(A).

Contracting State shall designate a Central Authority which **will undertake to receive requests** for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6.") (emphasis added).  On July 26, 2021, Ms. Gutierrez sent the service packages to the Central Authority designated by Venezuela and controlled by the Maduro regime.  *Id.* ¶ 10. But the Central Authority, in violation of Art. 2 of the Hague Convention, refused to accept the Service Packages, and in so doing, explained that the Central Authority would not accept any service packages coming from the United States.  *Id.* ¶¶ 12-13.

Indeed, it is currently the policy of the Maduro regime not to recognize the legitimacy of the US judicial system and not to cooperate with Hague Service convention requests from the United States.   As Mr. Fonseca—the director of the Institute for Public Policy at Florida International University's Steven J. Green School of International and Public Affairs and a leading expert on Venezuela, *see* Declaration of Brian P. Fonseca, at ¶¶ 2-11 ("Fonseca Decl.", attached as Exhibit 2)—explains: "Venezuela's refusal to accept Plaintiffs' Hague Service Convention submission is consistent with current Venezuelan efforts to protest the legitimacy of U.S. courts," and moreover, the central authority responsible for Hague Service in Venezuela "which answers to Maduro, furthers that policy by blocking efforts to bring Maduro and other members of his government to justice."  *See id.* ¶ 13.

b. **Plaintiffs sought to effectuate service through the Venezuelan government of Juan Guaidó, which was supportive but not in a position to help.**

The United States does not recognize the Maduro regime as the legitimate government of Venezuela; rather, the United States recognizes the opposition government led by interim President Juan Guaidó.  *See* U.S. Dep't of State, U.S. Relations with Venezuela (July 6, 2021), available at https://www.state.gov/u-s-relations-with-venezuela/.  ("The United States recognizes the Interim

President Juan Guaidó and considers the 2015 democratically-elected Venezuela National Assembly, which he currently leads, to be the only legitimate federal institution [in Venezuela]").

U.S. courts, deferring to the U.S. State Department, also treat the Guaidó government as the only legitimate executive branch of the Venezuelan government. *See, e.g., Caballero v. Fuerzas Armadas Revolucionarias de Colombia,* 2021 WL 1884110, at *6 (W.D.N.Y. May 11, 2021) ("Under the political question doctrine, at least as far as the United States courts are concerned, the Guiadó government is the only legitimate government of Venezuela"); *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 2019 WL 2185040, at *5 (D.D.C. May 21, 2019) ("because the United States has recognized Juan Guaidó as the Interim President of Venezuela, the Court will recognize the Guaidó government lawyers as the appropriate representatives of Venezuela").

Accordingly, Plaintiffs engaged in extensive discussions with the Guaidó government to determine whether the Guaidó government would be willing and able to effectuate service in accordance with the Hague Convention, e.g., to designate its own Central Authority and to effectuate service through the newly designated Central Authority. *See* Declaration of Alex C. Lakatos ("Lakatos Decl."), at ¶ 2 (attached as Exhibit 3). The Guaidó government expressed support, but said that because it is not physically located in Venezuela, it would not be able to effectuate Hague Convention service through its own employees. *Id.*

## MEMORANDUM OF LAW

### I.    Plaintiffs have served three Individual Defendants pursuant to Rule 4(f)(2)(A).

Because Plaintiffs were unable to achieve service through the Hague Convention, and mindful of this Court's encouragement that Plaintiffs exhaust other service mechanisms before seeking leave of court to complete alternative service pursuant to Rule 4(f)(3), Plaintiffs next initiated service in accordance with Rule 4(f)(2)(A). That rule permits service "as prescribed by

the foreign country's law for service in that country in an action in its courts of general jurisdiction." *Id.* Specifically, the courts of general jurisdiction in Venezuela authorize service by the Instituto Postal Telegráfico de Venezuela ("Ipostel"), the Venezuelan public regulatory organization of the national postal sector, provider of postal, logistic and printing services. *See* Declaration of Venezuela Legal Expert ("Venezuela Legal Expert Decl.") (attached as Exhibit 4) at ¶¶ 15-19 & n.4.[4]

