UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-20706-GAYLES

**MEUDY ALBÁN OSIO in her personal
capacity and in her capacity as the
personal representative of the Estate of
FERNANDO ALBERTO ALBÁN,
FERNANDO ALBÁN OSIO, and
MARIA FERNANDA ALBÁN OSIO**,

    Plaintiffs,

v.

**NICOLAS MADURO MOROS,
FUERZAS ARMADA REVOLUCIONARIAS
DE COLOMBIA a.k.a. FARC, CARTEL
OF THE SUNS a.k.a. Cartel de los Soles,
VLADIMIR PADRINO LOPEZ,
MAIKEL JOSE MORENO PEREZ,
NESTOR LUIS REVEROL TORRES, and
TAREK WILLIAM SAAB**,

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Plaintiffs' Renewed Motion for Alternative Service Pursuant to Rule 4(f)(3) (the "Motion") [ECF No. 53]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## BACKGROUND

On February 22, 2021, Plaintiffs filed their Complaint seeking damages from Defendants for allegedly kidnapping, torturing, and murdering Fernando Alberto Albán. [ECF No. 1 at 4]. On March 5, 2021, Plaintiffs filed their first Motion for Alternative Service Under Rule 4(f)(3). [ECF

No. 17]. In their initial motion, Plaintiffs sought leave to serve Defendants Nicolas Maduro Moros, Vladimir Padrino Lopez, Maikel Jose Moreno Perez, Nestor Luis Reverol Torres, and Tarek William Saab (collectively, the "Individual Defendants") via e-mail, text message, or social media (including Facebook and Twitter), pursuant to Federal Rule of Civil Procedure 4(f)(3). [ECF No. 17 at 1]. Within that electronic service, Plaintiffs intended to include a weblink to a service website where the Complaint, Summons, and other docket entries would be posted. *Id.* at 11 n.15. Plaintiffs noted that the Individual Defendants, who are citizens and residents of Venezuela, are "international pariahs and fugitives from justice who pride themselves on flouting U.S. authority." *Id.* at 2.

Plaintiffs argued that serving the Individual Defendants, "whether through the Hague Convention or any other means of service that, like the Hague Convention, requires facilitation by someone present in Venezuela, would expose [the process server] to a significant risk of punitive and retaliatory measures by the Maduro regime." *Id.* at 3. The Court denied Plaintiffs' motion, without prejudice, on April 21, 2021. [ECF No. 27]. The Court was unconvinced that service via e-mail, text message, social media outlets, or a weblink was appropriate at the time to apprise the Individual Defendants of this litigation. *Id.* at 8–9.

In the instant Motion, Plaintiffs again seek alternative service as to the Individual Defendants and offer purported proof of service as to Defendants Padrino Lopez, Moreno Perez, and Saab under Rule 4(l)(2)(B). [ECF No. 53]. In support of their motion, Plaintiffs maintain that they have: (i) diligently sought to achieve service through the Hague Convention[1] for the preceding six months; (ii) successfully effectuated service pursuant to Rules 4(l)(2)(B) and 4(f)(2)(A) by serving three of the Individual Defendants[2] in a manner authorized by Venezuelan law; and (iii)

---

[1] Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.
[2] Padrino Lopez, Moreno Perez, and Saab.

2

added additional service methods and retained an expert on the Maduro Regime, who provided guidance to ensure the proposed service methods were likely to reach the Individual Defendants. *Id.* at 2–3.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 4, an individual may be served outside of the United States: (1) "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by [the Hague Convention]"; (2) "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice"; or (3) "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1)–(3). "If a party cannot, or chooses not to, serve a defendant abroad using one of the methods specified in Rule 4(f)(1) and (2), the party may accomplish service" using the third method. *De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 750 (11th Cir. 2016). However, "before a court may exercise personal jurisdiction over a defendant . . . there must be authorization for service of summons on the defendant." *Id.* at 748–49 (quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)); *see also id.* at 749 ("[A]n individual or entity is not obliged to engage in litigation unless officially notified of the action . . . under a court's authority, by formal process." (quoting *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 (11th Cir. 2003))).

While "compliance with the [Hague] Convention is mandatory in all cases to which it applies," *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) (citation omitted), the Court is permitted to order alternate means of service as long as the signatory nation has not expressly objected to those means, *see Codigo Music, LLC v. Televisa S.A.*, No. 15-CIV-

3

21737, 2017 WL 4346968, at *7 (S.D. Fla. Sep. 29, 2017). "[T]he decision to issue an order allowing service by alternate means lies *solely within the discretion of the district court*." *Chanel, Inc. v. Lin*, No. 08-CIV-23490, 2009 WL 1034627, at *1 (S.D. Fla. Apr. 16, 2009) (citations omitted); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) ("[T]he Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond."). A district court examines three factors in determining whether to exercise its discretion and permit alternative service of process:

> First, the Court must be satisfied that the proposed method of service is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Second, the Court must determine if the proposed method of service minimizes offense to foreign law. Third, the Court must determine if the facts and circumstances warrant exercise of its discretion under Fed. R. Civ. P. 4(f).

