UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-cv-20706-DPG

MEUDY ALBÁN OSIO in her personal
capacity and in her capacity as the personal
representative of the Estate of FERNANDO
ALBERTO ALBÁN, FERNANDO ALBÁN
OSIO, and MARIA FERNANDA ALBÁN
OSIO,

    Plaintiffs / Judgment Creditors,

v.

NICOLAS MADURO MOROS,
FUERZAS ARMADA
REVOLUCIONARIAS DE COLUMBIA
("FARC"); THE CARTEL OF THE SUNS
A.K.A. CARTEL DE LOS SOLES;
VLADIMIR PADRINO LOPEZ; MAIKEL
JOSE MORENO PEREZ; NESTOR LUIS
REVEROL TORRES; and TAREK
WILLIAM SAAB,

    Defendants / Judgment Debtors.

_____/

ORDER GRANTING PLAINTIFFS'
MOTION FOR A WRIT OF GARNISHMENT

This matter is before the Court on Plaintiff's Motion for Writ of Garnishment [D.E. 97] that was referred for disposition. No timely response was filed in opposition to the motion. Accordingly, may be granted by default under S.D. Local R. 7.1. Beyond that default and turning to the merits, the Court has carefully reviewed the motion, all documents and pleadings on file, the applicable law, and is otherwise fully advised. For the reasons explained below, the motion is **GRANTED**.

1

## I.   BACKGROUND

Plaintiffs filed this action on February 22, 2021, against Defendants Nicolas Maduro Moros, the Cartel of the Suns, FARC, and four other individual defendants for orchestrating the kidnapping, torture, and murder of Fernando Alberto Albán. The Court awarded an amended final default judgment for Plaintiffs and against the Cartel of the Suns on February 9, 2023 in the amount of $217 million. [D.E. 73]. On August 6, 2023, this Court awarded a final default judgement against Nicolas Maduro and the other individual defendants, jointly and severally with the Cartel, in the same amount. As of today, the entire judgment remains unsatisfied.

Plaintiffs move for a writ of garnishment for a bank account at Italbank owned by INAC, blocked by OFAC, and a CD at Italbank in the name of Instituto Aeropuerto Nacional de Maiquetía (Simon Bolívar International Airport), an airport under the supervision of INAC

 For the reasons explained below, the Court finds that Plaintiffs have met a prima facie burden of showing demonstrated that INAC is an instrumentality of the Cartel of the Suns and Maduro, and the Court will grant a writ of garnishment on the bank account and CD at issue.  The Clerk  is Directed to issue the Writ of Garnishment attached to this Order.

## II.  ANALYSIS

Florida law permits a judgment creditor to obtain a writ of garnishment for "any debt due to defendant by a third person . . . and any tangible or intangible personal property of defendant in the possession or control of a third person." Fla.

Stat. § 77.01. Chapter 77, which governs garnishment in satisfaction of a judgment, establishes the process where, as here, judgment creditors such as Plaintiffs seek to garnish property. First, the statute provides that a creditor begins the garnishment by filing a motion for writ of garnishment. *See, e.g.*, Fla. Stat. §§ 77.03 & 77.041. Second, the clerk issues the writ. *Id*. Third, the creditor serves the writ upon the garnishee. *Id*. Lastly, Florida's garnishment statutes require that within 3 business days **after** the writ is served Plaintiffs must mail a copy of the motion and issued writ to the debtor's last known address. Fla. Stat. §77.041(2). After the motion is served, the garnishees have twenty days to answer. Plaintiff must also, within 5 days of garnishee's answer, mail to the judgment debtors a copy of the answer and a notice of right to move to dissolve. Fla. Stat. §77.055. A judgment lien is created at the moment a writ of garnishment is served on the garnishee, before any service on the debtor is required. § 77.06(1), Fla. Stat. ("Service of the writ creates a lien in or upon any such debts or property at the time of service or at the time such debts or property come into the garnishee's possession or control.").

This Court concludes that Plaintiffs have complied with the Florida garnishment statutes Fla. Stat. §77.03 by filing this motion under Fla. Stat. §77.03, and with Fla. Stat. §77.04, form of the writ. Following issuance of the writ INAC will be notified pursuant to the statutory notice requirements under Fla. Stat. §77.041(2) (requiring service of motion and writ) and §77.055 (requiring service of garnishee's answer).

Thereafter, INAC may then elect to appear and attempt to contest its instrumentality status before garnishment is executed, but as the Eleventh Circuit has held, INAC lacks a right to a hearing before the issuance of the writ. *See Stansell v. López Bello* ("*Stansell III*"), 802 F. App'x 445, 448 (11th Cir. 2020) (holding that Claimants "had no entitlement to a hearing prior to attachment or before a writ of execution is issued" and citing *Stansell II*).

Further, section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA") provides the substantive law that governs terrorism victims' efforts to satisfy their judgments from the blocked assets of Defendants and their instrumentalities. TRIA permits attaching the blocked property not only of the defendant terrorist/judgment debtor, but also the defendant's instrumentality: "Notwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution." 28 U.S.C. § 1610 Note (bold added); *Stansell v. Revolutionary Armed Forces of Columbia* ("*Stansell V*"), 45 F.4th 1340, 1346 (11th Cir. 2022) (quoting § 1610).

Thus, to satisfy TRIA § 201, Plaintiffs must establish that (1) they have obtained a judgment against a terrorist based on an act of terrorism, (2) that assets they seeks are blocked, and (3) that the assets are owned by an agency or instrumentality or the judgment debtor. *Id.* Here, Plaintiffs have made a prima facie showing that they satisfy all elements.

***First***, the Court concludes that Plaintiffs' judgment is for acts of terrorism. Under TRIA, the applicable definition of an "Act of Terrorism" is set forth in the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1182(a)(3)(B)(iii). *See* TRIA § 201(d) (cross referencing the INA). Plaintiffs satisfy the INA's definition in several ways, any one of which is sufficient to satisfy TRIA. Here, the INA defines an "Act of Terrorism" to include "an assassination." 8 U.S.C. § 1182(a)(3)(B)(iii)(IV).

Here, Mr. Albán was assassinated for political reasons. ECF No. 56 at 18 ("The high-profile kidnapping and murder of Mr. Albán by Maduro regime agents was designed to deter other opposition members from speaking out against the Venezuelan government.").

***Second***, this Court finds that the Cartel is a "terrorist organization." TRIA § 201 defines a terrorist organization by cross reference to 8 U.S.C. § 1182(a)(3)(B)(vi) ("terrorist organization defined"), which defines terrorist organization as "a group of two or more individuals, whether organized or not, which engages in," *inter alia*, committing "terrorist activity" under circumstances indicating an intent to cause death or serious bodily injury. Here, the Cartel is a group of two or more persons. ECF No. 56, at 3 (the Cartel is "an elaborate criminal syndicate"). Further, the Cartel is responsible for the assassination of Mr. Albán. *Id.* at 19 ("[B]ased on the well-pleaded factual allegations in the complaint, the deliberate torture and execution of Mr. Albán by members of the Cartel of the Suns, violated Florida's Wrongful Death Act."). The Cartel is also responsible for using weapons or dangerous devices in torturing Mr. Albán. *Id.* at 19, 4. Finally, the Cartel entered into a criminal conspiracy to engage in these terrorist activities. *Id.* at 22. Thus, the

Cartel is a terrorist organization, and its torture and execution of Mr. Albán were acts of terrorism. As this Court has already held, "Plaintiffs have plausibly alleged that the Cartel engaged in two types of terrorism that injured Plaintiffs: (1) narco-terrorism and related terror financing; and (2) conspiracy to kidnap, torture, and murder Mr. Albán." ECF No. 56, at 17.

***Third***, the Assets at issue have been Blocked. Blocking "can be definitively established by the fact that OFAC has taken action against the alleged agency or instrumentality under TWEA or IEEPA."[1] 771 F.3d at 726. In other words, OFAC's designation of a person as an agency or instrumentality automatically renders that person's property blocked as a matter of law. *Id*.

On August 5, 2019, the President through Executive Order 13884 ("E.O. 13884") blocked "all property and interest in property of the Government of Venezuela." *See* Executive Order 13884, Blocking Property of the Government of Venezuela (Aug. 5, 2019). Under E.O. 13884, the term "Government of Venezuela" includes Venezuela's agencies, such as INAC:

> [T]he state and Government of Venezuela, any political subdivision, agency, or instrumentality thereof, including the Central Bank of Venezuela and Petroleos de Venezuela, S.A. (PdVSA), any person owned or controlled, directly or indirectly, by the foregoing, and any person who has acted or purported to act directly or indirectly for or on behalf of, any of the foregoing, including as a member of the Maduro regime.

*Id.*

Accordingly, on August 6, 2019, Italbank filed blocking reports with OFAC, indicating that it had blocked an INAC bank account containing $7,621,830.85 and a certificate of deposit ("CD") containing $496,742.33 in the name of Instituto Aeropuerto Nacional de Maiquetía (Simon Bolívar International Airport), an airport under the supervision of INAC from which Mr. Albán was kidnapped. ECF No. 96-6 (blocked property report), 96-7 (blocked property report). In short, OFAC has blocked the assets at issue, as Italbank has recognized.

Fourth, INAC is an instrumentality of the Cartel. TRIA does not define "instrumentality," but the Eleventh Circuit has endorsed a broad definition: An "instrumentality" includes any party that provided material support to a terrorist party at any point in time, whether financial, technological, or the provision of goods or services. *See Stansell V*, 45 F.4th at 1350 (quoting *Stansell II*, 771 F.3d at 724 n.6); *Marrón*, 2023 WL 6356969, at *13 ("A third party who provides material support to a terrorist at any point in time constitutes an agency or instrumentality, even if they purportedly stopped aiding the terrorist."). In *Stansell II*, where the plaintiffs sued the narco-terrorist organization FARC under the federal ATA, 18 U.S.C. § 2333, the Eleventh Circuit approved the district court's defining an "agency or instrumentality" as any party that:

> "is or was ever involved" in any aspect of the [the defendant's] trafficking operations or that assisted with the [the defendant's] "financial or money laundering network" because it "was either (1) materially assisting in, or providing financial or technological support for or to, or providing goods or services in support" of, the [defendant's] international narcotics trafficking activities; and/or (2) "owned, controlled, or directed by, or acting for or on behalf of" the [the defendant]; and/or

7

(3) "playing a significant role in" the [the defendant's] narcotics trafficking. 771 F.3d at 724 n.6.

As made clear by the language "or was ever involved," a third party who provides material support to a terrorist at any point in time constitutes an agency or instrumentality, even if they purportedly stopped aiding the terrorist. *Id.*; *accord Stansell V*, 45 F.4th at 1350 ("[T]he formulation we expressly approved in *Stansell II* encompassed past involvement or association with a terrorist party."). And even if a person works through an intermediary or third party to provide material support to a terrorist party, they still constitute an instrumentality. *Stansell V*, 45 F.4th at 1351 ("[N]othing in § 201(a) of the TRIA suggests that an instrumentality relationship with a terrorist party needs to be direct.").

The Eleventh Circuit has described knowledge as the key differentiator between an "agency" and an "instrumentality." Unlike an agency, an "instrumentality" need not know that they have provided material support to a terrorist party (whether directly or indirectly). As the Eleventh Circuit held in *Stansell V*, an instrumentality "refer[s] to unwitting cogs in a criminal scheme." *Id.* at 1354 (citing *United States v. Bachynsky*, 949 F.2d 722, 735 (5th Cir. 1991) ("For each false diagnosis submitted, an unwitting patient was made an instrumentality of the fraud."); Michael N. Giuliano, 22 C.J.S. Criminal Law: Substantive Principles § 170 (May 2022 update) ("Ordinarily, a person who causes a crime to be committed through the instrumentality of an innocent or unwitting agent is punishable as a principal.")).

As discussed further below, this Court concludes that the record submitted on the motion provides ample prima facie evidence that INAC is an instrumentality of the judgment debtors under the foregoing standards.

Similarly, "in or about October 2015 and in or about November 2015, Efrain Campo Flores and Franqui Francisco Flores de Freitas -- two relatives of MADURO MOROS -- agreed during recorded meetings with DEA confidential sources to dispatch multi-hundred-kilogram cocaine shipments from MADURO MOROS's 'presidential hangar' at [Simon Bolívar] Airport. During recorded meetings with the sources, Campo Flores and Flores de Freitas explained that they were at 'war' with the United States" and "described the Cartel de Los Soles." ECF No. 96, at 10.

Venezuela and its commercial airports, including Simon Bolívar International Airport, are major hubs for cocaine distribution into the United States by Maduro and the Cartel. Farah Decl. ¶ 26. These well-worn and highly protected drug routes also pave the way for additional crimes, including other types of terrorism against the United States. Farah Decl.¶ 27. For example, Cartel member Diosdado Cabello Rondón directed Adel El Zabayar (an "instrumental go-between" in the Cartel's efforts "to recruit terrorists from Hizballah and Hamas to assist in planning and carrying out attacks on the U.S.") to obtain "weapons, including rocket- propelled grenade launchers, AK-103s, and sniper rifles," which Cabello Rondón and El Zabayar then received from a Lebanese cargo plane that landed at Simon Bolívar airport. ECF No. 96, at 11.

INAC, in turn, controls all aspects civil aviation in Venezuela, including among other things airports, authorized flight paths, and permits and licensing of

aircraft. Accordingly, all of the narcotics trafficking through Venezuela's civil airports and much of the trafficking on airplanes with Venezuelan tail numbers requires INAC's support, protection and assistance—which INAC provides in close collaboration with the Cartel. Farah Decl. ¶ 26; ECF No. 96, at 11.

Therefore a prima facie exists to find that the Simon Bolivar airport is an instrumentality of the Cartel as well.

### III.   CONCLUSION

Accordingly, Plaintiffs' motion for a writ of garnishment is therefore **GRANTED**, and the Clerk is directed to issue a writ of garnishment (in the form attached) for the bank account at Italbank (with a balance of approximately $7.6 million, account no. 100000194) and (2) the CD at Italbank (with a balance of approximately $496,000 in the name of Instituto Aeropuerto Nacional de Maiquetía (Simon Bolívar International Airport). The entry of this Order is without prejudice to all further proceedings necessary for any entry of judgment on the writ of garnishment, including the consideration of any defenses or intervention that may follow upon issuance of the Writ.

**DONE AND ORDERED** in Chambers at Miami, Florida this 17th day of April, 2024.

_____
EDWIN G. TORRES
United States Magistrate Judge

10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:21-cv-20706-DPG

MEUDY ALBÁN OSIO in her personal capacity
And in her capacity as the personal representative
of the Estate of FERNANDO ALBERTO
ALBÁN, FERNANDO ALBÁN OSIO, and
MARIA FERNANDA ALBÁN OSIO,

    Judgment Creditors,

vs.

NICOLAS MADURO MOROS,
FUERZAS ARMADA REVOLUCIONARIAS
DE COLUMBIA ("FARC"); THE CARTEL OF
THE SUNS A.K.A. CARTEL DE LOS SOLES;
VLADIMIR PADRINO LOPEZ; MAIKEL
JOSE MORENO PEREZ; NESTOR LUIS
REVEROL TORRES; and TAREK WILLIAM
SAAB,

    Defendants.
_____/

**WRIT OF GARNISHMENT**

**THE STATE OF FLORIDA:**
To All and Singular the Sheriffs of the State:
And the U.S. Marshal's Service

**YOU ARE COMMANDED TO** summon garnishee, **ITALBANK**, to serve an answer to this writ on Plaintiffs' attorney, Jaime D. Guttman, Esq., whose address is Scale Law Partners, LLC, 777 Brickell Avenue, Suite 500 Miami, FL 33131, within 20 days after service on the garnishee, exclusive of the day of service, and to file the original with the Clerk of the Court at 400 North Miami Avenue, Miami, FL 33128 either before service on the attorney or immediately thereafter, stating whether the garnishee is indebted to Instituto Nacional de Aeronáutica ("INAC"), at the same time of the answer or was indebted at the time

1

2

of service of this writ, or at any time between such times, and in what sum and what tangible and intangible personal property of INAC the garnishee has in its possession or control at the time of the answer or had at the time of service of this writ, or at any time between such times.

Further the garnishee will be released from any liability and discharged upon compliance with Orders from this Court, including delivery of the blocked funds to Plaintiffs' counsel.

**WITNESS ANGELA E. NOBLE, as Clerk of the Court,** and the seal of said Court, at the

U.S. District Courthouse at Miami, Florida, this ___ day of _____ , 2024.

_____

Clerk of the Court