IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:21-cv-20706-DPG

MEUDY ALBÁN OSIO in her personal capacity
And in her capacity as the personal representative
of the Estate of FERNANDO ALBERTO ALBÁN,
FERNANDO ALBÁN OSIO, and MARIA
FERNANDA ALBÁN OSIO,

    Judgment Creditors,
v.

NICOLAS MADURO MOROS,
FUERZAS ARMADA REVOLUCIONARIAS
DE COLUMBIA ("FARC"); THE CARTEL OF
THE SUNS A.K.A. CARTEL DE LOS SOLES;
VLADIMIR PADRINO LOPEZ; MAIKEL
JOSE MORENO PEREZ; NESTOR LUIS
REVEROL TORRES; and TAREK WILLIAM
SAAB

    Defendants.

_____/

**PLAINTIFFS' MOTION FOR A FINAL TURNOVER JUDGMENT AS TO THE BLOCKED FUNDS OF INAC**

On April 17, 2024, this Court held that Plaintiffs met their *prima facie* burden of showing that the Instituto Nacional de Aeronáutica Civil ("INAC") is an instrumentality of Judgment Debtors Nicolas Maduro Moros ("Maduro") and the Cartel of the Suns (the "Cartel"). ECF 101. As a result, this Court granted Plaintiffs' motion for writs of garnishment on INAC funds held at Italbank and for a CD at Italbank in the name of Instituto Aeropuerto Nacional de Maiquetía (Simon Bolívar International Airport), an airport under the supervision of INAC, from which Mr. Albán was kidnapped. Italbank's answer to the writ acknowledged that it holds $7,623,461.17 in blocked INAC funds. ECF 108-1.

The 20-day window for INAC or the Judgment Debtors to move under Fla. Stat. § 77.055 expired on May 29, 2024, and neither INAC nor any Judgment Debtor appeared to object to the garnishment of the blocked INAC funds held by Italbank. As a result, Plaintiffs respectfully move

1

for a final order directing Italbank to turn over to Plaintiffs the $7,623,461.17 (plus accrued interest) in blocked INAC funds that Italbank holds.

## RELEVANT PROCEDURAL HISTORY

As this Court has recognized, the Cartel, Maduro and their co-conspirators kidnapped, tortured, and murdered Mr. Albán. *See* ECF No. 56 (Report and Recommendation on Plaintiffs' Motion for Default Judgment Against Defendant Cartel of the Suns) (the "R&R") at 4, *adopted* ECF No. 58; *see also* ECF No. 89, 90, and 91. Moreover, "the kidnapping, torture, and murder of Mr. Albán violated the Florida ATA because they occurred pursuant to a narco-terrorism conspiracy designed to flood Florida with cocaine and to launder the illegal drug money through Florida . . . ." ECF No. 56 at 17-1.

On March 1, 2024, Plaintiffs moved for writs of garnishment on approximately $7.6 million in blocked INAC funds held by Italbank and on a CD at Italbank (with a balance of approximately $496,000) in the name of Instituto Aeropuerto Nacional de Maiquetía (Simon Bolívar International Airport), an airport under the supervision of INAC, from which Mr. Albán was kidnapped. ECF 97. Plaintiffs provided evidence showing that INAC is an agency and instrumentality under TRIA of at least Judgment Debtors Maduro and the Cartel.

***This Court Holds That Plaintiffs Provided "Ample" Evidence To Make A Prima Facie Showing That INAC Is An Instrumentality of Maduro and the Cartel.*** The Court already found that Plaintiffs "have met a prima facie burden of showing … that INAC is an instrumentality of the Cartel of the Suns and Maduro." ECF 101 at 2. As the Court recognized, "Venezuela and its commercial airports, including Simon Bolivar International Airport, are major hubs for cocaine distribution into the United States by Maduro and the Cartel. Farah Decl. ¶ 26. These well-worn and highly protected drug routes also pave the way for additional crimes, including other types of terrorism against the United States." *Id.* (internal citation omitted). The Court further recognized that "all of the narcotics trafficking through Venezuela's civil airports and much of the trafficking on airplanes with Venezuelan tail numbers requires INAC's support, protection and assistance—which INAC provides in close collaboration with the Cartel." *Id.* at 10.

***Plaintiffs Complied With The Applicable Notice Requirements Under Florida's Garnishment Statutes.*** Moreover, the Court also concluded that Plaintiffs here "have complied with the Florida garnishment statutes." *See* ECF 101 at 3. In addition, after the Court's issuance

of the Writ of Garnishment, Plaintiffs complied with the notice provisions under Chapter 77, Florida Statutes. *See* ECF 104, 108, and 109. Neither INAC, Maduro, nor the Cartel appeared or otherwise attempted to contest the findings made by the Court. Accordingly, the elements under TRIA are established conclusively and Plaintiffs are entitled to a final garnishment judgment as to INAC.

***Italbank Acknowledges Holding $7.6 Million In Blocked INAC Funds, and Italbank Erroneously Implies That Plaintiffs Need An OFAC License.*** Italbank's answer (ECF 108-1 at 3) acknowledges holding a "deposit account in the name of INAC in the amount of $7,623,461.17 as of May 7, 2024, which is a blocked account under OFAC regulations." *Id.* Italbank's answer does not discuss the CD in the name of Instituto Aeropuerto Nacional de Maiquetía (Simon Bolívar International Airport).

In its Answer to Writ of Garnishment, however, Italbank argues that it "cannot conclude that an OFAC license is not required, unless the United States indicates that no license is required for the enforcement of a judgment or lien through garnishment if such judicial process is governed by TRIA and a court has concluded that the blocked assets come within TRIA's scope [sic]." ECF 108-1 at 4.

## ARGUMENT

Neither INAC nor any Judgment Debtor appeared to object to the garnishment. And contrary to Italbank's argument in its answer, TRIA and the applicable caselaw make clear that Plaintiffs, as victims of international terrorism, need not obtain a license from OFAC to complete their garnishment. As shown below, Plaintiffs consequently are entitled to a final order directing garnishee Italbank to turn over the blocked INAC funds to Plaintiffs.

I. **Plaintiffs Satisfy TRIA's Collection Requirements.**

As this Court's April 17, 2024 order recognized, Plaintiffs met their burden of making a *prima facie* showing that they satisfy TRIA's requirements for garnishing the blocked funds: (1) they have obtained a judgment against a terrorist based on an act of terrorism; (2) that assets they seeks are blocked; and (3) that the assets are owned by an agency or instrumentality or the judgment debtor. *Id.* The conclusions in the April 17, 2024 order remain equally correct today, as noted briefly below.

***First***, the Court concluded that "Plaintiffs' judgment is for acts of terrorism." *See* ECF 101

at 5 ("Plaintiffs satisfy the INA's definition in several ways, any one of which is sufficient to satisfy TRIA… Mr. Alban was assassinated for political reasons (citing and quoting ECF 56 at 18, which notes that "[t]he high-profile kidnapping and murder of Mr. Alban by Maduro regime agents was designed to deter other opposition members from speaking out against the Venezuelan government.").

*Second*, the Court already found that the Cartel of the Suns is a "terrorist organization." *See* ECF 101 at 5-6.

*Third*, "the [A]ssets at issue have been blocked," and the funds at issue here remain blocked. *See* ECF 101 at 6-7 ("on August 6, 2019, Italbank filed blocking reports with OFAC, indicating that it had blocked an INAC bank account containing $7,621,830.85 and a certificate of deposit ("CD") containing $496,742.33 in the name of Instituto Aeropuerto Nacional de Maiquetía (Simon Bolívar International Airport), an airport under the supervision of INAC from which Mr. Albán was kidnapped.").

*Fourth*, the Court correctly found that INAC is an instrumentality of the Cartel. *See* ECF 101 at 9 ("this Court concludes that the record submitted on the motion provides ample prima facie evidence that INAC is an instrumentality of the judgment debtors."). The Court also correctly found that Instituto Aeropuerto Nacional de Maiquetía (Simon Bolívar International Airport), from which Mr. Alban was kidnapped, also is an instrumentality of the Cartel. ECF 101 at 10 ("Therefore a prima facie exists to find that the Simon Bolivar airport is an instrumentality of the Cartel as well.").

## II. Neither INAC Nor Any Other Party Objected To The Writ of Garnishment.

Plaintiffs complied with all of the applicable statutory notice requirements, and neither INAC nor any of the Judgment Debtors appeared to object to the writ of garnishment.

Fla. Stat. § 77.041 requires mailing a Notice to Defendant within five business days after the issuance of the writ and provides that, if the Defendant/Judgment Debtor seeks to claim an exemption from garnishment, the Defendant/Judgment Debtor "must file the [exemption] form with the clerk's office within 20 days after you receive this notice." *Id.* Plaintiffs timely mailed the

Notice to the Defendants and INAC on April 22, 2024. ECF 104. The time to file an exemption expired on May 13, 2024, and no party appeared to claim an exemption from garnishment.

Fla. Stat. § 77.055 requires mailing the Defendant/Judgment Debtor, within five days after service of the garnishee's answer, a copy of the garnishee's answer and a notice "advising the recipient that he or she must move to dissolve the writ of garnishment within 20 days after the date indicated on the certificate of service in the notice." Plaintiffs timely served Italbank's answer and the notice of rights on the Judgment Debtors and INAC on May 9, 2024. *See* ECF 109. The time to move to dissolve expired on May 29, 2024, and neither the Judgment Debtors nor INAC moved to dissolve the writ.

### III.   As Terrorism Victims, Plaintiffs Are Not Required to Obtain a License From OFAC.

Italbank's answer (ECF 108-1) erroneously suggests that Plaintiffs, as victims of international terrorism, cannot recover the blocked assets absent an OFAC license or a statement from the United States government:

> Given the existence of contrary federal mandates, ItalBank cannot conclude that an OFAC license is not required, unless the United States indicates that no license is required for the enforcement of a judgment or lien through garnishment if such judicial process is governed by TRIA and a court has concluded that the blocked assets come within TRIA's scope.

ECF 108-1 at 4.

As this Court (Torres, Mag. J.) has already recognized, Plaintiffs are not required to obtain a license from OFAC in order to execute their judgment against the funds held by Italbank. As Magistrate Judge Torres has held: "There is also no requirement that Plaintiffs obtain an OFAC license before seeking attachment and execution on Movants' blocked assets… The law supports Plaintiffs' position, which indicates that TRIA judgment holders are exempt from OFAC's licensure requirements when attaching and executing on blocked assets of a terrorist party's agent or instrumentality." *Stansell v. Revolutionary Armed Forces of Colombia*, 2019 WL 10378257, at *2 (S.D. Fla. Aug. 26, 2019) (Torres, Mag. J.) (collecting authority).

Other judges in this District (and elsewhere) uniformly have reached the same conclusion as Magistrate Judge Torres. As Judge Moreno recently explained: "For a creditor **other than a victim of terrorism**, federal law requires a creditor to obtain an OFAC license to take any action that touches on a Kingpin designee's blocked property." *Marron v. Maduro Moros*, 2023 WL 3619308, at *4 (S.D. Fla. May 24, 2023) (Moreno, J.) (emphasis added). Likewise, Judge Moore

5

surveyed the applicable precedent in actions brought by terrorism victims and concluded: "Courts addressing this issue have concluded that an OFAC license is not required for a garnishee to distribute blocked assets subject to TRIA." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 2021 WL 3927826, at *4-5 (S.D. Fla. Aug. 24, 2021) (collecting authority, including *Stansell v. Revolutionary Armed Forces of Colombia*, 2019 WL 2537791, at *4 (M.D. Fla. June 20, 2019) ("As noted in the United States' Statement of Interest, to the extent assets are subject to the TRIA, as they are here, Section 201 overrides the OFAC regulations that require a party to obtain a license before it can attach an asset owned by a terrorist group or its agent or instrumentality.") (internal bracket omitted)). This result follows from the plain text of TRIA, which broadly permits terrorism victims to execute on the blocked assets of a terrorist and their agency/instrumentality *"[n]otwithstanding any other provision of law…"* 28 U.S.C. § 1610 Note.

**IV.   The United States Has Already Made Clear That Terrorism Victims Do Not Need An OFAC License Under TRIA.**

Although the applicable precedent makes clear that a terrorism victim need not obtain an OFAC license (consistent with TRIA's broad mandate permitting terrorism victims to execute on blocked assets of a terrorist's agency/instrumentality "[n]otwithstanding any other provision of law"), Italbank nonetheless appears to suggest that it wants a statement from the United States "indicat[ing] that no license is required." ECF 108-1 at 4.

The U.S. District Court for the Middle District of Florida dealt with a similar issue in *Stansell, et al. v. FARC, et al.,* No. 09-cv-2308-T-36AAS (DE 1197) (M.D. Fla. Apr. 26, 2019). There, a Magistrate Judge issued a report and commendation erroneously stating that an OFAC license was required for execution. Because the Magistrate Judge incorrectly concluded that a terrorism victim needs an OFAC license, the U.S. Department of Justice (on behalf of the U.S. government) filed a Statement of Interest explaining that TRIA judgment creditors do not require a license to collect on blocked assets:

> As set forth below, the Magistrate's Report contains two analytical errors. First. . . no license is required in the circumstances presented by Plaintiffs' Motion. Second, 31 C.F.R. § 598.205(c) does not contemplate the issuance of a license, including where (as here) none is required.
>
> **I. No OFAC License Is Required for TRIA Execution of Assets Blocked under the Kingpin Act.**
>
> The Magistrate's Report concludes that "although the newly amended Terrorism Act now allows judgment creditors to execute assets blocked under the Kingpin

6

> Act, [OFAC's] regulations appear to still require the judgment creditor, who wants to execute Kingpin-Act assets, to obtain an OFAC license." Dkt. No. 1194 at *8 (citing 31 C.F.R. §§ 598.205, 598.314(b)). Respectfully, this conclusion conflicts with the plain language of TRIA Section 201 and the Clarification Act [that clarifies TRIA § 201 to extend to assets blocked under the SDNTK/Kingpin regulations]. As set forth above, TRIA Section 201 provides that "[n]otwithstanding any other provision of law … the blocked assets of [a] terrorist party [against which a judgment has been entered] (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." 28 U.S.C. § 1610 note.
>
> Accordingly, to the extent that assets are subject to TRIA, Section 201 overrides otherwise applicable OFAC regulations requiring that a license be obtained before an asset owned by a terrorist party or its agent or instrumentality can be attached. See, e.g., Estate of Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch, 919 F. Supp. 2d 411, 422 (S.D.N.Y. 2013) ("[I]n the event a court determines that blocked assets are subject to TRIA, those funds may be distributed without a license from OFAC."); see also Amicus Brief of the United States, Harrison v. Republic of Sudan, No. 14-121, Dkt. No. 101 (2d Cir. Nov. 6, 2015), at 7 (statement of the United States, informing the Court of its position on this issue); Statement of Interest of the United States, Martinez v. Republic of Cuba, No. 07 Civ. 6607, ECF No. 79 (S.D.N.Y. Oct. 16, 2015), at 6-7 (same). In short, TRIA's express application "notwithstanding any other provision of law" obviates any otherwise applicable regulatory licensing requirement, where the asset in question qualifies as a "blocked asset" within the meaning of TRIA Section 201 and the other requirements of that section are met. Under the plain terms of the Clarification Act, assets seized or frozen under the Kingpin Act meet the definition of "blocked assets."

Exhibit 1 (Statement of Interest by the United States in *Stansell v. Revolutionary Armed Forces of Columbia*, Case No. 8:09-cv-02308-CEH-AAS, at ECF 1197 (M.D. Fla. Apr. 26, 2019) (bold original)). Simply put, the plain text of TRIA's "notwithstanding any other provision of law" clause makes clear that terrorism victims need not obtain an OFAC license before executing on a terrorist agency/instrumentality's blocked assets, as the United States has already stated.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs do not require an OFAC license and are entitled to an order directing the turnover of the blocked INAC in the amount of $7,623,461.17 (plus accrued interest). Attached as Exhibit 2 is a proposed turnover order directing the distribution of the blocked assets at issue to Plaintiffs.

| | |
|---|---|
| Respectfully submitted on June 18, 2024. | */s/ Jaime D. Guttman* <br> Fla. Bar No. 44076 <br> *jaime@scale.law* <br> Scale Law Partners, LLC <br> 777 Brickell Avenue, Suite 500 <br> Miami, FL 33131 <br> (786) 273-9033 (Main) <br><br> *Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing document on June 18, 2024 through CM/ECF, which automatically and electronically delivered notice of filing to counsel of record for all parties that have appeared.

*/s/ Jaime D. Guttman*