IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:21-cv-20706-DPG

MEUDY ALBÁN OSIO in her personal capacity
And in her capacity as the personal representative
of the Estate of FERNANDO ALBERTO ALBÁN,
FERNANDO ALBÁN OSIO, and MARIA
FERNANDA ALBÁN OSIO,

       Plaintiffs / Judgment Creditors,

v.

NICOLAS MADURO MOROS,
FUERZAS ARMADA REVOLUCIONARIAS
DE COLUMBIA ("FARC"); THE CARTEL OF
THE SUNS A.K.A. CARTEL DE LOS SOLES;
VLADIMIR PADRINO LOPEZ; MAIKEL
JOSE MORENO PEREZ; NESTOR LUIS
REVEROL TORRES; and TAREK WILLIAM
SAAB

       Defendants / Judgment Debtors.

_____/

## JUDGMENT CREDITORS' MOTION FOR A FINAL TURNOVER JUDGMENT AS TO CERTAIN ADDITIONAL BLOCKED FUNDS PER ECF No. 101

On April 17, 2024, this Court held that Plaintiffs met their *prima facie* burden of showing that the Instituto Aeropuerto Nacional de Maiquetia ("Airport" or "Simon Bolívar International Airport") is an instrumentality of Judgment Debtors Nicolas Maduro Moros ("Maduro") and the Cartel of the Suns (the "Cartel"). ECF 101 at 10. As a result, this Court granted Plaintiffs' motion for a writ of garnishment directed to Italbank for blocked assets held in the name of Simon Bolívar International Airport. Judgment Creditors inadvertently failed to include a proposed writ of garnishment for the Airport funds, and thus it was not included as part of the turnover order in the Order Adopting Report and Recommendation for TRIA Turnover (ECF 125). On August 12, 2024, the Court issued a Writ of Garnishment for the Airport funds (ECF 130), and on August 15, 2024, Italbank Answered the Writ of Garnishment confirming it is still holding the blocked funds that belong to the Airport (ECF 136).

Specifically, Italbank's answer to the writ (ECF 136-1) sets forth that Italbank holds (a) a CD valued at $244,712.33 and (b) a Checking Account containing $252,030, both of which are blocked account under OFAC regulations because both are held on behalf of Simon Bolívar International Airport.

The 20-day window for INAC, the Airport, or the Judgment Debtors to move under Fla. Stat. § 77.055 expired on September 9, 2024, and neither INAC, the Airport, nor any Judgment Debtor appeared to object to the garnishment of the blocked Airport funds held by Italbank. As a result, Plaintiffs respectfully move for a final order directing Italbank to turn over to Plaintiffs the $496,742.33 (plus accrued interest) in blocked Airport funds that Italbank holds. For the same reasons set forth in the Report and Recommendation on Judgment Creditors' Motion for TRIA Turnover dated July 17, 2024 ECF 121 (*adopted* ECF 125), the Court should grant this motion.

<u>**RELEVANT PROCEDURAL HISTORY**</u>

As this Court has recognized, the Cartel, Maduro and their co-conspirators kidnapped, tortured, and murdered Mr. Albán. *See* ECF No. 56 (Report and Recommendation on Plaintiffs' Motion for Default Judgment Against Defendant Cartel of the Suns) (the "R&R") at 4, *adopted* ECF No. 58; *see also* ECF No. 89, 90, and 91. Moreover, "the kidnapping, torture, and murder of Mr. Albán violated the Florida ATA because they occurred pursuant to a narco-terrorism conspiracy designed to flood Florida with cocaine and to launder the illegal drug money through Florida . . . ." ECF No. 56 at 18.

On March 1, 2024, Plaintiffs moved for writs of garnishment on funds held by Italbank (with a balance of approximately $496,000) in the name of Instituto Aeropuerto Nacional de Maiquetía (Simon Bolívar International Airport), an airport under the supervision of INAC, from which Mr. Albán was kidnapped. ECF 97. Plaintiffs provided evidence showing that the Airport is an agency and instrumentality under TRIA of at least Judgment Debtors Maduro and the Cartel.

***<u>This Court Held That Plaintiffs Provided "Ample" Evidence To Make A Prima Facie Showing That The Airport Is An Instrumentality of Maduro and the Cartel.</u>*** The Court already found that Plaintiffs "have met a prima facie burden of showing … that INAC is an instrumentality of the Cartel of the Suns and Maduro," ECF 101 at 2, and that for the same reasons "a prima facie [case] exists to find that Simon Bolívar International Airport is an instrumentality of the Cartel as well," *id.* at 10. As the Court recognized, "Venezuela and its commercial airports, including Simon

Bolivar International Airport, are major hubs for cocaine distribution into the United States by Maduro and the Cartel." *Id.* at 9. "These well-worn and highly protected drug routes also pave the way for additional crimes, including other types of terrorism against the United States." *Id.* (internal citation omitted). The Court further recognized that "all of the narcotics trafficking through Venezuela's civil airports and much of the trafficking on airplanes with Venezuelan tail numbers requires INAC's support, protection and assistance—which INAC provides in close collaboration with the Cartel." *Id.* at 10.

*Judgment Creditors Complied With The Applicable Notice Requirements Under Florida's Garnishment Statutes.* Moreover, the Court also concluded that Judgment Creditors "complied with the Florida garnishment statutes." *See* ECF 101 at 3. To be sure, after the Court's issuance of the new Writ of Garnishment, Judgment Creditors once again complied with the notice provisions under Chapter 77, Florida Statutes. *See* ECF 104 (certification of service for motion for writ of garnishment), ECF 154[1] (notice of compliance with Fla. Stat. § 77.041), ECF 136-1 (Italbank answer to writ of garnishment), and ECF 140 (notice of compliance with Fla. Stat. § 77.055). Neither INAC, the Airport, nor any Judgment Debtor appeared or otherwise attempted to contest the findings made by the Court. Accordingly, the elements under TRIA are established conclusively, and Judgment Creditors are entitled to a final garnishment judgment as to Simon Bolívar International Airport.

*Italbank Acknowledges Holding $496,742 In Blocked Simon Bolívar International Airport Funds.* Italbank's answer (ECF 136-1 at 2) acknowledges that "Italbank has in its possession (a) a CD valued at $244,712.33 and (b) a Checking Account containing $252,030, both of which are blocked account under OFAC rules and regulations in compliance with the applicable sanctions." *Id.*

## ARGUMENT

Neither INAC, the Airport, nor any Judgment Debtor appeared to object to the garnishment. As shown below, Judgment Creditors are entitled to a final order directing garnishee Italbank to turn over the blocked INAC funds to Judgment Creditors.

---

[1] Service was performed on August 12, 2024, but due to a clerical error the Certificate of Service was inadvertently not filed contemporaneously.

## I.   Plaintiffs Satisfy TRIA's Collection Requirements.

As this Court's April 17, 2024 order recognized, Plaintiffs met their burden of making a *prima facie* showing that they satisfy TRIA's requirements for garnishing the blocked funds: (1) they have obtained a judgment against a terrorist based on an act of terrorism; (2) the assets they seek are blocked; and (3) the assets are owned by an agency or instrumentality of the judgment debtor.  *Id.*  The conclusions in the April 17, 2024 order remain equally correct today, as noted briefly below.

*First*, the Court concluded that "Plaintiffs' judgment is for acts of terrorism." *See* ECF 101 at 5 ("Plaintiffs satisfy the INA's definition in several ways, any one of which is sufficient to satisfy TRIA… Mr. Albán was assassinated for political reasons (quoting ECF 56 at 18, which notes that "[t]he high-profile kidnapping and murder of Mr. Albán by Maduro regime agents was designed to deter other opposition members from speaking out against the Venezuelan government")). Further, the Court already found that the Cartel of the Suns is a "terrorist organization." *See* ECF 101 at 5-6.

*Second*, the amount sought does not exceed Judgment Creditors' compensatory damages. The Court awarded Judgment Creditors $217 million in compensatory damages, plus accrued interest. ECF 91; *see* ECF 113 at 2. The amount collected thus far by the Judgment Creditors have been applied to accrued interest, and the entire principal amount of the judgment still remains outstanding.[2]

*Third*, "the [a]ssets at issue have been [b]locked," and the funds at issue here remain blocked. *See* ECF 101 at 6-7 ("on August 6, 2019, Italbank filed blocking reports with OFAC, indicating that it had blocked an INAC bank account containing $7,621,830.85 and a certificate of deposit ("CD") containing $496,742.33 in the name of Instituto Aeropuerto Nacional de Maiquetía (Simon Bolívar International Airport), an airport under the supervision of INAC from which Mr. Albán was kidnapped."); 136-1 at 2 ("Italbank has in its possession (a) a CD valued at $244,712.33 and (b) a Checking Account containing $252,030, both of which are blocked account under OFAC

---

[2] *See Devex Corp. v. Gen. Motors Corp.*, 749 F.2d 1020, 1025 n.6 (3d Cir. 1984) (explaining that "[t]he United States rule, which provides that payments be applied first to accrued interest and then to principal, has been followed by the federal courts for almost a century and a half," and holding that the United States rule applies under 28 U.S.C. § 1961 unless the parties agree otherwise) (collecting cases).

rules and regulations in compliance with the applicable sanctions.").

**Fourth**, the Court correctly found that INAC is an instrumentality of the Cartel. *See* ECF 101 at 9 ("this Court concludes that the record submitted on the motion provides ample prima facie evidence that INAC is an instrumentality of the judgment debtors."). The Court also correctly found that Instituto Aeropuerto Nacional de Maiquetía (Simon Bolívar International Airport), from which Mr. Albán was kidnapped, also is an instrumentality of the Cartel. *Id.* at 10 ("Therefore a prima facie [case] exists to find that the Simon Bolivar airport is an instrumentality of the Cartel as well.").

## II.   Neither INAC, the Airport, Nor Any Other Party Objected to The Writ of Garnishment.

Judgment Creditors complied with all of the applicable statutory notice requirements, and neither INAC, the Airport, nor any of the Judgment Debtors (or any other party for that matter) appeared to object to the writ of garnishment.

Fla. Stat. § 77.041 requires mailing a Notice to Defendant within five business days after the issuance of the writ and provides that, if the Defendant/Judgment Debtor seeks to claim an exemption from garnishment, the Defendant/Judgment Debtor "must file the [exemption] form with the clerk's office within 20 days after you receive this notice." *Id.* Judgment Creditors timely mailed the Notice to the Defendants and INAC on April 22, 2024. ECF 104. The time to file an exemption expired on May 13, 2024, and no party appeared to claim an exemption from garnishment.

Fla. Stat. § 77.055 requires mailing the Defendant/Judgment Debtor, within five days after service of the garnishee's answer, a copy of the garnishee's answer and a notice "advising the recipient that he or she must move to dissolve the writ of garnishment within 20 days after the date indicated on the certificate of service in the notice." Judgment Creditors again timely served Italbank's answer and the notice of rights on the Judgment Debtors, INAC and the Airport on August 19, 2024. *See* ECF 140. The time to move to dissolve expired on September 9, 2024, and neither the Judgment Debtors nor INAC or the Airport (or any other party) moved to dissolve the writ.

## CONCLUSION

For the foregoing reasons, Judgment Creditors are entitled to an order directing the turnover of the blocked funds belonging to the Airport in the amount of $496,742.33 (plus accrued

interest). Attached as Exhibit 1 is a proposed turnover judgment directing the distribution of the blocked assets at issue to Judgment Creditors.

    Respectfully submitted on September 10, 2024.    */s/ Jaime D. Guttman*
Fla. Bar No. 44076
*jaime@scale.law*
Scale Law Partners, LLC
777 Brickell Avenue, Suite 500
Miami, FL 33131
(786) 273-9033 (Main)

*Counsel for Plaintiffs / Judgment Creditors*

## CERTIFICATE OF SERVICE

    I certify that I filed the foregoing document on September 10, 2024 through CM/ECF, which automatically and electronically delivered notice of filing to counsel of record for all parties that have appeared.

    */s/ Jaime D. Guttman*