**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 1:21-cv-20706-DPG**

MEUDY ALBÁN OSIO in her personal capacity And in her capacity as the personal representative of the Estate of FERNANDO ALBERTO ALBÁN, FERNANDO ALBÁN OSIO, and MARIA FERNANDA ALBÁN OSIO,

Plaintiffs / Judgment Creditors,

v.

NICOLAS MADURO MOROS, FUERZAS ARMADA REVOLUCIONARIAS DE COLUMBIA ("FARC"); THE CARTEL OF THE SUNS A.K.A. CARTEL DE LOS SOLES; VLADIMIR PADRINO LOPEZ; MAIKEL JOSE MORENO PEREZ; NESTOR LUIS REVEROL TORRES; and TAREK WILLIAM SAAB

Defendants / Judgment Debtors.

______________________________/

**JUDGMENT CREDITORS' AMENDED MOTION FOR A FINAL TURNOVER JUDGMENT AS TO THE BLOCKED PDVSA/BARIVEN S.A. FUNDS**

On June 10, 2024, this Court held that Judgment Creditors met their *prima facie* burden of showing that Petroleos de Venezuela, S.A. ("PDVSA") is an instrumentality of Judgment Debtors. ECF 110, *adopted* ECF 113. As a result, this Court granted Judgment Creditors' motion for writ of garnishment with regard to the funds of PDVSA and its wholly-owned subsidiary, Bariven S.A., as to which Pierce Manufacturing ("Pierce") filed a blocked property report. ECF 134. Pierce's answer to the writ states that "Pierce Manufacturing respectfully informs the Court that it deposited funds on June 10, 2022 in the amount of $1,100,984.86 in an account at Bank of America, Account Number 5359070058, beneficiary Bariven S.A. c/o PDVSA Services BV President Kennedylaan 192517JK The Hague, the Netherlands, which is a blocked account under the OFAC rules and regulations in compliance with applicable sanctions." ECF 143.

The 20-day window for PDVSA, Bariven S.A., or the Judgment Debtors to move under

Fla. Stat. § 77.055 expired on September 10, 2024, and no party appeared to object to the garnishment of the blocked PDVSA/Bariven S.A. funds. As a result, Judgment Creditors respectfully move for a final order directing Pierce to turn over to Judgment Creditors the $1,100,984.86 (plus accrued interest) in blocked PDVSA/Bariven S.A. funds from the account into which Pierce deposited the funds at Bank of America.

## RELEVANT PROCEDURAL HISTORY

As this Court has recognized, the Cartel, Maduro and their co-conspirators kidnapped, tortured, and murdered Mr. Albán. *See* ECF No. 56, *adopted* ECF 58; ECF 89, *adopted* ECF 90 and 91. Moreover, "the kidnapping, torture, and murder of Mr. Albán violated the Florida ATA because they occurred pursuant to a narco-terrorism conspiracy designed to flood Florida with cocaine and to launder the illegal drug money through Florida." ECF 89 at 12.

### 1. The Court Grants the Writ of Garnishment, Having Concluded that Plaintiffs Provided "Ample" Evidence that PDVSA Is An Instrumentality of Maduro.

On August 14, 2024, Judgment Creditors moved for a writ of garnishment on approximately $1.1 million in blocked PDVSA/Bariven S.A. funds. ECF 132. The Court earlier found that Judgment Creditors met a prima facie burden of showing that PDVSA is an agency and instrumentality of Maduro and the Cartel. ECF 110 at 6-7. As the Court recognized, OFAC designated and blocked PDVSA to "help prevent further diverting of Venezuela's assets by Maduro," and "PDVSA has long been a vehicle for corruption." *Id.* at 7 (quoting ECF 40). The Court further recognized that "OFAC has identified PDVSA as the 'primary conduit for corruption' by Maduro and described PDVSA as a Maduro-created 'secret network to evade sanctions' and to 'plunder Venezuela's resources for personal gain.'" *Id.* at 7 (quoting ECF 45).

Accordingly, on August 15, 2024, the Court issued a Writ of Garnishment, direct to Pierce. ECF No. 134. Judgment Creditors then served the writ in compliance with Florida Stat. § 77.041. *See* ECF No. 137 (certificate of service in compliance with Fla. Stat. § 77.041).

### 2. Pierce Answers the Writ

On August 19, 2024, Pierce answered the writ. ECF No. 143. The Answer states:

> Pierce Manufacturing respectfully informs the Court that it deposited funds on June 10, 2022 in the amount of $1,100,984.86 in an account at Bank of America, Account Number 5359070058, beneficiary Bariven S.A. c/o PDVSA Services BV President Kennedylaan 192517JK The Hague, the Netherlands, which is a blocked account under the OFAC rules and regulations in compliance with

> applicable sanctions. Pierce Manufacturing has no claim against these funds.
>
> At the time of this Notice of Answer, and at all times between service of the Writ and this Notice of Answer: (1) Pierce Manufacturing is not indebted to Petroleos de Venezuela ("PDVSA") and/or Bariven S.A.; and (2) Pierce Manufacturing has not had any tangible and intangible personal property of PDVSA and/or Bariven S.A. in its possession or control.

After Pierce filed its Answer, on August 21, 2024, the Judgment Creditors served the Answer in accordance with Fla. Stat. § 77.055. *See* 145 (Certificate of service in accordance with Fla. Stat. § 77.055).

**3. PDVSA, Bariven S.A. and the Judgment Debtors Fail to Contest the Writ**

Under Fla. Stat. § 77.055, PDVSA, Bariven S.A. and the Judgment Debtors has 20 day (i.e., until September 10, 2024) to contest the writ. "Failure of the defendant or other interested person to timely file and serve [a] motion to dissolve within such time limitation shall result in the striking of the motion as an unauthorized nullity by the court, and ***the proceedings shall be in a default posture*** as to the party involved." Fla. Stat. § 77.07(2) (emphasis added); *see Guzman Mila v. Big Steve's Deli*, LLC, No. 20-60367-CIV, 2020 WL 9460229, at *2 (S.D. Fla. Oct. 26, 2020), *report and recommendation adopted*, No. 0:20-CV-60367, 2021 WL 2753937 (S.D. Fla. July 2, 2021) (granting default judgment against party that failed to timely contest writ of garnishment). Here, neither PDVSA, Bariven S.A., nor Judgment Debtors appeared or otherwise sought to oppose the writ.

**4. The Initial Motion for a Turnover Judgment and the Meet-and-Confer Between Plaintiffs and Pierce.**

Based on the facts as set forth above, on September 11, 2024, Judgment Creditors moved for a turnover judgment with respect to the blocked funds. ECF No. 157. After Judgment Creditors filed their motion for a turnover judgment, Pierce contacted Judgment Creditors, leading to a 40 minute meet-and-confer between Judgment Creditors' counsel and counsel for Pierce. A true and correct email from Judgment Creditors to Pierce, carefully memorializing the meet-and-confer, and Pierce's response to that email, is attached as Exhibit A hereto. Below, Judgment Creditors summarize the meet-and-confer, during which Pierce requested that Judgment Creditors withdraw their turnover motion "as a courtesy" and further suggest that Pierce might pursue sanctions if Judgment Creditors failed to withdraw their turnover motion.

***First,*** during the meet-and-confer, Pierce expressed the position that Pierce is not holding

any assets belonging to PDVSA/Bariven, S.A., and stated orally that the Bank of America account in which Pierce deposited the PDVSA/Bariven, S.A. assets is "[f]or the benefit of PDVSA/Bariven, S.A.," and further stated orally that Pierce is not an accountholder or signatory to the account. In response, Judgment Creditors explained that these statements are inconsistent with the documents that Pierce has produced. For example, under applicable OFAC regulations, the obligation to report blocked property falls on the "U.S. person . . . ***holding*** property blocked." 31 C.F.R. § 501.603(a) (emphasis added). Here, Pierce filed the blocked property report as "the reporting institution," which is consistent with Pierce holding the blocked property. *See* Exhibit B (blocked property report filed by Pierce). Further, under applicable OFAC regulations, "any U.S. person ***holding*** funds, such as currency, bank deposits, or liquidated financial obligations, subject to § 542.201 [i.e., blocking under the Venezuela sanctions] shall hold or place such funds in a blocked interest-bearing account located in the United States." 31 C.F.R. § 542.203. Thus, Pierce placing (or allowing the placement of) the blocked PDVSA/Bariven S.A. funds into a Bank of America account is fully consistent with OFAC regulations imposing an obligation on Pierce, as the party holding the blocked funds, to keep such funds in an interest-bearing account located in the United States.

Notwithstanding that the only documents that Pierce has produced are consistent with the conclusion that Pierce is holding the blocked PDVSA/Bariven SA funds, Judgment Creditors stated that Judgment Creditors would nevertheless seriously consider withdrawing their motion for a turnover judgment—if Pierce could supply ***documents*** demonstrating that it has no ability to control the account. *See* Exhibit A ("[W]e understand that Pierce directed BofA to open the blocked account at issue. We are not aware of any instance in which a bank, such as BofA, would open an account without written instructions. We have subpoenaed such materials, and thus far, you have not provided any such documents. If such documents were to establish that Pierce is not a signatory, power of attorney, or the like, with regard to the blocked account, and further that BofA would not take instructions from Pierce concerning the disposition of the blocked account if it were to be unblocked, we would be willing to give serious consideration to withdrawing the motion."). Pierce, however, has declined to produce any such evidence.

***Second,*** during the meet-and-confer, Pierce took the position Judgment Creditors needs an OFAC license to obtain the blocked PDVSA assets, and further took the position that if the Court

were to order Pierce to turnover the funds to Judgment Creditors, Pierce would need an OFAC license, which Pierce has no obligation to seek. Judgment Creditors explained that this Court has already rejected similar arguments. *See* ECF No. 121, at 4 (Report & Recommendations, holding that under TRIA, Plaintiffs do not need an OFAC license to obtain blocked assets); *adopted* ECF No. 125.

***Third,*** Pierce stated that Judgment Creditors' motion for a turnover order incorrectly described Pierce's position on the issues to the Court. Judgment Creditors explained that they acted in good faith in describing their understanding of Pierce's position to the Court, and Judgment Creditors further committed to make best efforts to explain Pierce's positions to the Court clearly. The instant Amended Turnover Motion reflects Judgment Creditors good faith efforts to accurately describe Pierce's positions to the best of Judgment Creditors' abilities.

***Finally*,** Pierce further stated that it has "additional concerns" about Judgment Creditors' turnover motion. Despite 40 minutes of conversation, Judgment Creditors were unable to discern what those concerns might be. Accordingly, in Judgment Creditors' email memorializing the meet-and-confer, Judgment Creditors respectfully requested that Pierce clarify if any of Judgment Creditors' descriptions of the meet-and-confer were inaccurate, or if Judgment Creditors were omitting anything material. Exhibit A ("Please let us know right away if these statements are not an accurate understanding of Pierce's concerns with the motion, or if any of Pierce's concerns are omitted from these statements."). In response, Pierce took the same approach that it did during the oral conversation, *i.e.*, it insisted that Judgment Creditors were somehow in error but offered no clarifications: "[Pierce's counsel] discussed the concerns we have regarding the motion you filed yesterday for a Final Turnover Judgment during our telephone conversation with you earlier this afternoon. Your email below does not accurately or adequately capture the concerns we explained to you during our nearly 40 minute telephone conversation." Exhibit A.

## ARGUMENT

### I. The Evidence Shows that Pierce Is the Correct Garnishee

The Florida garnishment statute provides in relevant part:

> **Right to writ of garnishment.**—Every person or entity who has sued to recover a debt or has recovered judgment in any court against any person or entity [here, Judgment Creditors] has a right to a writ of garnishment, in the manner hereinafter provided, to subject [1] **any debt due to defendant by a third person** or [2] any debt not evidenced by a negotiable instrument that will become due absolutely through the passage of time

> only to the defendant by a third person, and [3] any tangible **or intangible personal property** of defendant in the possession or **control of a third person**.

Fla. Stat. § 77.01 (emphasis added).

***First***, Pierce is an appropriate garnishee because it owes a debt to defendant/OFAC blocked instrumentality PDVSA/Bariven S.A. Pierce's June 13, 2022 letter to Bariven—produced to Judgment Creditors via discovery in this matter—explains that Pierce is cancelling two purchase orders ("PO") with Bariven, and that as a result, Pierce owes Bariven a refund of Bariven's prepayments to Pierce on the now-cancelled POs that Bariven had placed with Pierce. *See* Exhibit C (Letter from Jeffrey A. Trelka, Pierce Manufacturing Inc. to Bariven S.A. c/o PDVSA Services, BV, June 13, 2022) (Pierce's "notice of avoidance of PO 5400004346 and the notice of cancellation of PO 5400004645 contained ***herein creates a claim for Bariven for a return of the prepayments under those two POs*** and a simultaneous claim for Pierce for damages."). Because Pierce owes the funds at issue to a defendant, Pierce is a proper garnishee under the plain terms of Fla. Stat. § 77.01, as amended by TRIA, which expands the defendants to include any agency or instrumentality of the defendants. *See also* Exhibit B (blocked property report filed by Pierce) (explaining that Barven acquired an interest in the blocked funds "where Pierce cancelled a pre-sanctions suspended contract with Bariven"). This basis for garnishment turns exclusively on Pierce's debt to Bariven, and thus it is irrelevant where or how Pierce may have set aside funds to satisfy that debt.

***Second,*** Pierce appears to be an appropriate garnishee for yet another, independent reason. Pierce appears to hold (or at least control) an account at Bank of America that contains funds that Pierce says belong to PDVSA/Bariven S.A. According to Pierce's own blocking report, "Bariven SA acquired an interest in these funds when Pierce cancelled a pre-sanctions suspended contract with Bariven effective on 6/14/22. The funds were placed in a blocked account at Bank of America on 6/10/22, Account Number 5359070058." As set forth above, the fact that Pierce filed a blocking report is consistent with Pierce holding or controlling the funds in the Bank of America account. *See* 31 C.F.R. § 501.603(a) (imposing obligation to file blocking report on person "holding" blocked assets). And, the fact that the funds are in an account at Bank of America is consistent with OFAC regulations providing that "any U.S. person ***holding*** funds, such as currency, bank deposits, or liquidated financial obligations [subject to Venezuela sanctions]" must "place such funds in a blocked interest-bearing account located in the United States." 31 C.F.R. § 542.203.

Further demonstrating that Pierce has control over these funds, Pierce offset certain debts that Pierce claimed that PDVSA / Bariven S.A. owed to Pierce by subtracting those debts from the funds that Pierce owed to PDVSA / Bariven. *See* Exhibit C ("Pierce also formally invokes its set-off right and hereby sets off its claims for damages against the prepayments made by Bariven in relation to the POs").[1]

As Judgment Creditors have explained to Pierce, if Pierce provides documents demonstrating that Bank of America would not honor an instruction from this Court directing Pierce to turnover the funds (e.g., in the event that the funds were unblocked, Bank of America would treat Pierce as a stranger to the account and require that the funds be paid to Bariven, S.A.), then Judgment Creditors will likely abandon this latter basis for garnishment.

## II. Judgment Creditors Satisfy TRIA's Collection Requirements.

As this Court's June 10 order recognized, Judgment Creditors met their burden of making a *prima facie* showing that they satisfy TRIA's requirements for garnishing the blocked funds: (1) they have obtained a judgment against a terrorist based on an act of terrorism; (2) the amount sought does not exceed their compensatory damages; (3) the assets they seeks are blocked; and (4) the assets are owned by an agency or instrumentality of the judgment debtor. ECF 110 at 5-7, *adopted* ECF 113. These conclusions remain equally correct today, as noted briefly below.

***First***, the Court concluded that "under TRIA § 201, Defendants include a 'terrorist organization' who engaged in 'terrorist activity.'" *See* ECF 110 at 5. The individual defendants are also terrorists. *See Marron v. Moros*, 2023 WL 6356969, at *9 (S.D. Fla. Sept. 29, 2023) (defining "terrorist" as "one who 'uses violence such as bombing, shooting, or kidnapping in an attempt to intimidate ... especially as a means of achieving a political end'"); ECF 89 at 4-6 (explaining how defendants kidnapped, tortured, murdered, and defamed Mr. Albán). Further, the Court noted that "it cannot be disputed that Plaintiffs obtained a judgment based on these terrorist acts." *Id.*

***Second***, the amount sought does not exceed Judgment Creditors' compensatory damages. The Court awarded Judgment Creditors $217 million in compensatory damages, plus accrued interest. ECF 90; *see* ECF 113 at 2. The amount collected by the Judgment Creditors have been

[1] Plaintiffs have requested a copy of Pierce's OFAC license for this payment from Pierce, to itself, from blocked Beriven funds. Thus far, Pierce has not produced any such license.

applied to accrued interest, and the entire principal amount of the judgment still remains outstanding.[2]

***Third***, the assets at issue are owned by PDVSA through its wholly-owned subsidiary Bariven S.A. and are therefore blocked. *See* ECF 110 at 6 ("PDVSA … has been designated by OFAC and therefore its assets are subject to OFAC blocking[.]"); 143 (Pierce answer confirming that the PDVSA/Bariven S.A. assets are blocked). As a wholly-owned subsidiary of PDVSA, Bariven S.A. is also blocked as a matter of law. *See* 31 C.F.R. § 591.406 ("Persons whose property and interests in property are blocked pursuant to § 591.201 [which includes Venezuela sanctions] have an interest in all property and interests in property of an entity in which such persons directly or indirectly own, whether individually or in the aggregate, a 50 percent or greater interest.").

***Fourth***, the Court correctly found that PDVSA is an instrumentality of Maduro and the Cartel. *See* ECF 110 at 7 ("OFAC has identified PDVSA as the 'primary conduit for corruption' by Maduro and described PDVSA as a Maduro-created 'secret network to evade sanctions' and to 'plunder Venezuela's resources for personal gain.'").

## III. Neither PDVSA, Bariven S.A., Nor Any Other Party Objected To The Writ of Garnishment.

Judgment Creditors complied with all of the applicable statutory notice requirements, and neither PDVSA, Bariven S.A., nor any of the Judgment Debtors appeared to object to the writ of garnishment.

Fla. Stat. § 77.041 requires mailing a Notice to Defendant within five business days after the issuance of the writ and provides that, if the Defendant/Judgment Debtor seeks to claim an exemption from garnishment, the Defendant/Judgment Debtor "must file the [exemption] form with the clerk's office within 20 days after you receive this notice." *Id.* Judgment Creditors timely mailed the Notice to the Defendants and PDVSA/Bariven S.A. on August 15, 2024. ECF 137. The

[2] *See Devex Corp. v. Gen. Motors Corp.*, 749 F.2d 1020, 1025 n.6 (3d Cir. 1984) (explaining that "[t]he United States rule, which provides that payments be applied first to accrued interest and then to principal, has been followed by the federal courts for almost a century and a half," and holding that the United States rule applies under 28 U.S.C. § 1961 unless the parties agree otherwise) (collecting cases)

time to file an exemption expired on September 4, 2024, and no party appeared to claim an exemption from garnishment.

Fla. Stat. § 77.055 requires mailing the Defendant/Judgment Debtor, within five days after service of the garnishee's answer, a copy of the garnishee's answer and a notice "advising the recipient that he or she must move to dissolve the writ of garnishment within 20 days after the date indicated on the certificate of service in the notice." Judgment Creditors timely served Pierce's answer and the notice of rights on the Judgment Debtors, PDVSA, and Bariven S.A. on August 21, 2024. *See* ECF 145. The time to move to dissolve expired on September 10, 2024, and no party moved to dissolve the writ.

"Failure of the defendant or other interested person to timely file and serve [a] motion to dissolve within such time limitation shall result in the striking of the motion as an unauthorized nullity by the court, and ***the proceedings shall be in a default posture*** as to the party involved." Fla. Stat. § 77.07(2) (emphasis added); *see Guzman Mila v. Big Steve's Deli*, LLC, No. 20-60367-CIV, 2020 WL 9460229, at *2 (S.D. Fla. Oct. 26, 2020), *report and recommendation adopted*, No. 0:20-CV-60367, 2021 WL 2753937 (S.D. Fla. July 2, 2021) (granting default judgment against party that failed to timely contest writ of garnishment).

## IV. No OFAC License is Necessary For Pierce To Comply With a Turnover Order.

It is the law of the case that no OFAC license is necessary for a Judgment Creditor to obtain assets pursuant to a turnover order issued in accordance with TRIA. ECF No. 121. For the same reasons, a garnishee does not need an OFAC license to comply with a turnover order. *Id.*

## CONCLUSION

For the foregoing reasons, Judgment Creditors are entitled to an order directing the turnover of the blocked PDVSA/Bariven S.A. funds in the amount of $1,100,984.86 (plus accrued interest). Attached as Exhibit D is a proposed turnover order directing the distribution of the blocked assets at issue to Judgment Creditors.

Respectfully submitted on September 17, 2024

*/s/ Jaime D. Guttman*
Fla. Bar No. 44076
*jaime@scale.law*
Scale Law Partners, LLC
777 Brickell Avenue, Suite 500

Miami, FL 33131
(786) 273-9033 (Main)

*/s/ Alex C. Lakatos*
Alex C. Lakatos (*pro hac vice*)
*alakatos@mayerbrown.com*
Cloe M. Anderson (*pro hac vice*)
*cmanderson@mayerbrown.com*
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000 (Main)

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing document on September 17, 2024 through CM/ECF, which automatically and electronically delivered notice of filing to counsel of record for all parties that have appeared.

*/s/ Jaime D. Guttman*