UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20706-GAYLES/TORRES

MEUDY ALBÁN OSIO in her personal capacity,
And in her capacity as the personal representative
of the Estate of FERNANDO ALBERTO ALBÁN,
FERNANDO ALBÁN OSIO, and MARIA FERNANDA
ALBÁN OSIO,

    *Plaintiffs,*

v.

NICOLAS MADURO MOROS; FUERZAS
ARMADAS REVOLUCIONARIAS DECOLOMBIA
("FARC"); THE CARTEL OF THE SUNS A.K.A.
CARTEL DE LOS SOLES; VLADIMIR PADRINO
LOPEZ; MAIKEL JOSE MORENO PEREZ; NESTOR
LUIS REVEROL TORRES; and TAREK WILLIAM
SAAB,

    *Defendants.*
_____/

## REPORT AND RECOMMENDATION ON
## PLAINTIFFS' MOTION FOR WRITS OF GARNISHMENT

This cause comes before the Court on Plaintiffs' Motion for Writ of Garnishment [D.E. 138] against funds belonging to Diques y Astilleros Nacionales ("DIANCA") and JNV Procurement Corp ("JNV"). While Plaintiffs seek an *ex parte*, pre-hearing adjudication of this motion, the motion was nonetheless filed on the public docket and Defendants filed no objection. After careful review of the motion, evidence of record, and relevant authorities, and for the reasons set forth below, we

recommend that Plaintiffs' motion be **GRANTED** and writs of garnishment be issued.[1]

## I. BACKGROUND

This lawsuit stems from Defendants' kidnapping, torture, and murder of Plaintiffs' decedent, Fernando Alberto Alban. On August 4, 2023, final default judgment was entered in Plaintiffs' favor on all eight counts of their complaint [D.E. 1] for a total judgment of $217,000,000.00 which has yet to be satisfied.

Plaintiffs' pending motion, therefore, seeks writs of garnishment pursuant to Florida law and the Terrorism Risk Insurance Act ("TRIA") as to funds belonging to DIANCA and JNV. The history of the funds begins with an apparent 2016 arbitral award in favor of DIANCA issued by the International Court of Arbitration of the International Chamber of Commerce. That award was funded into a JPMorgan escrow account by Raytheon Anschutz GmbH, an apparent "financial transactions processing" company. Approximately six years later, in October of 2022, Raytheon Anschutz GmbH confirmed to JPMorgan that the funds did indeed belong to DIANCA in connection with the arbitral award.

Subsequently, on May 30, 2023, DIANCA entered into a settlement agreement with Raytheon Anschutz GmbH for €5,059,665.00 (approximately $5,586,477.32). A few months later, on August 25, 2023, DIANCA transferred $2,976,917.83—an ostensible portion of that settlement agreement—to JNV.

---

[1] On August 19, 2024, the Honorable Darrin P. Gayles referred this matter to the Undersigned Magistrate Judge for disposition. [D.E. 141].

Both DIANCA and JNV, Plaintiffs aver, are instrumentalities of the Defendant terrorist organizations. Further, Plaintiffs argue that the assets held by DIANCA and JNV are blocked by the Office of Foreign Assets Control ("OFAC"). Accordingly, Plaintiffs contend that the assets are within the purview of the TRIA and therefore seek writs of garnishment.

## II.   ANALYSIS

First, we will determine whether Plaintiffs satisfy Florida law's garnishment requirements. Then, we will determine whether the subject funds may properly be garnished under the TRIA.

### A. *Florida Law*

Under Federal Rule of Civil Procedure 69(a)(1), "[t]he procedure on execution … must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Consequently, here, Florida law governs the writ of garnishment process and the TRIA governs whether the Court may issue a writ of execution upon property that the OFAC has blocked. *See Marron v. Moros*, No. 21-23190-CIV, 2023 WL 6356969, at *4 (S.D. Fla. Sept. 29, 2023) ("This means that Florida law provides the rules of procedure governing execution, and TRIA provides the substantive provisions that allow for executing on assets that OFAC has blocked.").

In Florida, "[e]very person or entity who has sued to recover a debt or has recovered judgment in any court against any person or entity has a right to a writ of garnishment …." Fla. Stat. § 77.01. The primary requirement under Florida law, at

3

this stage of the proceedings, is that the judgment debtor "file a motion … stating the amount of the judgment." § 77.03. The remainder of Florida's requirements are imposed after the garnishment process begins. *See, e.g.,* §§ 77.04; 77.041(2); 77.055.

Here, because Plaintiffs have filed a motion for writs of garnishment that specifies the amount of Plaintiffs' judgment, Florida law's requirements are satisfied.

### B. TRIA

Next, because DIANCA and JNV are third-party owners of the subject funds, the crux of the Court's analysis is whether the funds may be subject to garnishment under the TRIA.

Under Section 201(a) of the TRIA, victims of international terrorism are permitted to execute upon "the blocked property not only of the defendant terrorist/judgment debtor, but also the defendant's agency or instrumentality." *Marron*, 2023 WL 6356969, at *8. Indeed, "[a]s relevant here, § 201(a) of the [TRIA], codified as a note to 28 U.S.C. § 1610, provides that '[n]otwithstanding any other provision of law ... the blocked assets of [a] terrorist party [against which a judgment is obtained] (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment.'" *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1346 (11th Cir. 2022) (*Stansell V*).

There are four requirements "to execute on or attach the assets of a third party who is alleged to be an agency or instrumentality of a terrorist party." *Id.* at 1347. First, the movant must prove that "he obtained a judgment against a terrorist party

4

for a claim based on an act of terrorism." *Id*. Second, the movant must prove "the amount sought to be executed … does not exceed the compensatory damages awarded to the movant." *Id*. Third, the third party's asset must be "blocked." *Id*. Lastly, the third party must be "an agency or instrumentality of the terrorist party." *Id*. (citing *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713 (11th Cir. 2014) (*Stansell II*). These findings must be made before a writ of garnishment can issue. *See Stansell II*, 771 F.3d at 729 ("Before a writ of garnishment or execution pursuant to TRIA § 201 issues, a district court must determine that the property owner is … an agency or instrumentality of the judgment debtor terrorist party.").

We will address in turn the four requirements.

### 1. *Whether a proper judgment was obtained*

First, we must determine whether Plaintiffs obtained a judgment against a terrorist party for an act of terrorism. *Id*. Specifically, Plaintiffs must demonstrate that Defendants are a "terrorist organization" who committed "terrorist activity" under 8 U.S.C. § 1182(a)(3)(B)(iii). Terrorist activity includes "assassination" and/or "the use of any … weapon or dangerous device … with intent to endanger … the safety of one or more individuals." § 1182(a)(3)(B)(iii)(V)(b).

Here, as the Court found in its since-adopted Report and Recommendation on Plaintiffs' summary judgment motion, the Defendant-cartel is a group of two or more persons; is responsible for killing Mr. Alban; and is responsible for using weapons or dangerous devices in the torture of Mr. Alban. Thus, under TRIA § 201, Defendants are a "terrorist organization" who engaged in "terrorist activity." Additionally, it

5

cannot be disputed that Plaintiffs obtained a judgment based on these terrorist acts. [D.E. 59]. Thus, the first requirement is met.

### 2. *Whether the amount sought exceeds the compensatory damages*

Here, Plaintiffs' compensatory damage award is $216,000,000.00. While it is not entirely made clear in Plaintiffs' motion or exhibits how much money they seek from the writs of garnishment, it seems to be no more than $9,000,000.00 (that is our conservative estimate if the ostensible settlement funds and the payment to JNV are added together). [D.E. 138 at 7]. Thus, although the Court is not certain the amount of money Plaintiffs seek via the writs, the Court can comfortably conclude that the large compensatory damages award vastly exceeds the amount sought by the writ. This requirement is therefore satisfied.

### 3. *Whether the assets are blocked*

Whether an asset is "blocked" can be "definitively established by the fact that OFAC has taken action against the alleged agency or instrumentality under TWEA or IEEPA." *Stansell II*, 771 F.3d at 726.

Here, Plaintiffs rely on Executive Order 13884, which blocked "all property and interest in property of the Government of Venezuela." *See* Exec. Order No. 13884, 84 FR 38843 (2019).[2] Because the subject funds belonged to DIANCA and/or JNV, and because DIANCA is a subsidiary of Petroleos de Venezuela, S.A. ("PDVSA"), the Executive Order renders the subject funds blocked by OFAC. Additionally, as evidenced by the affidavit of Douglas C. Farah, a recognized Subject Matter Expert

---

[2] https://www.federalregister.gov/documents/2019/08/07/2019-17052/blocking-property-of-the-government-of-venezuela

6

for the Department of Defense on the illegal conduct of Mr. Maduro and the Defendant-cartel among other relevant matters, Raytheon Anschutz GmbH reported to JPMorgan that the funds belonged to DIANCA and that the funds were blocked pursuant to Executive Order 13884. Subsequently, Citibank itself identified as blocked the funds transferred to JNV and submitted a corresponding blocking report to OFAC.

Considering these facts and evidence, we find that at this stage, Plaintiffs have satisfied their burden and have demonstrated that the subject funds are blocked. While later in this process DIANCA will have the right to contest whether it is in fact a subsidiary of PDVSA, Plaintiffs have made a showing (as explained below) that it is indeed a subsidiary of PDVSA. Thus, Plaintiffs have made a showing that DIANCA's assets, and the assets that DIANCA transferred to JNV, are blocked by OFAC under Executive Order 13884.

### 4. *Whether DIANCA and JNV are agencies or instrumentalities*

Lastly, we must determine whether Plaintiffs have shown that DIANCA and JNV are agencies or instrumentalities of Defendants. In the Eleventh Circuit, "[a] third party who provides material support to a terrorist at any point in time constitutes an agency or instrumentality, even if they purportedly stopped aiding the terrorist." *Marron*, 2023 WL 6356969, at *13 (citing *Stansell V*, 45 F.4th at 1350). Further, "[t]he Eleventh Circuit endorsed a broad definition of agency, which includes any party that provides material support to a terrorist party, whether financial (e.g.

7

money laundering), technological, or the provision of goods or services." *Id*. (citing *Stansell II*, 771 F.3d at 724, n.6).

As to DIANCA, Plaintiffs rely heavily on the affidavit of Mr. Farah. In his affidavit, Mr. Farah explains that DIANCA is a subsidiary of PDVSA (an entity whom this Court has already found to be an agency or instrumentality of Defendants [D.E. 110; 113]). To support that assertion, Mr. Farah presents a well-researched method that identifies the president of DIANCA as being under the direct command of the Defendant-cartel and Defendant-administration.[3] Mr. Farah also depicts DIANCA as a money launderer for Defendants, as evidenced by, for example, the settlement at issue here as well as past occurrences where DIANCA assisted in "schemes to build oil tankers where millions of dollars were unaccounted for."[4]

As to JNV, Plaintiffs similarly rely upon Mr. Farah's expertise to demonstrate instrumentality status. To that end, Mr. Farah opines that Raytheon Anschutz GmbH's transfer of the settlement money to JNV is a hallmark of money laundering.

This is indicative of money laundering, concludes Mr. Farah, because no valid business explanation exists for why the money would have been transferred to JNV—a "home based business" formed just a few months prior to the transfer, who received

---

[3] This included a source evidencing a collaboration between PDVSA and DIANCA in which they together reviewed strategic projects. *See* "Venezuela: PDVSA and Dianca Reviewed Strategic Projects." *Mena Report*, 27 Apr. 2017. *Gale Academic OneFile* (https://go.gale.com/ps/i.do?id=GALE%7CA494832886&sid=sitemap&v=2.1&it=r&p=AONE&sw=w&userGroupName=anon%7E687b94f4&aty=open-web-entry).

[4] As his source, Mr. Farah cites the following article: https://alianza.shorthandstories.com/Rafael-Ram-rez-and-the-fleet-that-struck-dry-land-before-setting-sail-/index.html.

8

a multi-million dollar transfer from an apparent instrumentality of Defendants and apparently has one employee. This is bolstered by the fact that the transferor left a message explaining that the transfer of funds was in connection with the arbitral settlement award. Additionally, Citibank's own investigation led to no legitimate business explanation for the payment, and therefore Citibank filed a blocking report with OFAC. Subsequently, the funds were blocked.

In consideration of Mr. Farah's expertise, and his well-explained and well-supported affidavit, we find that Plaintiffs have carried their burden of showing that DIANCA and JNV are agencies or instrumentalities of Defendants. Specifically, we are persuaded by the evidence that shows that DIANCA is under the command and, at the very least, working with Defendants for activities that include money laundering. *See Stansell v. Revolutionary Armed Forces of Colombia*, No. 19-20896-CV, 2019 WL 5291044, at *8 (S.D. Fla. Aug. 21, 2019), *report and recommendation adopted sub*, 2019 WL 5290922 (S.D. Fla. Sept. 26, 2019) (finding that an entity was an agency or instrumentality of a terrorist organization where Mr. Farah's testimony connected the two through the terrorist organization's "financial activities undertaken on behalf of" the instrumentality); *Stansell v. Revolutionary Armed Forces of Colombia*, No. 8:09-CV-2308-RAL-MAP, 2011 WL 13176719, at *3 (M.D. Fla. Sept. 19, 2011) (finding that entities were agencies or instrumentalities of the defendant-cartel because there was evidence that they provided "financial or money laundering services to the [defendant-cartel] or its trafficking partners, directly or indirectly").

We are further persuaded that the transfer of the portion of the settlement award to JNV appears to have no legitimate purpose, and therefore agree with Mr. Farah that it presents indicia of money laundering. Thus, Plaintiffs have also sufficiently demonstrated that JNV is an agency or instrumentality of Defendants. *See Stansell II*, 771 F.3d at 742 (affirming a finding that an entity was an agency or instrumentality of the defendant-cartel "even if that relationship was indirect" because of evidence "that the [entity], including its members, divisions, and networks, was an agency or instrumentality of [the defendant-cartel]," and therefore there was no error where "the district court determined that the Partnerships were in turn agencies or instrumentalities of [the defendant-cartel]"); *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, No. 8:09-CV-2308-RAL-MAP, 2015 WL 13325432, at *3 (M.D. Fla. Feb. 17, 2015) (relying on Mr. Farah's testimony and finding that an entity and persons were agencies or instrumentalities of the defendant-cartel because, in part, they "assisted the defendant-cartel's financial or money laundering network").

Therefore, because Plaintiffs have satisfied their burden under *Stansell V*, we recommend that their motion for writ of garnishment be granted.

### III.   CONCLUSION

For the reasons set forth above, we recommend that Plaintiffs' motion for *ex parte*, pre-hearing writs of garnishment [D.E. 138] be **GRANTED**, and writs of garnishment be issued in accordance with the writs provided by Plaintiffs. [D.E. 138

at 12–13]. Subsequent to the issuance of the writs, Plaintiffs must comply with all notice requirements under Florida law.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, to the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE and SUBMITTED** in Chambers in Miami, Florida this 1st day of October, 2024.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge