UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20706-GAYLES/TORRES

MEUDY ALBÁN OSIO, et al.,

    *Plaintiffs,*

v.

NICOLAS MADURO MOROS, et al.,

    *Defendants.*
_____/

## ORDER ON EXPEDITED MOTION TO STAY SALE OF PROPERTY

This cause comes before the Court on a motion filed by non-party, Petroleos de Venezeula, S.A. ("PDVSA"), to stay the U.S. Marshals' impending auction of the 2011 Learjet 45, Tail Number YV2739 ("the Learjet"), which is registered to PDVSA but currently blocked by the Office of Foreign Assets Control ("OFAC"). Plaintiffs have timely responded to the motion [D.E. 334], to which PDVSA has timely replied. [D.E. 335]. The Motion, therefore, is ripe for disposition.[1] After careful review of the briefing and relevant authorities, and for the reasons set forth below, PDVSA's Motion is **DENIED**.

---

[1] On November 8, 2024, the Honorable Darrin P. Gayles referred all post-judgment matters to the Undersigned Magistrate Judge for disposition. [D.E. 233].

## I. BACKGROUND

This lawsuit stems from Defendants' kidnapping, torture, and murder of Plaintiffs' decedent, Fernando Alberto Alban. On August 4, 2023, final default judgment was entered in Plaintiffs' favor on all eight counts of their complaint [D.E. 1] for a total judgment of $217,000,000.00.

To satisfy that judgment, Plaintiffs, on January 5, 2024, moved for a writ of execution on the Learjet, which is registered to PDVSA (an agency or instrumentality of Defendants). [D.E. 97]. On June 10, 2024, the Undersigned entered a Report and Recommendation which recommended that execution issue. [D.E. 110]. On July 1, 2024, the Court adopted that Report and Recommendation [D.E. 113], and on the same day, execution issued as to the Learjet. [D.E. 114]. The writ of execution was then returned as executed by the U.S. Marshals on October 30, 2024. [D.E. 217]. Consequently, on December 2, 2024, the U.S. Marshals scheduled a public auction of the Learjet, which is to take place on January 16, 2025. [D.E. 327-1].

In the pending Motion, PDVSA seeks to stay the auction until the Court resolves PDVSA's pending Motion to Vacate numerous of this Court's orders. [D.E. 310]. Among the relief PDVSA seeks in that motion is to vacate the writ of execution entered against the Learjet. Until that motion to vacate is resolved, PDVSA argues, the U.S. Marshals' auction of the Learjet should be stayed—both as a matter of right and in the Court's discretion.

## II.     ANALYSIS

First, we will address whether PDVSA is entitled to a stay as a matter of right before addressing whether the Court, in its discretion, should grant the Motion to stay.

### A.     *Stay As a Matter of Right*

PDVSA seeks to stay the auction as a matter of right under Federal Rule of Civil Procedure 62. That rule provides: "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). Further, the Court's Local Rules provide that "[a] supersedeas bond or other security staying execution of a money judgment shall be in the amount of 110% of the judgment, to provide security for interest, costs, and any award of damages for delay." S.D. Fla. L.R. 62.1(a). "There are two exceptions to the general requirement that an appellant [or movant] post a bond to obtain a stay: '(1) where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money; and (2) where the requirement would put the defendant's other creditors in undue jeopardy.'" *Suntrust Bank v. Ruiz*, No. 1421107CIVLENARDGOOD, 2015 WL 11216713, at *2 (S.D. Fla. Nov. 6, 2015) (quoting *Avirgan v. Hull*, 125 F.R.D. 185, 186 (S.D. Fla. 1989)). The movant bears the burden of demonstrating that there exists a "need to depart from the general bond-posting requirement." *Id.* (citing *Lary v. Boston Scientific Corp.*, No. 11–cv–23820, 2015 WL 1000966, at *1 (S.D. Fla. Mar. 6, 2015)); *see also Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979) ("If a court chooses to depart from the usual requirement of a full

security supersedeas bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such a departure.").

Here, PDVSA argues that it should not have to post a bond because the Learjet is in the custody of the U.S. Marshals and blocked by OFAC. Thus, because the asset is not going anywhere, PDVSA argues that the need to post a monetary bond is obviated. Further, PDVSA argues that because much or all of its available assets are blocked by OFAC, posting a bond is impracticable.

In response, Plaintiffs argue that the Learjet's disposition does not provide sufficient grounds to obviate PDVSA's obligation to post a 110% bond. In support, Plaintiffs point to numerous courts rejecting similar arguments, in light of the overwhelming preference that movants who seek a stay must post a monetary bond.

We agree with Plaintiffs that PDVSA has not carried its burden of demonstrating any of the narrow exceptions to the bond requirement. As to the first exception ("where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money," *Avirgan*, 125 F.R.D. at 186), PDVSA has not shown—or even attempted to show—that its ability to satisfy the outstanding judgment is plainly obvious. The Court, for example, has not been provided any sort of financial documents that show a plain ability to satisfy the judgment, or even an affidavit averring same. Without such an objective showing—or any showing— PDVSA flagrantly fails to carry its hefty burden. *See Lary*, 2015 WL 1000966, at \*2 (quoting *Avirgan*, 125 F.R.D. at 186) (denying motion to waive supersedeas bond

requirement because the movants "failed to convince the Court that the defendants' 'ability to pay the judgment is so plain that the cost of the bond would be a waste of money,'" even where the movants provided affidavits and financial information); *Avirgan*, 125 F.R.D. at 187 (quoting 7 Moore's Federal Practice, § 62.06 at 62–34 (2d ed. 1987)) ("The court can only dispense with the requirement for a bond after the judgment debtor has 'objectively demonstrated his ability to satisfy the judgment and maintain the same degree of solvency through the appellate process.'"); *W. Sur. Co. v. Mooney Const., Inc.*, No. 1:12-CV-1309-WSD, 2013 WL 6048721, at *2 (N.D. Ga. Nov. 14, 2013) ("Defendants here have not demonstrated extraordinary circumstances and have not proposed an alternative means to protect Western's interest. Accordingly, the Court declines to exercises its discretion to stay its judgment without requiring Defendants to post a supersedeas bond.").

Similarly, PDVSA has made no effort to demonstrate the second exception—that posting a bond "would put the defendant's other creditors in undue jeopardy." *Avirgan*, 125 F.R.D. at 186. Once again, PDVSA has put forth no facts or evidence that this exception so squarely applies that the Court should depart from the vastly preferred requirement that a 110% bond be posted.

And lastly, to the extent it is material, the Court summarily rejects PDVSA's argument that because the Learjet is under the U.S. Marshals and OFAC's control, PDVSA need not post a bond. *See Naval Logistic, Inc. v. M/V Fam. Time*, No. 23-22379-CIV, 2024 WL 4950155, at *2 (S.D. Fla. Dec. 3, 2024), *reconsideration denied*, 2024 WL 5154488 (S.D. Fla. Dec. 17, 2024) ("To meet their burden, the Defendants

5

argue that because the Plaintiff, 'by virtue of its arrest and subsequent sale of the VESSEL, now already has in its possession an asset sufficient to satisfy the outstanding judgment.' The Defendants point to the fact that the Plaintiff, who bought the vessel for $100, estimated that the Vessel had a fair market value of $50,000 to $99,000. However, the fact that the Plaintiff maintains the vessel as an asset—whatever its value—does not satisfy the Defendants' burden of demonstrating that the circumstances required for dispensing with a bond are present. The Defendants do not cite to any applicable case law or rule that explains how these circumstances warrant a departure from the general requirement of a supersedeas bond. Therefore, the Court will require the Defendants to post a bond in order to obtain a stay under Rule 62(b)."); *see also Stansell v. Revolutionary Armed Forces of Colombia*, No. 19-20896-CV, 2020 WL 5552778, at *5 (S.D. Fla. July 6, 2020), *report and recommendation adopted*, 2020 WL 5545684 (S.D. Fla. July 27, 2020) (rejecting argument to waive bond requirement because "waiving a bond requirement solely because someone is a narcotics SDNT under the Kingpin Act would be an absurd result," and finding that "[m]ovants must post bond like any other individual would need to").

Accordingly, PDVSA does not satisfy the demand of the Federal Rules or this District's Local Rules to post a bond, nor does PDVSA demonstrate any of the narrow exceptions to posting a bond. On this score, then, PDVSA's Motion is denied. *See Ctr. for Individual Rts. v. Chevaldina*, No. 1:16-CV-20905-JLK, 2019 WL 7370412, at *1 (S.D. Fla. Oct. 29, 2019) ("Defendant does not claim that this case involves either of

6

the two rare exceptions to the usual bond requirement, nor does she identify any other valid basis to stay execution of the Final Judgment without requiring a bond or other adequate security. In sum, while Defendant asks this Court to depart from the bond requirement and stay the Final Judgment pending appeal, she has failed to meet her burden to 'objectively demonstrate the reasons for such a departure.'").

### B. *Discretionary Stay*

Further, notwithstanding its failure to post a bond, PDVSA argues that the Court should exercise its discretion to stay the U.S. Marshals' sale pending PDVSA's Motion to Vacate. In support, PDVSA relies on the application of four factors: (1) the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) the applicant will be irreparably injured absent a stay; (3) the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) the stay is in the public interest. *See Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

But these factors apply when determining whether to stay a *non-monetary* judgment. Accordingly, because PDVSA seeks to stay execution on a monetary judgment, PDVSA's Motion is denied. *See Ctr. for Individual Rts. v. Chevaldina*, No. 1:16-CV-20905-JLK, 2019 WL 7370412, at *1 (S.D. Fla. Oct. 29, 2019) ("After careful consideration, the Court finds that Defendant's Motion must be denied. First, as the Center points out, Defendant's reliance on the "four-part test" is misplaced because that standard governs non-monetary judgments—i.e., injunctive orders. Here, the Final Judgment awarded only monetary relief. Thus, the four-part test that

Defendant extensively relies upon in her Motion is inapplicable."); *see also Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 1:18-CV-25337-KMM, 2021 WL 10429636, at *3 (S.D. Fla. Oct. 26, 2021) ("As in *Chevaldina*, [the movant's] reliance on the four-part test is misplaced because the Court's August 24, 2021 Order granting TRIA Turnover Judgment awarded Plaintiff only monetary relief. … Consequently, [the movant's] Motion must be denied."); *Suntrust Bank*, 2015 WL 11216713, at *2 ("First, it is important to address Defendants' misplaced reliance on the standard applied to stays on non-monetary judgments—i.e., injunctive orders. The four-part analysis asserted by Defendants—accounting for likelihood of success on appeal, public interest, irreparable injury, and injury to other interested parties—is not applicable to the instant case because there is only a monetary judgment at issue.").

And even if the Court were to address the four factors, PDVSA's argument would still fail because none of the four factors weigh in PDVSA's favor.

As to the first factor, PDVSA has not presented "a probable likelihood of success on the merits" in its Motion to Vacate. *Garcia-Mir*, 781 F.2d at 1453. Plaintiffs moved for a writ of execution on the Learjet over one year ago. The Court entered a Report and Recommendation to grant the writ of execution on June 10, 2024, and the Court entered an Order adopting that Report and Recommendation on July 1, 2024. The Writ of Execution was subsequently entered on that same day (July 1, 2024), and was returned as executed on October 30, 2024. And yet PDVSA did not file its Motion to Vacate until December 14, 2024, and did not file its pending Expedited Motion to

8

stay the sale until December 23, 2024. Thus, while PDVSA's Motion to Vacate is not yet ripe for resolution, the Court would be hard-pressed to find that the motion has a "probable likelihood of success" given the abundance of time that passed between Plaintiffs' motion for writ of execution and PDVSA's motion to vacate. This factor, therefore, does not weigh in PDVSA's favor.

Further, PDVSA has not demonstrated that it will be irreparably harmed if the Learjet sale is held on January 16. Indeed, PDVSA makes clear in its Motion that the Learjet is in the possession of the U.S. Marshals and blocked by OFAC. Thus, PDVSA has no access to the Learjet and, under governing law, will not obtain access to the Learjet. This consideration, then, weighs in favor of Plaintiffs. *See Caballero*, 2021 WL 10429636, at *4 ("Second, Dellan's argument that he will be irreparably harmed is unpersuasive. Dellan concedes that '[t]he money that Caballero seeks has been held securely for several years in the custody of Sunstate Bank, which secured the blocked funds pursuant to OFAC regulations.' Thus, as Plaintiff notes, Dellan has not had access to the funds in dispute since his assets were blocked in January 2019 and, therefore, the Court finds that he will not be irreparably harmed by the disbursement of his blocked funds.").

Third, Plaintiffs, meanwhile, would be harmed by delaying the sale of the Learjet. The Terrorism Risk Insurance Act ("TRIA") is in place to, in part, provide expedient relief to victims of terrorism. *See Hausler v. JP Morgan Chase Bank, N.A.*, 740 F. Supp. 2d 525, 539 (S.D.N.Y. 2010) ("The Court is not persuaded that this self-serving result squares with the plain remedial purpose of TRIA, by which Congress

explicitly promulgated a comprehensive scheme providing that any assets blocked under the CACRs or similar OFAC regulations are to be subject to judgment execution for the benefit of victims of terrorist states—most fittingly, as in this case, when the crime victim was an American citizen."). Delaying execution of that relief, then, would undoubtedly harm Plaintiffs and create an opening for other post-judgment obstacles. *See Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 729 (11th Cir. 2014) ("The third factor weighs heavily in favor of a later hearing: ensuring adequate satisfaction of judgments against terrorist parties. During the pendency of execution proceedings, a number of events may occur which make satisfaction using a particular asset impossible. Other judgment creditors may seek to execute against the asset. The government may take action that makes the asset unreachable, including seizure or de-listing of the alleged agency or instrumentality (which may or may not be the result of a finding that the SDNT designation was incorrectly reached), the latter of which would enable the asset owner to move the asset (or proceeds from its sale) outside the reach of any United States district court."); *Caballero*, 2021 WL 10429636, at *4 ("Indeed, TRIA envisions expedient post-judgment collections proceedings so that TRIA judgment creditors and terror victims can receive adequate compensation for their significant injuries."). Thus, we find that PDVSA does not face a prospect of irreparable harm, while Plaintiffs, conversely, do face the prospect of irreparable harm.

Lastly, we find that public policy favors the expedient resolution of post-judgment proceedings, especially in an instance where the plaintiff is a victim of

10

terrorism and operating under the TRIA. *See Caballero*, 2021 WL 10429636, at *4 (finding on the fourth factor "that the public interest does not favor further delaying relief for victims of terror").

PDVSA's Motion is therefore denied. *See United States v. Hamilton*, 963 F.2d 322, 323 (11th Cir. 1992) (affirming the denial of a motion to stay where the movant "neither has demonstrated a probable likelihood of success on the merits on appeal, nor that the balance of equities weighs heavily in favor of granting the stay") (internal citations omitted).

### III.   CONCLUSION

For the reasons set forth above, PDVSA's Motion to Stay the U.S. Marshals' impending auction of the Learjet is **DENIED**. The auction shall take place as scheduled on January 16, 2025.

**DONE and ORDERED** in Chambers at Miami, Florida this 7th day of January, 2025.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge