UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20706-GAYLES/TORRES

MEUDY ALBÁN OSIO, et al.,

    *Plaintiffs,*

v.

NICOLAS MADURO MOROS, et al.,

    *Defendants.*
_____/

## REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR FINAL TURNOVER JUDGMENT

This cause comes before the Court on Plaintiffs' Motion for a Final Turnover Judgment regarding blocked assets ("the Blocked Funds") belonging to Banco Bicentenario Universal S.A. ("Banco Bicentenario"), and held by Italbank. [D.E. 244]. No response has been filed; the motion is therefore ripe for disposition. Upon careful review of the Motion, Italbank's answer to the writ of garnishment [D.E. 199], and the relevant authorities, and for the reasons set forth below, we recommend that Plaintiffs' Motion be **GRANTED**, and the Court enter a turnover judgment in Plaintiffs' favor.[1]

---

[1] On November 8, 2024, the Honorable Darrin P. Gayles referred all post-judgment matters to the Undersigned Magistrate Judge for disposition. [D.E. 233].

## I. BACKGROUND

This lawsuit stems from Defendants' kidnapping, torture, and murder of Plaintiffs' decedent, Fernando Alberto Alban. On August 4, 2023, final default judgment was entered in Plaintiffs' favor on all eight counts of their complaint for a total judgment of $217,000,000.00.

To partially satisfy that judgment, Plaintiffs moved to garnish funds held by Italbank on behalf of Banco Bicentenario. [D.E. 168]. The Court issued that writ of garnishment [D.E. 169], to which Italbank answered. [D.E. 199]. In that answer, Italbank represented that it held the relevant funds in the form of a $10,723,893.64 CD account, and that those funds have been blocked by the Office of Foreign Asset Control ("OFAC").

In the pending Motion, Plaintiffs seek an order directing the turnover of those Blocked Funds. No party (or non-party) has moved to either dissolve the writ of garnishment or object to the contents of this Motion. The Court, then, treating this Motion as unopposed, will determine whether a turnover order is appropriate.

## II. ANALYSIS

First, we will determine whether Plaintiffs have satisfied their notice requirements under Florida law before establishing whether Plaintiffs are entitled to the judgment sought.

### A. *Notice Requirements*

Under § 77.055, Fla. Stat., the following notice requirements are imposed after an answer to a writ of garnishment has been served:

> Within 5 days after service of the garnishee's answer on the plaintiff or after the time period for the garnishee's answer has expired, the plaintiff shall serve, by mail, the following documents: a copy of the garnishee's answer, and a notice advising the recipient that he or she must move to dissolve the writ of garnishment within 20 days after the date indicated on the certificate of service in the notice if any allegation in the plaintiff's motion for writ of garnishment is untrue. The plaintiff shall serve these documents on the defendant at the defendant's last known address and any other address disclosed by the garnishee's answer and on any other person disclosed in the garnishee's answer to have any ownership interest in the deposit, account, or property controlled by the garnishee. The plaintiff shall file in the proceeding a certificate of such service.

Here, shortly after providing docket notice of Italbank's answer to the writ, Plaintiffs filed a Notice of Compliance with Fla. Stat. § 77.055. [D.E. 209]. In that notice, Plaintiffs certified that they served by mail on each Defendant a copy of Italbank's answer, and a notice to Defendants at each of Defendants' last known addresses regarding their right to object and/or move to dissolve the writ of garnishment. More than twenty days have passed since Italbank's answer and Plaintiffs' certificate of compliance, and no party has filed any objection or motion to dissolve Plaintiffs' writ.

Plaintiffs have also certified that the pending Motion was served upon Italbank, and that in conferral, Italbank confirmed that it does not oppose the entry of a turnover order.

Accordingly, because Plaintiffs' notice of compliance satisfies § 77.055, Fla. Stat., and because Italbank has been provided notice of the pending motion, Plaintiffs have satisfied their notice requirements.

### B. *TRIA Requirements*

Next, we must assess whether Plaintiffs are entitled to a turnover order under the Terrorism Risk Insurance Act ("TRIA"). To demonstrate such entitlement, Plaintiffs must make the following showing: "(1) that [they] obtained a judgment against a terrorist party for a claim based on an act of terrorism, (2) that the amount sought to be executed or attached does not exceed the compensatory damages awarded to the movant, (3) that the assets of the third party are blocked (as that term is defined under the TRIA), and (4) that the third party is an agency or instrumentality of the terrorist party." *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1347 (11th Cir. 2022) (*Stansell V*).

The first requirement is readily met. As the Court found in its since-adopted Report and Recommendation on Plaintiffs' summary judgment motion, the Defendant-cartel is a group of two or more persons; is responsible for killing Mr. Alban; and is responsible for using weapons or dangerous devices in the torture of Mr. Alban. Thus, under TRIA § 201, Defendants are a "terrorist organization" who engaged in "terrorist activity." Additionally, it cannot be disputed that Plaintiffs obtained a judgment based on these terrorist acts. [D.E. 59]. Thus, the first requirement is met.

4

The second requirement is also met. Plaintiffs' compensatory damage award is $216,000,000.00. While Plaintiffs have satisfied a portion of this judgment, there exists no record evidence that less than $10,723,893.64 remains unsatisfied. The Court, then, can comfortably conclude that the large compensatory damages award vastly exceeds the amount of these Blocked Funds. This requirement is therefore satisfied.

As to the third requirement, Plaintiffs have shown that OFAC has blocked the subject funds. In its answer to the writ, Italbank "inform[ed] the Court that it has in its possession" the subject funds, "which belong to [Banco Bicentenario] and have been blocked under U.S. Treasury's Office of Foreign Assets Control in compliance with applicable and targeted United States sanctions programs." [D.E. 199-1 at 1]. This requirement is therefore satisfied.

The bulk of our analysis, therefore, hinges on the fourth requirement: whether Plaintiffs have demonstrated that Banco Bicentenario is an agency or instrumentality of Defendants. We find that Plaintiffs have amply met that burden.

In the Eleventh Circuit, "[a] third party who provides material support to a terrorist at any point in time constitutes an agency or instrumentality, even if they purportedly stopped aiding the terrorist." *Marron v. Moros*, No. 21-23190-CIV, 2023 WL 6356969, at *13 (S.D. Fla. Sept. 29, 2023) (citing *Stansell V*, 45 F.4th at 1350). Further, "[t]he Eleventh Circuit endorsed a broad definition of agency, which includes any party that provides material support to a terrorist party, whether financial (e.g. money laundering), technological, or the provision of goods or services." *Id*. (citing

5

*Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 724 n.6 (11th Cir. 2014)).

Plaintiffs have provided a plethora of facts and evidence, aided by a declaration from Douglas C. Farah, a recognized Subject Matter Expert for the Department of Defense, to persuade the Court that Banco Bicentenario provides material support to Defendants. As an initial matter, OFAC, in March of 2019, officially sanctioned Banco Bicentenario and blocked its assets. *See* Press Release, OFAC, Treasury Sanctions BANDES, Venezuela's National Development Bank, and Subsidiaries, Response to Illegal Arrest of Guaido Aid (Mar. 22, 2019), https://home.treasury.gov/news/press-releases/sm636 ("The following entities designated today have been determined to operate in the financial sector of the Venezuelan economy, or are owned or controlled by an entity that operates in the financial sector of the Venezuelan economy: . . .Banco Bicentenario del Pueblo, de la Clase Obrera, Mujer y Comunias, Banco Universal C.A."). Further, OFAC declared that "[r]egime insiders have transformed BANDES and its subsidiaries [i.e., Banco Bicentenario] into vehicles to move funds abroad in an attempt to prop up Maduro." *Id*.

We are directed to give significant deference to OFAC's sanctioning of Banco Bicentenario and its determination that Banco Bicentenario is a vehicle of corruption for Mr. Maduro. *See De Cuellar v. Brady*, 881 F.2d 1561, 1565 (11th Cir. 1989) (directing that the "decision of the OFAC is entitled to great deference, and should be reversed only if arbitrary and capricious"); *see also Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999) (noting that an OFAC designation "receives an even greater

6

degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation"); *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, No. 8:09-CV-2308-RAL-MAP, 2011 WL 13136526, at *6 (M.D. Fla. Sept. 6, 2011) (citing *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010) ("OFAC's designations of the Ocean Bank, N.A. account holders as SDNTs or SDNTKs are factual determinations. OFAC's decisions are entitled to great deference."); *Stansell v. Revolutionary Armed Forces of Colombia*, No. 19-20896-CV, 2019 WL 5291044, at *7 (S.D. Fla. Aug. 21, 2019), *report and recommendation adopted sub nom.*, 2019 WL 5290922 (S.D. Fla. Sept. 26, 2019) (holding that an entity was an agency or instrumentality of a terrorist organization because, in part, "we must give great deference to OFAC with regard to its designation of El Aissami and Lopez Bello as SDNTs") (citing *De Cuellar*, 881 F.2d at 1565).

In addition to OFAC's forceful factual determinations, Plaintiffs also present a persuasive affidavit from Mr. Farah. In that affidavit, Mr. Farah "agree[s] with the conclusion of OFAC that Banco Bicentenario has become a tool of Maduro and his insider circle of political, military, and family cronies," and "accordingly, conclud[es] that Banco Bicentenario is an instrumentality of Maduro and the Individual Defendants." [D.E. 168-3 at ¶ 26]. To support his conclusion, Mr. Farah notes that recent presidents of Banco Bicentenario were directly appointed by Mr. Maduro, and have all served as corrupt insiders. [*Id.* at ¶ 30]. For example, Marco Torres (Banco Bicentenario president from 2013 to 2016) served in 25 different positions under the Chavez and Maduro reigmes, and "is on Panama's list of Venezuela politically

7

exposed persons (PEPs) who are 'of high risk in terms of money laundering, financing of terrorism and financing of the proliferation of weapons of mass destruction.'" [*Id*. at ¶ 31]. Mr. Farah further provides that Marco Torres accepted bribes from regime insider Alex Saab to facilitate "CLAP contracts" (a purportedly fraudulent food contract scheme). In regard to those CLAP contracts, "32 lawmakers including Marco Rubio … wrote to the President," and brought to his attention that "Marco Torres was defrauding the CLAP food program." [*Id*. at ¶ 34]. Mr. Farah then explains that similar circumstances surround several of Banco Bicentenarios other former and current presidents. [*Id*. at ¶¶ 35–39].

Accordingly, OFAC's potent determinations, coupled with Mr. Farah's uncontested, well-researched affidavit, demonstrate that Plaintiffs have carried their burden of showing that Banco Bicentenario is an agency or instrumentality of Defendants. Thus, because Plaintiffs have satisfied their burdens both under Florida law and the TRIA, we recommend that their Motion be granted. *Stansell*, 2019 WL 5291044, at *8 (finding that an entity was an agency or instrumentality of a terrorist organization where Mr. Farah's testimony connected the two through the terrorist organization's "financial activities undertaken on behalf of" the instrumentality); *Stansell v. Revolutionary Armed Forces of Colombia*, No. 8:09-CV-2308-RAL-MAP, 2011 WL 13176719, at *3 (M.D. Fla. Sept. 19, 2011) (finding that entities were agencies or instrumentalities of the defendant-cartel because there was evidence that they provided "financial or money laundering services to the [defendant-cartel] or its trafficking partners, directly or indirectly").

### III.    CONCLUSION

For the reasons set forth above, we recommend that Plaintiffs' motion be **GRANTED**, and a judgment be entered directing Italbank to turnover to Plaintiffs the Blocked Funds; i.e., the $10,723,893.64 (plus accrued interest) that Italbank holds in a CD account on behalf of Banco Bicentenario, as identified in Italbank's answer to Plaintiffs' writ of garnishment. [D.E. 199-1].

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to expedite objections. Accordingly, the parties and any non-parties have seven (7) days from service of this Report and Recommendation within which to file written objections, if any, to the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 12th day of March, 2025.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge