# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
## CASE NO. 1:21-CV-20706-DPG

MEUDY ALBÁN OSIO in her personal capacity
And in her capacity as the personal representative
of the Estate of FERNANDO ALBERTO ALBÁN,
FERNANDO ALBÁN OSIO, and MARIA
FERNANDA ALBÁN OSIO,

    Judgment Creditors / Plaintiffs,

v.

NICOLAS MADURO MOROS,
FUERZAS ARMADA REVOLUCIONARIAS
DE COLUMBIA ("FARC"); THE CARTEL OF
THE SUNS A.K.A. CARTEL DE LOS SOLES;
VLADIMIR PADRINO LOPEZ; MAIKEL
JOSE MORENO PEREZ; NESTOR LUIS
REVEROL TORRES; and TAREK WILLIAM
SAAB

Judgment Debtors/ Defendants.

_____/

**ALBAN JUDGMENT CREDITORS' MOTION FOR FINAL TURNOVER JUDGMENT AS TO BLOCKED FUNDS BELONGING TO PDVSA**

## INTRODUCTION

On October 16, 2024, this Court issued a writ of garnishment to StoneX with regard to the assets of Petróleos de Venezuela, S.A. ("PDVSA"). ECF No. 198. On October 17, 2024, Judgment Creditors served the foregoing writ on StoneX. ECF No. 248, at 1 (answer to writ, acknowledging service). On November 14, 2024, StoneX filed an answer to the writ, confirming that it holds blocked assets of PDVSA in the amount of $3,157,193.14. *Id.* On November 15, 2024, Judgment Creditors served StoneX's Answer on PDVSA, the Judgment Debtors, and Zuma Bank Corporation ("Zuma"), a bank identified as having a potential interest in the PDVSA assets in StoneX's answer to the writ of garnishment). ECF No. 252.[1]

The 20-day window for Zuma or the Judgment Debtors to move under Fla. Stat. § 77.055 expired on December 5, 2024. On December 14, 2024, PDVSA moved, *inter alia*, to dissolve the writ of garnishment here at issue (ECF No. 198, insofar as it relates to PDVSA). ECF No. 310 (the "PDVSA Motion to Dissolve"). Chief Magistrate Judge Torres has recommended that PDVSA's motion be denied in all respects relevant to this turnover motion (the recommendation that PDVSA's motion be granted in part relates only to certain PDVSA subsidiaries as to which Plaintiffs have not yet made a showing of agency/instrumentality status; however, this motion relates to assets of PDVSA itself, as to which Plaintiffs have made such a showing). ECF No. 401. Upon the final resolution of PDVSA's Motion to Dissolve, this motion for a final turnover judgment will be ripe for resolution. Accordingly, Judgment Creditors respectfully move for a final order directing StoneX to turn over to Judgment Creditors the $3,157,193.14 (plus accrued interest) in blocked PDVSA funds in the account at StoneX.

## ARGUMENT

As shown below, Judgment Creditors are entitled to a final order directing garnishee StoneX to turn over the blocked funds to Judgment Creditors. For efficiency, Judgment Creditors do not reargue their opposition to the PDVSA Motion to Dissolve (ECF No. 344) below, and instead adopt it, and the Report and Recommendations thereon (ECF No. 401) by reference.

---

[1] On November 20, 2024, StoneX filed an amended answer to the writ. ECF No. 265. Judgment Creditors promptly served PDVSA, Zuma and Judgment Debtors with StoneX's amended answer. ECF No. 272. The amended answer is materially identical to StoneX's original, timely answer, except that it adds additional affirmative defenses. Because StoneX's amended answer is untimely, it should be stricken. *See* ECF No. 306, at 1-2. In any event, as shown below, StoneX's affirmative defenses are without merit.

## I. Judgment Creditors Satisfy TRIA's Collection Requirements.

TRIA's requirements for garnishing the blocked funds are fully satisfied here. Judgment Creditors have obtained a judgment against a terrorist based on an act of terrorism; the assets they seek are blocked; and the assets are owned by an agency or instrumentality of the judgment debtor.

*First*, this Court has already concluded that "Plaintiffs' judgment is for acts of terrorism." ECF No. 101 at 5 ("Plaintiffs satisfy the INA's definition in several ways, any one of which is sufficient to satisfy TRIA. . . . Mr. Albán was assassinated for political reasons) (internal quotations omitted); ECF No. 56 at 18 ("The high-profile kidnapping and murder of Mr. Albán by Maduro regime agents was designed to deter other opposition members from speaking out against the Venezuelan government."). Furthermore, the Court has found that Defendants constitute a "terrorist organization." ECF No. 110 at 5-6.

*Second*, the amount sought does not exceed Judgment Creditors' compensatory damages. The Court awarded Judgment Creditors $217 million in compensatory damages, plus accrued interest. ECF No. 90; *see* ECF No. 113 at 2. The amounts collected by the Judgment Creditors have been applied to accrued interest, and the entire principal amount of the judgment still remains outstanding. *See, e.g., Devex Corp. v. Gen. Motors Corp.*, 749 F.2d 1020, 1025 n.6 (3d Cir. 1984) (explaining that "[t]he United States rule, which provides that payments be applied first to accrued interest and then to principal, has been followed by the federal courts for almost a century and a half," and holding that the United States rule applies under 28 U.S.C. § 1961 unless the parties agree otherwise) (collecting cases).

*Third*, the funds at issue have been and remain blocked because they belong to PDVSA. In its Answer, StoneX states that (1) on August 16, 2022, StoneX received a letter (the "Zuma Letter") from counsel representing Zuma Bank Corporation; (2) the Zuma Letter advised StoneX that Zuma had blocked (a) $3,157,193.14 in a Zuma account held by PDVSA and (b) $2,184,586.90 in a Zuma account held by Bicentenario; (3) the Zuma Letter indicated that these blocked funds (denominated in US dollars) were, in turn, held by Zuma in Zuma's US dollar account with StoneX; (4) consistent with the Zuma Letter, StoneX indeed held $5,341,780.04 (equal to $2,184,586.90 for Bicentenario and $3,157,193.14 for PDVSA) in a Zuma account with StoneX; and therefore (5) StoneX—in reliance on the "accuracy and truthfulness of the Zuma Letter . . . blocked the Zuma account." ECF 248, at 1-2; *see also* ECF 248-1 (Zuma Letter). The foregoing is more than sufficient to establish that the blocked $3,157,193.14 are the blocked funds of PDVSA. Notably:

- The Zuma Letter was sent by a U.S. law firm, Lewis, Baach, Kauffman, Middlemiss PLLC ("Lewis, Baach"), with offices in Washington, D.C. New York, and London.  *See* Lewis Baach website, available at  https://www.lbkmlaw.com/offices.html).   Lewis Bach is bound by ethical duties, and accordingly, there is no reason to doubt the veracity or accuracy of the Zuma Letter;
- StoneX was sufficiently confident in the accuracy of the Zuma Letter that, on or about August 12, 2022, it took significant legal action, blocking $5,341,780.04 in the Zuma account and reporting to OFAC that StoneX had done so due to the ownership interest of PDVSA (and Bicentinario) in the account.
- In the over two years that the assets have been blocked, no party has appeared to advise StoneX that the assets were wrongly blocked and/or that PDVSA (or Bicentinario) lack an interest in the assets.  Nor has any party obtained an OFAC license for the release of the assets.

Based on the foregoing, StoneX's Answer establishes that StoneX is holding the blocked assets of PDVSA.

***Fourth***, the Court has already correctly found that PDVSA is an instrumentality of the Judgment Debtors.  *See* Report & Recommendation, ECF No. 110, at 6-7, adopted, ECF No. 110.  *See also* ECF 344, at 16-19.

## II. StoneX's Affirmative Defenses Should Be Stricken and Lack Merit

StoneX's answer to the writ of garnishment does not assert any affirmative defenses.  *See* ECF No. 248.

After StoneX's deadline to respond to the writ of garnishment had expired, however, filed an amended answer that raises two affirmative defenses.  ECF No. 265.  As an initial matter, StoneX's late-filed amended answer should be stricken because Judgment Creditors served their writ on StoneX on October 17, 2024, and therefore, StoneX's amended answer, filed November 20, 2024, is out of time.  Fla. Stat. 77.04 (20-day deadline to answer writ).

In any event, StoneX's affirmative defenses are without merit.

### A. First Affirmative Defense: Jurisdiction over the blocked funds

The first affirmative defense—that this Court lacks jurisdiction over the blocked funds, which the Answer asserts are in Birmingham, Alabama—is unfounded.

First, none of the OFAC blocking reports produced by StoneX contain any mention of the blocked funds being located in Alabama. Instead, StoneX's website shows extensive offices

3

throughout the State of Florida, and the address StoneX listed in some OFAC blocking documents is 329 Park Avenue North, Suite 350, Winter Park, Florida 32789.

Moreover, even if StoneX has made an internal bookkeeping entry through which it deems the account to be in Alabama (rather than at its office in Miami, Florida) for its own internal purposes, that does not place the assets beyond the reach of this Court in these proceedings.

### 1. Florida law reaches brokerage accounts wherever located

Under Florida law, brokerage accounts are intangible property. *See* Fla. Stat. § 717.101(18) ("'Intangible property' includes, by way of illustration and not limitation: (a) Moneys, checks, virtual currency, drafts, deposits, interest, dividends, and income."). The legal fiction that a financial institution—a single entity—holds such intangible assets at one branch, but not another (and hence that the garnishment must proceed in the jurisdiction of the particular branch that the bank's bookkeeper deems to be its location) is known as "the separate entity rule," and it is not the law in Florida.

As this Court has explained, "[t]he Separate Entity Rule, a somewhat dated and seldom-cited legal doctrine, holds that each branch of a bank is a separate legal entity in the context of a garnishment action, and is in no way connected with accounts maintained by depositors at other branches, or at the home office. . . . Florida has never adopted the Separate Entity Rule." *Tribie v. United Dev. Grp. Int'l. LLC*, 2008 WL 5120769, at *3 (S.D. Fla. Dec. 2, 2008) (Moreno, J.) (internal citation omitted); *see also Acme Contracting, Ltd. v. Toltest, Inc.*, 2008 WL 4534175, at *6-7 (E.D. Mich. Oct. 3, 2008) (describing the separate entity rule as "entirely obsolete in today's world of highly sophisticated and centralized banking operations").

Following this precedent, Judge Scola held that a Florida court has jurisdiction over a garnishment action seeking assets held by a bank, regardless of where the judgment debtor's account is supposedly located: "Lopez Bello contends that the Court lacks subject matter jurisdiction over the financial accounts because the bank accounts are not located in Florida. . . . Regardless of the accounts' locations, this Court has subject matter jurisdiction." *Stansell v. FARC*, 2019 WL 5290922, at *1 (S.D. Fla. Sept. 26, 2019) (*citing Tribie*); *see also, e.g.*, *Acme*, 2008 WL 4534175, at *7 (Given the defendant's "right to draw on its account at any of the numerous [bank] branches," "[a]s a practical matter, the funds in [the defendant's] account are 'located' wherever they are available for withdrawal by [the defendant].").[2] In sum, as a matter of law, assets that are

---

[2] *See also, e.g.*, *Regions Equip. Fin. Corp. v. Blue Tee Corp.*, 313 F.R.D. 568, 570-71 (E.D. Mo. 2016) (following *Acme Contracting* and holding that the funds held in the defendant's bank

4

deposited with StoneX are in Florida for garnishment purposes.

This reading of Florida law is fully consistent with recent guidance from the Florida Supreme Court in *Shim v. Buechel*, 339 So. 3d 315 (Fla. 2022). In *Shim*, the Court held in the context of a judgment-enforcement proceeding—there, a proceeding supplemental under Fla. Stat. § 56.29(6)—that the trial court could reach assets located outside of Florida, so long as it had personal jurisdiction over the party holding the assets. *Id.* at 317-18. The Court began by considering the plain language of Section 56.29(6), which "unambiguously provides a trial court broad authority to 'order any property of the judgment debtor . . . to be levied upon and applied toward the satisfaction of the judgment debt,' including 'any property, debt, or other obligation due to the judgment debtor, in the hands of or under the control of any person subject to a Notice to Appear.'" 339 So. 3d at 317. This broad authority, *Shim* held, extended to the full extent of the court's personal jurisdiction over the party holding the property at issue, regardless of where that property was located. *Id.* at 317-18.

The Florida Supreme Court's logic and reading of Fla. Stat. § 56.29(2) is equally applicable to Fla. Stat. § 77.01, which sets forth the right to garnishment: "Every person or entity who . . . has recovered judgment in any court against any person or entity has a right to a writ of garnishment . . . to subject any debt due to defendant by a third person . . . and any tangible or intangible personal property of defendant in the possession or control of a third person." Thus, just as Section 56.29(6)(a) reaches "debts . . . in the hands of or under the control of any person subject to a Notice to Appear" without any territorial restriction, so too does Fla. Stat. § 77.01 reach "debt due to defendant by a third person," without any territorial restriction. Applying *Shim*, Section 77.01 must be read to reach the full extent of the Court's personal jurisdiction over the garnishee.

Indeed, that is precisely how this Court recently read the statute, explaining that Florida's garnishment statutes contain no territorial limits, and holding that "a court located in Florida [can] exercise subject matter jurisdiction over a bank account [even] if the non-moving party asserts that the assets held in the account are located outside the state":

> We first note that "Florida's garnishment statutes contain no express territorial limitation on the location of the property within the garnishee's control." "When

---

account were so "fungible, intangible" that the bank "was able to seamlessly freeze [the assets] . . . everywhere immediately after it was served with the writ at" a single branch location). *Boland Marine & Indus., LLC v. Bouchard Transp. Co.*, 2020 WL 10051743, at *7 (W.D. Tex. Feb. 28, 2020), *R&R adopted sub nom.*, 2020 WL 10051738 (W.D. Tex. Mar. 26, 2020) ("Bouchard had access to the Account's funds in Austin just as it did in New York. Accordingly, Bouchard's intangible property—the Account—is found within the Western District of Texas.").

5

interpreting a statute and attempting to discern legislative intent, courts must first look to the actual language in the statute." Courts "are not at liberty to add to a statute words that the Legislature itself has not used in drafting [the] statute," and we decline to "read in" a geographical limitation to the garnishment statute at issue.

*Stansell v. FARC*, 2019 WL 5291044, at *6 (S.D. Fla. Aug. 21, 2019) (Torres, J.), *R&R adopted sub. nom.* 2019 WL 5290922 (S.D. Fla. Sept. 26, 2019) (Scola, J.) (citations omitted).

Thus, StoneX's affirmative defense that this Court lacks jurisdiction because the account at issue is supposedly outside of Florida fails as a matter of Florida law. And that conclusion is consistent with the understanding that "proceedings to enforce judgments are meant to be swift, cheap and informal." *Resolution Trust Co. v. Ruggerio*, 994 F.2d 1221, 1226-27 (7th Cir. 1993) (holding that trial court did not need to follow "every jot and title" of state and federal procedural law, so long as trial court "satisfied the requirements of due process."); *see also Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995) (Posner, J.) ("Garnishment is a standard, often essential, step in the collection of a judgment, and the party holding the judgment . . . ought to be able to take this step without having to start a new lawsuit in a different court system.").

### 2. In the alternative, RICO's nationwide service-of-process provisions reach blocked assets wherever located.

Even if Florida law did not afford this Court jurisdiction over the blocked assets, this Court could still exercise jurisdiction over the blocked assets pursuant to the Racketeering Influenced and Corrupt Organization Act's ("RICO") nationwide service-of-process provision.

First, Judgment Creditors have prevailed on a RICO claim. *See* ECF No. 56 (Report & Recommendation on Plaintiffs' Motion for a Default Judgment Against Cartel of the Suns), at 7 ("Plaintiffs plausibly plead sufficient factual allegations to establish two federal civil RICO claims against the Cartel of the Suns").

Second, under Rule 4.1 ("Serving Other Process"), process "may be served anywhere within the territorial limits of the state where the district court is located, *and, if authorized by a federal statute, beyond those limits.*" Fed. R. Civ. P. 4.1 (emphasis added).

Third, there is a federal statute that authorizes such out of state service: RICO.  RICO allows nationwide service for (1) any summons, 18 U.S.C. § 1965(a); (2) for any subpoena, *id.* § 1965(c); and (3) "all other process," *id.* § 1965(d). The provision for all other process is broad and sweeping: "All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such a person resides, if found, has an agent, or transacts his affairs." *Id.* § 1965(d). The reference to "all other process" means "process other than a

6

summons of defendant or subpoena of a witness." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998). And for such process, nationwide service is authorized. *See Rep. of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) (holding that 18 U.S.C. § 1965(d) is "RICO's nationwide service of process provision").

A "[w]rit of [g]arnishment is a process" in the Judgment Creditors' above-captioned RICO action and, accordingly, may be served pursuant to RICO's nationwide service of process provision. *See In re Premier Sports Tours*, 283 B.R. 601, 603 (Bankr. M.D. Fla. 2002) (holding that a trustee properly served a Florida writ of garnishment on the debtor's out-of-state bank in Illinois because the bankruptcy rule—like RICO here—authorized nationwide service of process). In *Premier Sports*, the court explained that, because there was "no evidence . . . that the Writ was not issued in full compliance with the laws of the State of Florida governing writs," the only question was whether the writ "was served in compliance with the due process requirements of the Constitution and the rules governing service of process." *Id.* at 603. Turning to the applicable federal statute providing for service of process of writs in that case—Fed. R. Bankr. P. 7004(d)—the court explained that the relevant statute provided for nationwide service of process. *Id.* Accordingly, the court concluded that the Florida writ was properly served on the Illinois garnishee, and the court could enforce the writ of garnishment with respect to the out-of-state bank account. *Id.* at 604. For the same reasons, Judgment Creditors' writ of garnishment, served in accordance with RICO[3] can reach out-of-state assets. *Allison v. Gate Elecs., Inc. (In re Mycro–Tek, Inc.)*, 191 B.R. 188, 191 (Bank. D. Kan. 1996) (exercising jurisdiction in garnishment proceeding to reach funds held by out-of-state bank).

### B. Second Affirmative Defense: Name of the accountholder

StoneX asserts "the owner of the Blocked Account is Zuma, not Bicentinario [sic]." ECF No. 265. Given that this amended answer relates to PDVSA, StoneX likely intends this defense to read "the owner of the Blocked Account is Zuma, not PDVSA." Assuming that is what StoneX intends, the defense still fails. As an initial matter, as shown above, Zuma has defaulted, and therefore StoneX (even if StoneX had standing to assert the interests of another party such as Zuma, which is doubtful) cannot assert Zuma's interests, because Zuma has abandoned those interests (if any). But in any event, as shown above, StoneX's answer to the writ establishes that (regardless of whether the StoneX account is in Zuma's name), the *assets* in the account are the

---

[3] Although StoneX filed a *second* Answer to raise new affirmative defenses, it does not contest service of process.

blocked assets of PDVSA. Because PDVSA is the party with the ownership interest in the blocked funds at StoneX, TRIA is satisfied, regardless of whose name appears on the account.

## CONCLUSION

For the foregoing reasons, this Court should issue a final turnover judgment, directing StoneX to turnover to Judgment Creditors the $3,157,193.14 (plus accrued interest) in the Blocked Assets of PDVSA and an order granting StoneX a release from liability upon payment of the assets to Judgment Creditors.

Respectfully submitted on April 14, 2025.

*/s/ Jaime D. Guttman*
Fla. Bar No. 44076
*jaime@scale.law*
Scale Law Partners, LLC
777 Brickell Avenue, Suite 500
Miami, FL 33131
(786) 273-9033 (Main)

*Counsel for Plaintiffs / Judgment Creditors*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing document on April 14, 2025, through CM/ECF, which automatically and electronically delivered notice of filing to counsel of record for all parties that have appeared.

*/s/ Jaime D. Guttman*