In August and September 2021, Plaintiffs initiated service through Ipostel as to all the Individual Defendants. Venezuela Legal Expert Decl. ¶ 20. Each service package contained the Summons, Complaint, and Civil Cover Sheet, in both English and Spanish. *Id.* ¶ 20. Ipostel completed delivery of the service papers to Defendants Saab, Padrino Lopez, and Moreno Perez. *Id.* ¶ 21, and Exhibits A, B, and C thereto. For two of the Defendants, Maduro and Reverol, Ipostel returned the services packages to the original branch that had accepted them for delivery to Maduro and Reverol. *Id.* ¶ 22.

Ordinarily, Maduro receives deliveries via Ipostel at his home (the Presidential Palace), where Plaintiffs sent the summons and complaint. *Id.* Likewise, Reverol ordinarily receives deliveries via Ipostel at his work address, where Plaintiffs sent the service packages. *Id.* ¶ 22. The return of the Maduro and Reverol service packages by Ipostel—which is controlled by Maduro—appears to reflect Defendants' efforts to evade service of process. Venezuela Legal Expert Decl. ¶ 22. Mr. Fonseca further explains:

> The most likely explanation for why Plaintiffs' initial service packages were delivered to Padrino Lopez, Moreno Perez, and Saab, and why the later service packages to Maduro and Reverol were returned to sender, is that the

---

[4] Because the Venezuela legal expert resides in Venezuela and would face a grave risk of retaliation if Defendants were to learn his identity, Plaintiffs redacted from the declaration the expert's name and any potentially identifying information. If the Court has any questions about the declaration, Plaintiffs can provide more information *in camera*.

6

> Padrino Lopez, Moreno Perez, and Saab warned Maduro and Reverol about the content of the mailings, leading Maduro and Reverol to cause the packages to be returned. Based on my experience, the Individual Defendants communicate with one another directly and frequently. The Maduro regime is characterized by a close inner circle—of which all the Individual Defendants are members—that regularly communicate with one another and share intelligence.

Fonseca Decl. ¶ 14.

As for Defendants Saab, Padrino Lopez, and Maikel Jose Moreno Perez, service by Ipostel complies fully with Rule 4(f)(2)(A), which provides in relevant part:

> (f) SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States: . . .
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction.

The requirements set forth in Rule 4(f)(2)(A) are satisfied here.

**First**, service pursuant to Fed. R. Civ. P. Rule 4(f)(2) is permissible where, as here, "there is no internationally agreed means" of service.   In determining whether there exists an "internationally agreed means" of service, courts take a pragmatic approach, determining that no internationally agreed means exists where the recipient country declines to honor the Hague Convention.  *See e.g., Sec. & Exch. Comm'n v. Dubovoy*, 2016 WL 7217607, at *2 (D.N.J. 2016) ("although Russia is a signatory to the Hague Convention, Russia has adopted the policy of not cooperating with the United States on civil and commercial judicial matters . . . . Because of this, it is fair to conclude that there are no internationally agreed means of service for those cases in

which the defendant being served resides in Russia"); *The NOCO Co. v. Khaustov*, 2019 WL 4218637, at *2 (N.D. Ohio 2019) (same).

Courts throughout the country agree that plaintiffs may resort to alternative or substitute service where, as here, the recipient country's Central Authority refuses to accept service, effectively reneging on the "international[] agree[ment]" embodied by the Hague Convention. *See, e.g.*, *Henry F. Teichmann, Inc. v. Caspian Flat Glass OJSC*, 2013 WL 1644808, at *1-2 (W.D. Pa. Apr. 16, 2013) (approving alternative service by email because "the Central Authority of the Russian Federation denies all requests for service of process originating from the United States"); *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 514 (S.D.N.Y. 2013) (authorizing alternative service "notwithstanding China's refusal to effect service under the Hague Convention…"); *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, 250 F. Supp. 3d 296, 306 (W.D. Ky. 2017) (allowing substitute service where the plaintiff "has established that Russia's Central Authority would not deliver any process sent to it").

In this case, the Maduro regime in Venezuela has refused to honor the Hague Convention. *See* Gutierrez Dec. ¶¶ 12-14.  Moreover, as noted above, this is part of a broader policy of non-cooperation with US-originated Hague Convention requests by the Maduro regime in Venezuela. *See* Fonseca Decl. ¶ 13.  As such, there is no "internationally agreed" means of service to which Plaintiffs might resort.

In addition, there is presently no "internationally agreed" means for a United States plaintiff to serve a Venezuelan defendant because the legitimate government of Venezuela as recognized by the U.S. State Department—*i.e.*, the Guaidó government, *see supra* at 4-5—has yet to designate a Central Authority for purposes of Hague Convention service.  The Central Authority in Venezuela is controlled by the Maduro Regime and is not an instrument of, or approved by, the

legitimate government led by President Guaidó.  Fonseca Decl. ¶ 13.  As such, it is at best uncertain that this Court could determine that service through the Ministry is valid.  *See e.g., Comparelli v. Bolivarian Republic of Venezuela,* Case No. 1:14-cv-24414-KMW, at ECF No. 192 (S.D. Fla. Feb. 9, 2021) (declining to recognize the legitimacy of the Maduro regime, and striking all filings in the putative name of defendant Bolivarian Republic of Venezuela because the filings were made by counsel engaged and controlled by the Maduro regime); Order, *Rusoro Mining Ltd. v. Bolivarian Republic of Venez.*, No. 18-7044, Doc. No. 1785518 (D.C. Cir. May 1, 2019) (holding that as between the Guaidó government and the Maduro "government," the court must defer to State Department and recognize the validity of only the Guaidó government).  For this reason as well, there is no internationally agreed means of service for individuals in Venezuela.

*Second*, under 4(f)(2)(A), courts may approve service by means of a country's domestic delivery channel, such as Venezuela's Ipostel, where  (as here) the service comports with local law in the recipient country.  *See, e.g., Modern Computer Corp. v. Ma,* 862 F. Supp. 938, 946 (E.D.N.Y. 1994) (allowing service via mail under Rule 4(f)(2)(A) where the plaintiff submitted an affidavit attesting that service via mail complied with the law of the recipient country); *R. Griggs Grp. Ltd. v. Filanto Spa*, 920 F. Supp. 1100, 1103 (D. Nev. 1996) ("Thus, service by mail is proper if allowed either by internal Italian law [as per Rule 4(f)(2)(A)] or by provisions of the Hague Convention itself."); *Am. Infertility of N.Y. P.C. v. Deep Blue Health New Zealand Ltd.,* 2019 WL 10786023, at *4 (S.D.N.Y. Dec. 30, 2019) ("Plaintiff's service upon Defendant was procedurally proper" where it complied with the law for service in the defendant's "country in an action in its courts of general jurisdiction") (citing Rule 4(f)(2)(A)); *Retractable Techs., Inc. v. Occupational & Med. Innovations, Ltd.,* 253 F.R.D. 404, 407 (E.D. Tex. 2008) (service upon defendant was deemed sufficient after considering "the standards of Rule 4(f) and its incorporation

9

of relevant Australian law"); *Fernandez v. Univan Leasing,* 790 N.Y.S.2d 155, 155 (2005) ("the Hague Convention permits service by any method permitted by the internal laws of the country in which service is being made… In [] Canada, service by mail is a permissible method.").  Here, service by Ipostel is authorized under Venezuela law.  *See* Venezuela Legal Expert Decl. ¶¶ 15-19 & n.4.

**Finally**, under Federal Rule of Civil Procedure 4(l)(2)(B), when service is effectuated pursuant to Federal Rule of Civil Procedure 4(f)(2), service may be proved "by other evidence satisfying the court that summons and complaint were delivered to the addressee."  Fed. R. Civ. P. 4(l)(2)(B).  In this instance, Ipostel receipts demonstrate that the summons and complaint were delivered to the three Individual Defendants.  Venezuela Legal Expert Decl. ¶ 21, and Exs. A, B, and C.  The Ipostel packages were signed for by persons authorized to sign on behalf of the Individual Defendants, and would have been delivered to the Defendants in the ordinary course. Venezuela Legal Expert Decl. ¶ 21; Fonseca Decl. ¶ 15.  This is sufficient to establish service under Venezuela law.  Venezuela Legal Expert Decl. ¶¶ 21, 23.

It is also sufficient satisfy Rule 4(l).  *E.g., Monaghan v. NCL (Bahamas) Ltd.,* 2013 WL 12148555, at *1 (S.D. Fla. Aug. 26, 2013) (Rule 4(l) satisfied where plaintiff sent service papers to address that defendant was known to have used, and a relative of the defendant's signed for the package); *Naseer v. Mirabella Found.*, 2009 WL 10706230, at *3 (M.D. Fla. 2009) (service on addressee's attorney was sufficient "other evidence satisfying the court that the summons and complaint were delivered to the addressee."); *Estate of Jackson ex rel. Jackson-Platts v. Sandnes*, 2013 WL 6038828, at *3 (M.D. Fla. 2013) (Rule 4(l)(2)(B) satisfied where service was shown to

have been made on defendant's son at his mailing address).[5]  As in *Monaghan*, *Naseer*, and *Estate of Jackson*, the people who signed the Ipostel receipts were people who would reliably provide the service materials to the Individual Defendants.  *See* Venezuela Legal Expert Decl. ¶¶ 21, 23; Fonseca Decl. ¶ 15.

## II.    Plaintiffs request leave of court to achieve alternative service pursuant to Rule 4(f)(3).

As for Maduro and Reverol, *i.e.,* the Defendants who were not served pursuant to Rule 4(f)(2)(A), and, in an abundance of caution, as to the other Individual Defendants as well, Plaintiffs seek leave to effectuate alternative service pursuant to Rule 4(f)(3).  That rule provides that service may be effected "by . . . means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).  "District courts have broad discretion under Rule 4(f)(3) to authorize other methods of service that are consistent with due process and not prohibited by international agreements." *Brookshire Bros., Ltd. v. Chiquita Brands, Int'l, Inc*., 2007 WL 1577771, at *2 (S.D. Fla. 2007).  Here, this Court should authorize service under Rule 4(f)(3) for the reasons set forth below.

### a.  Service to Rule 4(f)(3) is appropriate because Plaintiffs diligently have attempted, and failed to achieve, service through other means.

#### 1.  Hague Convention

As set forth above, Plaintiffs attempted to serve Maduro and the other Individual Defendants through the Hague Convention, but were unable to do so because Venezuela's Central Authority, in breach of the Hague Convention, refused to accept Plaintiffs' Service Packages.  *See* Gutierrez Decl. at ¶¶ 12-13.  "Rule 4(f)(3) is most likely to be employed when a foreign country's Central Authority . . . refuses to serve a complaint."  *Phoenix Process Equip. Co. v. Cap. Equip.*

---

[5]  Regardless of the type of proof submitted, Rule 4(l)(3) provides that "[f]ailure to prove service does not affect the validity of service."

*& Trading Corp.*, 250 F. Supp. 3d 296, 307 (W.D. Ky. 2017); *see also* Fed. R. Civ. P. 4(f)(1) advisory committee's note (1993 Amendments) (explaining that court-directed service pursuant to Rule 4(f)(3) is particularly appropriate where a signatory to the Hague Convention has "refused to cooperate for substantive reasons."); *Sec. & Exch. Comm'n v. Dubovoy*, 2016 WL 7217607, at *2 (D.N.J. 2016) (granting motion for alternative service where "Russia, despite being a signatory to the Hague Convention, unilaterally suspended all judicial cooperation with the United States"). Accordingly, this case is one in which "Hague Convention service has failed," ECF No. 27 at 4 (*citing Int'l Designs Corp., LLC v. Qingdao SeaForest Hair Prods. Co., Ltd.*, 2018 WL 2364297, at *3 (S.D. Fla. 2018)), and thus, this case is the type where district courts in the Eleventh Circuit typically authorize alternative service of process under Rule 4(f)(3). ECF No. 27 at 4.

Further, given that Plaintiffs have sought (1) to complete Hague Convention service through the Maduro regime, (2) to complete Hague Convention service through the Guaidó government, and (3) to achieve service in a manner consistent with the Hague Convention and authorized pursuant to the laws of Venezuela, this is not a case in which Plaintiffs' request is made impulsively. *See* ECF No. 27 at 4 (citing *Ryan v. Brunswick Corp.*, 2002 WL 1628933, at *2 (W.D.N.Y. 2002)). To the contrary, Plaintiffs have diligently pursued service through means other than Rule 4(f)(3) for the last several months. *See, e.g.*, Gutierrez Decl. ¶¶ 7-10; Lakatos Decl. ¶ 2.

### 2. Defendants' Evasion of Service

As set forth above, Defendants have sought to evade service. Maduro, through his control of Venezuela's central authority, has blocked Hague Convention service. And Maduro and Reverol, through their control of Ipostel, have thwarted service pursuant to Venezuelan law. This further supports the use of Rule 4(f)(3). *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d

1007, 1016 (9th Cir. 2002) (where plaintiff " presented the district court with its inability to serve an elusive international defendant, striving to evade service of process, the district court properly exercised its discretionary powers to craft alternate means of service."); *Chanel, Inc. v. Individual, P'ship , or Unincorporated Ass'n*, 2017 WL 8794733, at *5 (S.D. Fla. 2017) ("Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party.").

### b. Service by Publication, Backstopped by Electronic Service, Is Reasonably Calculated to Provide Defendants with Notice and thus Comports with Due Process.

In Plaintiffs' first motion for alternative service, Plaintiffs proposed serving the Individual Defendants by various electronic means (e.g., WhatsApp, direct messages over Twitter and Facebook).  In denying Plaintiffs' motion without prejudice, this Court explained that it was not convinced "that the Individual Defendants are themselves actively monitoring or posting on these accounts or . . . that they will receive, open, and read messages or weblinks sent to the accounts." ECF No. 27 at 6.  Further, this Court noted that service through electronic means may be more appropriate as a "backstop," and that serving some "of the Individual Defendants **only** through social media, whether Facebook or Twitter might raise due process concerns." *Id.* at 7 (emphasis added).

Taking this guidance to heart, Plaintiffs now propose: (1) that service be achieved through a more conventional method, *i.e.*, by publication, through media outlets that both the Individual Defendants and their agents are known to read; (2) that service by publication be backstopped by service through electronic means; and (3) that electronic means include the emails and cell phone numbers for each Individual Defendant, which Mr. Fonseca obtained through his research, as described more fully below.

### 1.  Publication.

"Court directed service of process by publication is the favored method of service upon terrorists and terrorist organizations . . . where the addresses or precise locations are unknown." *See Stansell v. FARC*, 149 F.Supp.3d 1337, at ECF. No. 155 (M.D. Fla. Feb. 5, 2010) (authorizing service of process by publication on FARC and individual defendants); *see also Doe v. Ejercito De Liberacion Nacional*, 2012 WL 10713165, at *1 (S.D. Fla. 2012) ("Plaintiff sought and was given approval to effectuate service [on the Columbia narco-terrorist defendants FARC and Ejército de Liberación Nacional] by publication pursuant to Rules 4(f)(3)"); *Smith v. Islamic Emirate of Afghanistan*, 2001 WL 1658211, at *3 (S.D.N.Y. 2001) (authorizing service by publication on Osama Bin Laden and Al Qaeda); *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 490 (S.D.N.Y. 2010) (approving motion to serve defendant Dubai Islamic Bank, which laundered money for bin Laden, and other defendants, by publication in the United Arab Emirates, where service by hand would be impractical and dangerous); *Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005) (permitting service by publication where defendants' address was not known or easily ascertainable).

For example, in *SEC v. Tome*, 833 F.3d 1086, 1093 (2d Cir. 1987), the Second Circuit held that "[p]ublication of the complaint and summons in the *International Herald Tribune*" satisfied due process because it "was 'reasonably calculated' to notify the . . . [defendants] of the suit against them," given that "[t]he SEC reasonably concluded that the [defendants] resided or conducted business in Europe and chose a publication likely to be read by international investors [such as the defendants]."   The same is true here: Plaintiffs have selected publications that are "reasonably calculated" to be reviewed by the Individual Defendants.

To ensure that Plaintiffs' proposed plan of publication is "reasonably calculated" (indeed, exceedingly likely) to reach the Individual Defendants, Plaintiffs retained Mr. Fonseca to advise how best to ensure that the publication will be reviewed by the Individual Defendants.  As noted above, Mr. Fonseca is a Venezuela expert who has closely studied the Maduro regime.  He has deep academic and intelligence experience, including advising the Defense Intelligence Agency enterprise at United States Southern Command (USSOUTHCOM), the Department of Defense and the State Department, and testifying before Congress, on Venezuelan issues.  *See generally* Fonseca Decl. ¶¶ 2-11.

In accord with Mr. Fonseca's advice, Plaintiffs propose to publish notice (attached as Exhibits 5-6)[6] in the Miami Herald and its sister publication el Nuevo Herald.  These publications are routinely reviewed by the Individual Defendants themselves.  *Id*. ¶ 17.  Moreover, agents of the Individual Defendants are responsible for reading the Miami Herald and the Nuevo Herald and reporting to the Individual Defendants on relevant developments.  *Id*. ¶¶ 17-18.  These agents would in the ordinary course report on a lawsuit against the Individual Defendants pending in U.S. court if a notice were published in the foregoing papers.  *Id.*

Second, Plaintiffs propose making the same publication in a prominent Spanish language Latin American media outlet, Diario Las Americas [https://www.diariolasamericas.com/] (attached as Exhibit 7).  As set forth in Mr. Fonseca's declaration, the foregoing publications are routinely reviewed by the Individual Defendants themselves, and monitored by agents of the Individual Defendants who are responsible for reporting relevant developments to the Individual Defendants.  *See* Fonseca Decl. ¶¶ 21-22.

---

[6] The papers' formatting guidelines might necessitate changes to the formatting, but Plaintiffs intend that the content of the notices will remain the same.

Finally, as in *Stansell, Doe, Smith, Tome,* and *In re Terrorist Attacks on Sept. 11, 2001,* this is a case in which the addresses where the Individual Defendants reside are unknown and cannot be established or ascertained with reasonable diligence (Lakatos Decl. ¶ 3), and where service by other means would be impractical and potentially dangerous.  Moreover, Plaintiffs have taken affirmative steps, as set forth above, to evade service arising from U.S. legal proceedings. *See, e.g.,* Fonseca Decl. ¶¶ 13, 14.  Accordingly, service by publication is particularly appropriate. *See Tome*, 833 F.3d at 1092 ("Where the plaintiff can show that deliberate avoidance and obstruction by the defendants have made the giving of notice impossible, statutes and case law have allowed substitute notice by mail and by publication in media of general and wide circulation.").

### 2.  Expanded Electronic Means.

In appropriate cases, courts have authorized service by electronic mail and/or social media accounts. *See, e.g., ABS-CBN Corp. v. aceshowbiz.me,* 2018 WL 6261851, at ECF No. 10 (S.D. Fla. Jul. 17, 2018) (Gayles, J.) (authorizing alternative service by email and electronic messages to "each of the Defendants' social media accounts").  In the April 21, 2021 order denying Plaintiffs' first motion for Rule 4(f)(3) service, this Court expressed several concerns as to why this case may be inappropriate for such electronic service, but reached its conclusions without prejudice.  Accordingly, in this renewed motion, Plaintiffs below seek to address the concerns that this Court raised.

*First,* this Court expressed doubt as to whether "the email accounts, social media accounts, or phone numbers are actively monitored or that the messages or weblinks will be opened and read," ECF No. 27 at 5, especially in light of the fact that Plaintiffs offered only "general statements" to support the conclusion that those accounts were sufficiently monitored, and the

16

Court ultimately was left wanting for "more," ECF No. 27 at 8. Plaintiffs address this concern in several ways.

To begin, Plaintiffs now propose to expand the electronic service to include service by means of email addresses and text messages to cell phone numbers, obtained by Mr. Fonseca, for each of the Individual Defendants. *See* Fonseca Decl. ¶ 24. These email addresses and phone numbers are personal emails and phone numbers of the individual Defendants that are not available to the general public, and were obtained by Mr. Fonseca through sources and methods he developed through his career in intelligence. *Id.*[7]

In addition to serving the Individual Defendants through email and their cell phones, Plaintiffs propose to serve the summonses and complaint through the Individual Defendants' respective social-media accounts. Mr. Fonseca understands based on his research and experience that the Individual Defendants have agents who monitor their social media accounts, and who will report the lawsuit promptly to the Individual Defendants in the ordinary course. Fonseca Decl. ¶ 24. Courts authorize substitute service where, as here, an agent of the defendant is likely to provide notice of the lawsuit to the defendant. *See, e.g., U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 621 (S.D. Fla. 2011) ("service on local counsel is reasonably calculated to apprise Defendants of the pendency of this action and afford them an opportunity to present their objections."); *Kremer v. Lysich*, 2018 WL 11247795, at *2 (D.N.J. Nov. 20, 2018)

---

[7] This Court noted that in a number of instances in which courts have authorized electronic service, there was evidence that "contact was established" or "counsel [was] reached" through the electronic communication channel proposed. ECF No. 27 at 8. In this case, Plaintiffs do not propose to contact the Individual Defendants through the email addresses and cell phone numbers Mr. Fonseca has developed *prior* to serving the Individual Defendants, as doing so will likely result in the Individual Defendants closing those channels. In submitting proof of service, Plaintiffs will advise the court whether they receive any rejection, failure-to-deliver message, or any other response they might receive through these channels.

(authorizing service on defendant's uncle under Rule 4(f)(3) where uncle had a means of communicating with defendant and they shared "an ongoing business relationship."); *Henning v. Arya*, 2016 WL 4055641, at \*4 (D. Nev. July 26, 2016) (service on defendant's sister was sufficient service under Rule 4(f)(3)); *Forum Fin. Group, LLC v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22, 23-24 (D. Me. 2001) (service on defendant's attorney was sufficient service under Rule 4(f)(3)).

     *Second*, this Court distinguished other cases that have permitted service through electronic means on the ground that "nearly all the plaintiffs" in those cases "first attempted service through traditional methods." ECF No. 27 at 7. Plaintiffs have now attempted several traditional means, as set forth above.

     *Third*, the Order distinguished other cases that have permitted service through electronic means on the ground that those cases "permitted service via electronic means such as e-mail and messages to social media accounts where the defendants' whereabouts were unknown or were exclusively digital in nature." ECF No. 27 at 7. Accordingly, Plaintiffs retained an investigative firm with significant experience in Venezuela to identify the personal addresses of the Individual Defendants, which confirmed that their addresses are unknown and unavailable to Plaintiffs. *See* Lakatos Decl. ¶ 3. Accordingly, in this case, the specific whereabouts of those Individual Defendants can fairly be characterized as unknown.

     *Fourth*, as noted above, this Court expressed that electronic service might be more appropriate as a backstop to other means of service. ECF No. 27 at 7 (noting potential due process means where service would be "*only* by means of Facebook, as opposed to using Facebook as a supplemental means of service" (emphasis in original)). Here, as noted above, Plaintiffs propose electronic means as a supplemental form of service.

c. **International Agreement with Venezuela does not prohibit service by publication or by electronic means.**

There is no applicable international agreement that bars service by publication as to persons residing in Venezuela.  Notably, Venezuela has not objected to service by publication or electronic means.[8]  Accordingly, service by publication is not prohibited.  *See adidas AG v. adidas.style*, 2018 WL 1801197, at *1 (S.D. Fla. 2018) ("Where a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or publication."); *Kipu Sys., LLC v. ZenCharts, LLC*, 2018 WL 8264634, at *2 (S.D. Fla. 2018) (citing and describing as persuasive authority holding that publication is permitted unless signatory to Hague Convention "explicitly objects to service by publication in their Declarations pursuant to the [Hague] Convention."); *Chanel v. LuxTime*, 2017 WL 8794733, at *7 (authorizing email service and explaining that "[w]here a signatory nation has objected to only those means of service listed in Article [10], a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article [10].").

The same is true for service by electronic means.  *See Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, 2015 WL 5320947, at *3 (S.D. Fla. 2015) ("This Court and many other federal courts have permitted service by electronic mail and determined that an objection to Article 10 of the Hague Convention, i.e. an objection to service through 'postal channels' does not equate to an express objection to service via electronic mail.").[9]

---

[8] *See* Hague Conference on Private International Law, Venezuela - Central Authority & practical information, available at https://www.hcch.net/en/states/authorities/details3/?aid=280.

[9] Venezuela is also a party to the Inter-American Convention on Letters Rogatory. *See* Inter-American Conv. Letters Rogatory, available at https://www.oas.org/juridico/english/sigs/B-36.html. It does not preclude service by email, facsimile, or social media. *Id.* at https://www.oas.org/juridico/english/treaties/b-36.html; *see Caballero v. Ejercito de Liberacion*

Nor would such service be offensive to Venezuela law, which specifically permits service by electronic means.  *See* Venezuela Legal Expert Decl. ¶¶ 24-30.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this motion and (1) authorize service of the Summonses, the Complaint, and all filings and discovery in this matter upon Maduro and the Individual Defendants in this action by publication and through electronic means, and (2) direct the Clerk to sign and seal the notices attached as Exhibits 5-7 to this motion.

| | |
|---|---|
| Respectfully submitted on December 20, 2021. | /s/ Jonathan S. Klein<br>Jonathan S. Klein (Florida Bar No. 125254)<br>*jklein@mayerbrown.com*<br>Alex C. Lakatos (*pro hac vice*)<br>*alakatos@mayerbrown.com*<br>Stephen M. Medlock (*pro hac vice*)<br>*smedlock@mayerbrown.com*<br>Mayer Brown LLP<br>1999 K Street NW<br>Washington, DC 20006<br>(202) 263-3000 (Main)<br><br>/s/ Jaime D. Guttman<br>Fla. Bar No. 44076<br>*jaime@scale.law*<br>Scale Law Partners, LLC<br>777 Brickell Avenue, Suite 500<br>Miami, FL 33131<br>(786) 273-9033 (Main)<br><br>*Counsel for Plaintiffs* |

---

*Nacional*, 2019 WL 11505370, at *2 (S.D. Fla. Nov. 21, 2019) (finding the Inter-American Convention on Letters Rogatory "does not prohibit alternative forms of service" including e-mail).

## <u>CERTIFICATE OF SERVICE</u>

I certify that I filed this paper through CM/ECF, which automatically and electronically

delivered notice of filing to counsel of record or all parties that have appeared.

*/s/ Jonathan S. Klein*