*Tracfone Wireless, Inc. v. Hernandez*, 126 F. Supp. 3d 1357, 1364 (S.D. Fla. 2015) (citations and internal quotation marks omitted). "The alternative method of service, however, must comport with constitutional notions [of] due process." *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 620 (S.D. Fla. 2011).

Courts are generally "reluctant to use their discretion to authorize alternate service when Hague Convention service is available." *Int'l Designs Corp., LLC v. Qingdao SeaForest Hair Prods. Co., Ltd.*, No. 17-CIV-60431, 2018 WL 2364297, at *2 (S.D. Fla. Jan. 4, 2018). Typically, district courts in the Eleventh Circuit permit alternate service "only where the defendant's foreign address is unknown; the defendant has successfully evaded service; failure to permit alternate service will result in unduly long delays in litigation; or where attempted Hague Convention service has failed." *Id.* at *3 (citing *Codigo Music*, 2017 WL 4346968, at *10 (denying motion for alternate service where plaintiffs knew defendant's address, there was no urgency, and defendant

was not evading service)); *see also Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Inc.*, No. 05-CIV-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (upholding decision to authorize service by local counsel because, in part, the plaintiffs were unsuccessful at perfecting service under Rule 4(f)(1) for over a year). Though such requirements are not expressly provided for in Rule 4(f)(3), they are worthy of consideration "to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." *Ryan v. Brunswick Corp.*, No. 02-CIV-0133E(F), 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002).

## DISCUSSION

### I.     Alternative Service Pursuant to Rule 4(f)(3)

As the Court held in its order denying Plaintiffs' initial motion for alternative service under Rule 4(f)(3), [ECF No. 27], the Hague convention is applicable in the present matter as Venezuela is a signatory to the Hague Convention. [ECF No. 27 at 5]. Thus, the burden remains with Plaintiffs to show that they attempted service under the Hague Convention to the Central Authority designated by Venezuela—the Ministry of Popular Power for Foreign Affairs[3]—and that those attempts failed.

According to Plaintiffs, they attempted to serve the Individual Defendants as provided under the Hague Convention. In the instant motion, Plaintiffs alert the Court of an ongoing dispute concerning the legitimacy of the Venezuelan government, currently controlled by the Maduro regime, which effectively complicates the issue of service. [ECF No. 53 at 4]. Specifically, they emphasize that "[t]he United States does not recognize the Maduro regime as the legitimate government of Venezuela; rather, the United States recognizes the opposition government led by

---

[3] *See Venezuela - Central Authority & practical information*, Hague Convention on Private Int'l Law (HCCH), https://www.hcch net/en/states/authorities/details3/?aid=280 (last updated June 10, 2022) (identifying the Venezuelan Central Authority, contact information, and other practical information regarding Venezuela's consent to the Hague Convention).

interim President Juan Guaidó." *Id.* However, the Maduro regime controls the Central Authority designated by Venezuela. *Id.* Even so, Plaintiffs maintain that they attempted service pursuant to the Hague Convention through both the Maduro and Guaidó regimes. *Id.* at 3–5.

In a written declaration, Alex C. Lakatos ("Lakatos"), an attorney for Plaintiffs, declares that Plaintiffs' counsel "initiated discussions with representatives of the legitimate government of Venezuela led by interim President [] Guaidó, to inquire whether the Guaidó government would be willing and able to effectuate service in accordance with the Hague Convention." [ECF No. 53-3 at ¶ 2]. According to Lakatos, the Guaidó government "was supportive of [Plaintiffs'] efforts to serve the Individual Defendants." *Id.* However, it became clear on or about September 22, 2021, after various calls and emails, that "the interim government, which lacks territorial control over Venezuela, did not have the ability to effectuate service in accordance with the Hague Convention on behalf of the Plaintiffs." *Id.* Plaintiffs also claim that they attempted service through Venezuela's designated Central Authority, controlled by the Maduro regime. [ECF No. 53 at 3–4]. However, the Central Authority refused to accept the Service Packages, explaining that it "would not accept any service packages coming from the United States." *Id.* at 4.

In another written declaration, Brian P. Fonseca ("Fonseca"), a purported expert on Latin American security and Venezuela,[4] declares that "Venezuela, under the control of Nicolas Maduro, deems the U.S. courts and U.S. judicial processes illegitimate and refuses to cooperate with U.S. legal proceedings." [ECF No. 53-2 at ¶ 13]. Thus, Plaintiffs' attempt to effectuate service on the Individual Defendants pursuant to the Hague Convention failed. Accordingly, alternative service is warranted.

---

[4] Mr. Fonseca declares that he serves in the following roles: (1) director of the Institute for Public Policy at Florida International University's Steven J. Green School of International and Public Affairs; (2) adjunct professor in the Latin American and Caribbean Studies Center and the Department of Politics and International Relations; and (3) expert on Latin American security and Venezuela at Florida International University. [ECF No. 53-2 at ¶ 2].

6

## II.     Proof of Service Pursuant to Rules 4(l)(2)(B) and 4(f)(2)(A)

Plaintiffs argue that service on three of the Individual Defendants (Padrino Lopez, Moreno Perez, and Saab) has already been effectuated through means of delivery via the Instituto Postal Telegráfico de Venezuela ("Ipostel"),[5] thereby satisfying Rule 4(f)(2)(A). *Id.* at 5–6. Specifically, Plaintiffs argue that service via Ipostel is permissible under Rule 4(f)(2)(A) because there is no internationally agreed means of service, thereby invoking sub-section (A). *Id.* at 7. However, Plaintiffs are incorrect. Venezuela is a signatory to the Hague Convection. [ECF No. 27 at 5]. While Venezuela has objected to service via postal channels under Article 10 of the Hague Convention, it has not formally objected to service all together.[6] Thus, there indeed exists an internationally agreed means of service—via Venezuela's Central Authority for the Hague Service.[7]

Plaintiffs cite non-binding case law to support their argument that district courts "may approve service by means of a country's domestic delivery channel." [ECF No. 53 at 9–10]. However, Plaintiffs fails to acknowledge that unlike Venezuela, two of the countries they cite—

---

[5] The Venezuelan public regulatory organization of the national postal sector, provider of postal, logistic and printing services. [ECF No. 53 at 6.]

[6] *See* Bureau of Consular Affs., Venezuela Judicial Assistance Country Information, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/VenezuelaBolivarianRepublicof.html (last updated Nov. 15, 2013) (select "Service of Process") (noting that "Venezuela formally objected to service under Article 10 and does not permit service via postal channels."); *Koch Mins. Sàrl v. Bolivarian Republic of Venezuela*, 514 F. Supp. 3d 20, 36 (D.D.C. Dec. 23, 2020) ("Article 10 also allows for service by alternative means, such as service by postal channels, directly to persons abroad provided the State of destination does not object. Venezuela, however, objects to direct service upon parties by mail." (citations, alterations, and internal quotation marks omitted)).

[7] *See id.* (select "Service of Process") (noting that "Requests should be completed in duplicate and submitted with two sets of the documents to be served, and translations, directly to Venezuela's Central Authority for the Hague Service Convention. The person in the United States executing the request form should be either an attorney or clerk of court. The applicant should include the titles attorney at law or clerk of court on the identity and address of applicant and signature/stamp fields.").

Taiwan[8] and New Zealand[9]—are non-parties to the Hague Convention.[10] Additionally, the three other countries Plaintiffs cite that are parties to the Hague Convention—Australia,[11] Canada,[12] and Italy[13]—have either adopted Article 10 or have not formally objected to service of process via postal channels as prescribed Article 10.[14]

The Court is not convinced that alternative service on Padrino Lopez, Moreno Perez, and Saab was effectuated because (1) Venezuela has objected to service via postal channels under the Hague Convention, and (2) this alternative service occurred before the Court authorized it. But given Venezuela's refusal to accept service on the Individual Defendants through the Hague

---

[8] *Modern Computer Corp. v. Ma*, 862 F. Supp. 938, 946 (E.D.N.Y. 1994) (allowing service via mail under Rule 4(f)(2)(A) where the plaintiff submitted an affidavit attesting that service via mail complied with the law of the recipient country). [ECF No. 53 at 9].

[9] *Am. Infertility of N.Y. P.C. v. Deep Blue Health New Zealand Ltd.*, 2019 WL 10786023, at *4 (S.D.N.Y. Dec. 30, 2019) ("Plaintiff's service upon Defendant was procedurally proper" where it complied with the law for service in the defendant's "country in an action in its courts of general jurisdiction") (citing Rule 4(f)(2)(A)). [ECF No. 53 at 9].

[10] *See* Bureau of Consular Affs., *Taiwan Judicial Assistance Country Information*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Taiwan html (last updated Nov. 15, 2013) (under "Hague/Inter-American") (noting that Taiwan is not a party to the Hague Service Convention); Bureau of Consular Affs., *New Zealand Judicial Assistance Country Information*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/NewZealand0 html (select "Service of Process") (noting that "New Zealand is not a party to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters.").

[11] *Retractable Techs., Inc. v. Occupational & Med. Innovations, Ltd.*, 253 F.R.D. 404, 407 (E.D. Tex. 2008) (service upon defendant was deemed sufficient after considering "the standards of Rule 4(f) and its incorporation 10 of relevant Australian law"). [ECF No. 53 at 9–10].

[12] *Fernandez v. Univan Leasing*, 790 N.Y.S.2d 155, 155 (2005) ("the Hague Convention permits service by any method permitted by the internal laws of the country in which service is being made... In [] Canada, service by mail is a permissible method."). [ECF No. 53 at 10].

[13] *R. Griggs Grp. Ltd. v. Filanto Spa*, 920 F. Supp. 1100, 1103 (D. Nev. 1996) ("Thus, service by mail is proper if allowed either by internal Italian law [as per Rule 4(f)(2)(A)] or by provisions of the Hague Convention itself."). [ECF No. 53 at 9].

[14] *See* Bureau of Consular Affs., *Australia Judicial Assistance Country Information*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/aus-csi html (last updated Mar. 23, 2018) (under "Hague/Inter-American") (noting that Australia is a party to the Hague Service Convention); Bureau of Consular Affs., *Canada Judicial Assistance Country Information*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Canada html (last updated Nov. 19, 2018) (select "Service of Process") (noting that "Canada did not formally objected [sic] to service under Article 10, and does permit service via postal channels."); Bureau of Consular Affs., *Italy Judicial Assistance Country Information*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Italy html (last updated Nov. 15, 2013) (select "Service of Process") (noting that "Italy is a party to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters… [t]he Italian Central Authority has informed the Hague Conference for Private International Law that only judicial officers working for the Italian courts may serve documents in Italy (Article 10 (b and c))."

Convention, the Court finds that Plaintiffs have sufficiently established their need for alternative service.

### III.        Proposed Service Methods

As the Court finds that alternative service is warranted in the instant action, the Court will now address Plaintiffs' proposed methods of alternative service. Plaintiffs propose the following methods of service to be effectuated collectively: (1) service by publication through media outlets; (2) service by publication backstopped by service through electronic means; and (3) electronic means include purported emails and cell phone numbers for each Individual Defendant, obtained by Mr. Fonseca through his research. *Id.* at 13. The Court agrees with Plaintiffs' proposed methods of service to be effectuated collectively. Courts have often permitted service by publication in instances where the addresses of defendants located internationally are unknown. *See Doe v. Ejercito De Liberacion Nacional, 2012 WL 1071316*, at n.4 (S.D. Fla. Aug. 2, 2012) ("Plaintiff sought and was given approval to effectuate service by publication pursuant to Rules 4(f)(3) and 4(h)(2) of the Federal Rules of Civil Procedure"); *Smith v. Islamic Emirate of Afghanistan*, 2001 WL 1658211, at *3 (S.D.N.Y. Dec. 26, 2001) (authorizing service by publication on Osama Bin Laden). Moreover, the methods proposed by Plaintiffs, done collectively, are "reasonably calculated to apprise the interested parties of the lawsuit." *S.E.C. v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987) (authorizing service on defendants located abroad by publication in the International Herald Tribune). Accordingly, Plaintiffs' proposed methods of service by publication in news outlets backstopped by service through other electronic means (i.e., e-mail, text message, social media outlets) are sufficient in the instant action.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Renewed Motion for Alternative Service Pursuant to Rule 4(f)(3), [ECF No. 53], is **GRANTED**.

2. Plaintiffs' request for proof of service as to Individual Defendants Padrino Lopez, Moreno Perez, and Saab pursuant to Rules 4(l)(2)(B) and 4(f)(2)(A), is **GRANTED**.

3. Plaintiffs shall propose an updated Notice of Service of Summons in a Civil Case by Court Directed Publication and submit the same to this Court for approval. Upon Court approval, Plaintiffs shall translate the Notice into Spanish and it shall be published in two major newspapers in Venezuela and one in Miami, Florida over a four-week period, one (1) day per week. Plaintiffs shall also transmit the Notice to the known electronic mailboxes, social media accounts, and phone numbers of the Individual Defendants.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 23rd day of September, 2022.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE