**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| MEUDY ALBÁN OSIO *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>NICOLÁS MADURO MOROS *et al.*,<br><br>*Defendants*. | Case No. 1:21-cv-20706-DPG |

**NON-PARTY PETRÓLEOS DE VENEZUELA, S.A.'S**
**OBJECTIONS TO THE REPORT AND RECOMMENDATIONS**

Non-Party Petróleos de Venezuela, S.A. ("PDVSA") — Venezuela's wholly owned national oil company and, therefore, an "agency or instrumentality of a foreign state" under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603(b) — hereby files its objections to Magistrate Judge Torres's Report and Recommendations (ECF 401) ("R&R"), which recommends that PDVSA's Motion to Vacate (ECF 310) be granted in part and denied in part. PDVSA does not waive, and expressly preserves all rights, privileges, immunities, and defenses, including as to foreign sovereign immunity and subject-matter and personal jurisdiction.

**PRELIMINARY STATEMENT**

PDVSA's Motion to Vacate arises from Plaintiffs' efforts to shift liability for their default judgments against Nicolás Maduro and the Cartel of the Suns — defendants in this action — on to PDVSA — a non-party "agency or instrumentality of a foreign state," Venezuela, under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603(b). To achieve their goal of having PDVSA satisfy their default judgments against Maduro and the Cartel, Plaintiffs have invoked § 201 of the Terrorism Risk Insurance Act of 2002, 28 U.S.C. § 1610 note ("TRIA"). In doing so, Plaintiffs have run roughshod over PDVSA's presumptive foreign sovereign immunity and the comprehensive and exclusive framework Congress established in the FSIA for suing foreign states in courts in the United States.

The United States submitted, in a different case in which PDVSA filed a similar motion to vacate, that the use of TRIA in this manner "implicates important questions about the immunities

provided to foreign states and their agencies and instrumentalities." ECF 310-1 at 1. And "because of its significant interest in ensuring that courts correctly construe the laws relating to foreign sovereign immunity, including the enforcement of judgments against the property of foreign states," the United States filed a 36-page Statement of Interest expressing its views on those questions. *Id.* at 1–2. Among other things, the U.S. Statement of Interest, which PDVSA attached to its Motion to Vacate here, confirms PDVSA's arguments that Plaintiffs failed to establish this Court's subject-matter and personal jurisdiction over PDVSA under the FSIA and that PDVSA's assets are not available to satisfy a judgment against non-state terrorist parties such as Maduro and the Cartel. *See generally* ECF 310-1 at 9–36.

Yet despite the fact that the Supreme Court "pay[s] special attention to" such views, *Republic of Sudan v. Harrison*, 587 U.S. 1, 16 (2019) (citation omitted), the R&R omits any discussion of the Statement of Interest. As a result, the R&R recommends that this Court adopt positions that the United States warns are "inconsistent with the comprehensive regime of immunity established by the FSIA [and] would also undermine the specific and targeted measures under the FSIA to address sovereign immunity as it relates to terrorism claims." ECF 310-1 at 19. Although the R&R correctly recommends dissolution of the writs— a recommendation with which PDVSA agrees — the R&R did so on the merits, without prejudice to renewal, and not on the fundamental jurisdictional defects that warranted the same result but with prejudice. The R&R also makes numerous other factual and legal errors that result in the recommendation that PDVSA's Motion to Vacate be denied in part. The Court should instead grant PDVSA's Motion in full.

*First*, the R&R erroneously recommends finding that TRIA confers subject-matter jurisdiction for Plaintiffs' efforts to execute against PDVSA's assets. But TRIA does not confer subject-matter jurisdiction, does not provide an exception to PDVSA's presumptive jurisdictional immunity under the FSIA, and does not preempt the FSIA's comprehensive jurisdictional and procedural scheme. Rather, for cases involving foreign states, TRIA applies only where a plaintiff has first established jurisdiction under the FSIA by obtaining a valid judgment against a foreign state designated as a state sponsor of terrorism. Here, Plaintiffs have not and cannot obtain such a judgment against PDVSA, including because Venezuela has never been designated as a state sponsor of terrorism, as the United States attests in support of PDVSA in its Statement of Interest.

By contrast, the cases relied upon by the R&R each involved an effort to enforce a judgment against a foreign state designated as a state sponsor of terrorism.

*Second*, the R&R erroneously recommends finding that this Court has personal jurisdiction over PDVSA. The R&R recognizes that the FSIA provides the exclusive means for effecting service on PDVSA, a prerequisite for establishing personal jurisdiction under the FSIA. But the R&R misapplies Eleventh Circuit precedent in holding that PDVSA's purported "actual notice" excuses Plaintiffs' failure to *even attempt* to properly serve PDVSA. Plaintiffs' purported service comes nowhere close to substantial compliance with the FSIA and the Court therefore lacks a statutory basis for exercising personal jurisdiction over PDVSA. As to the Court's constitutional basis for personal jurisdiction, the R&R improperly places the burden on PDVSA to establish that it lacks minimum contacts with Florida sufficient to satisfy due process. And the R&R credits allegations that do not support personal jurisdiction because they do not describe suit-related contacts PDVSA itself created with Florida.

*Third*, the R&R erroneously recommends that this Court find that the question of whether PDVSA is an "agency or instrumentality" of Maduro and the Cartel is justiciable. The R&R incorrectly reasons that the political question implicated by Plaintiffs' claim — namely, who constitutes the legitimate government of Venezuela — is justiciable because the Executive Branch has protectively blocked PDVSA's assets. That conclusion ignores that the United States expressly does not recognize the illegitimate Maduro regime's claim to act as the government of Venezuela and contravenes the Eleventh Circuit's instruction that courts are powerless to decide otherwise.

*Fourth*, the R&R erroneously recommends that the Court reject PDVSA's merits arguments. The R&R accepts that PDVSA has the right to challenge the Eleventh Circuit's definition of "agency or instrumentality" in TRIA but fails to engage with any of PDVSA's arguments demonstrating that PDVSA cannot be an "agency or instrumentality" of Maduro and the Cartel. The R&R also fails to grapple with the fact that, even applying the Eleventh Circuit's definition, Plaintiffs failed to carry their burden of proof with sufficient, competent, admissible evidence. Likewise, the R&R does not meaningfully engage with the fact that PDVSA's blocked assets are not available under TRIA because neither Maduro nor the Cartel has any beneficial ownership interest in those assets. Finally, the R&R compounds its error with regard to subject-

matter jurisdiction by finding that Plaintiffs are excused from complying § 1610(c) because the Court's subject-matter jurisdiction is purportedly conferred by TRIA.

*Fifth*, the R&R correctly concludes that the writs Plaintiffs obtained targeting assets of PDVSA's subsidiaries are not authorized under TRIA. But the R&R errs by failing to recommend that the Court afford PDVSA all of the relief to which it is entitled as a result of that conclusion. Instead, the R&R erroneously recommends that Plaintiffs be afforded an opportunity to attempt to cure the unauthorized writs. But doing so is futile and prejudicial to PDVSA and the writs should be dissolved with prejudice. The R&R also overlooks the unauthorized writ targeted at PetroMonagas (ECF 380) that Plaintiffs obtained after briefing on the Motion to Vacate was complete. That writ, like the other unauthorized writs, should be dissolved with prejudice.

## BACKGROUND

On February 22, 2021, Plaintiffs filed an eight-count Complaint against Nicolás Maduro, individual members of his illegitimate regime, the Cartel of the Suns, and the FARC for the kidnapping, torture, and murder of Mr. Albán in 2018. ECF 1. PDVSA is not a named defendant in the Complaint, nor do Plaintiffs allege any activity by PDVSA in relation to the acts against Mr. Albán. After all named Defendants failed to appear, this Court entered a final default judgment in favor of Plaintiffs against the Cartel on September 15, 2022, later amended on February 9, 2023. ECF 59, 73. On August 7, 2023, the Court entered a final default judgment for Plaintiffs as to the individual Maduro Defendants and the FARC for $217 million. ECF 91.

Although their default judgments are not against PDVSA, Plaintiffs began enforcement efforts by moving *ex parte* on January 5, 2024 for a writ of execution on a Learjet allegedly owned by PDVSA. ECF 94. Plaintiffs were required, but failed, to properly effect service on PDVSA. On June 10, 2024, Judge Torres issued a Report and Recommendation, recommending the issuance of the writ based on his finding that PDVSA is an "agency or instrumentality" of Maduro and the Cartel under TRIA. ECF 110 at 6–8. Judge Torres' finding rested exclusively on OFAC's designation of PDVSA as a sanctioned Venezuelan governmental entity. ECF 110 at 6–7. On July 1, 2024, the Court issued its Order adopting the R&R and granting Plaintiffs' motion. ECF at 113. Plaintiffs' motion made no allegations as to any of PDVSA's subsidiaries and neither the Report and Recommendation nor the July 1 Order make any findings as to any PDVSA subsidiary. *See* ECF 355 at 8–9.

4

Plaintiffs began using the July 1 Order to attempt to satisfy their judgments from other assets purportedly belonging to PDVSA. ECF 150, 198, 237. And despite Plaintiffs' failure to make any allegations as to any PDVSA subsidiary, Plaintiffs also began using the July 1 Order to obtain writs as to a number of entities based solely on their status as subsidiaries of PDVSA. ECF 134, 165, 180, 219, 380. Plaintiffs also moved for turnover as to two of these writs. ECF 161, 256. A number of these writs were later transferred to the Southern District of New York. ECF 395.

On December 14, 2024, PDVSA filed its Motion to Vacate requesting, among other relief, that the Court vacate its July 1 Order, dissolve the writs, and dismiss Plaintiffs' enforcement proceeding as to PDVSA and its assets with prejudice. ECF 310 at 1 ("Motion to Vacate").

After PDVSA's Motion to Vacate was fully briefed, Plaintiffs used the July 1 Order to obtain a writ as to "PDVSA/PetroMonagas," which remains under seal. ECF 380. Upon learning of the writ, PDVSA promptly supplemented its Motion to Vacate to request that the Court additionally dissolve the writ as to PetroMonagas. ECF 389.

On April 9, 2025, Magistrate Judge Torres entered the R&R recommending that PDVSA's Motion to Vacate be granted in part. The R&R recommends the writs of garnishment targeted at Petrocedeño, Petromer, and Bariven (ECF 134, 165, 180) be dissolved and the two pending turnover motions as to those writs (ECF 161, 256) be denied. R&R 23–24. The R&R recommends the remainder of PDVSA's Motion to Vacate be denied without making a specific recommendation as to the writ targeted at PetroMonagas. R&R 24.

## LEGAL STANDARD

The Court reviews "de novo" the portions of the R&R "to which objection is made." 28 U.S.C. § 636(b)(1); Local Mag. R. 4(b). In ruling on the objections, the Court makes its "own determination on the basis of th[e] record" developed before the Magistrate Judge and "may also receive further evidence." *Id.*

## ARGUMENT

### I. TRIA DOES NOT PROVIDE A BASIS FOR THIS COURT'S SUBJECT-MATTER JURISDICTION AS TO PDVSA

The R&R recognizes that Plaintiffs were required to establish the Court's subject-matter jurisdiction for these purported post-judgment proceedings seeking to hold PDVSA liable for their default judgments against Maduro and the Cartel. R&R 7–8. But the R&R erroneously concludes that "TRIA confers subject matter jurisdiction over these PDVSA post-judgment proceedings." *Id.* at 7. That conclusion ignores binding Supreme Court and Eleventh Circuit precedent that the

5

FSIA "provides the *sole basis* for obtaining jurisdiction over a foreign state." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989) (emphasis added); *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312 (11th Cir. 2009) (quoting same); *see Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 205 (2018) ("The [FSIA] grants foreign states and their agencies and instrumentalities immunity from suit in the United States (called jurisdictional immunity) and grants their property immunity from attachment and execution in satisfaction of judgments against them."). That conclusion likewise ignores the Statement of Interest filed by the United States in a similar proceeding — in fact, the R&R omits any reference to the U.S. Statement of Interest — in which the United States is clear that TRIA "does not provide an independent basis for subject-matter jurisdiction against a foreign state that is not a state sponsor of terrorism, as designated by the Executive." ECF 310-1 at 2; *see id.* at 11.

As the United States explains, 28 U.S.C. § 1604 confers "jurisdictional immunity, which provides the state immunity from suit," and § 1609 confers "execution immunity, which protects the state's property from attachment and execution." *Id.* at 10; *see Rubin*, 583 U.S. at 205. TRIA simply provides another exception to attachment and execution immunity of the property of a foreign state or its agencies or instrumentalities if the plaintiff holds a judgment against the foreign state under the state-sponsor-of-terrorism exception, 28 U.S.C. § 1605A or repealed § 1605(a)(7). *See* TRIA § 201(a); ECF 310-1 at 11–12 ("TRIA does *not* provide an independent grant of subject-matter jurisdiction over foreign states where jurisdiction has not already been established under the FSIA's exception to immunity for state sponsors of terrorism. Rather, in such cases TRIA simply — albeit significantly — expands the exceptions for *attachment* immunity for entities that fall within its scope.") (emphasis in original)).

The R&R fails to grapple with any of these principles. As a result, the R&R relies on inapposite cases to erroneously conclude that "TRIA exempts Plaintiffs from satisfying th[e] requirements" of the FSIA. R&R 4; *see* R&R 4–6 (citing cases). But none of the cases cited in the R&R supports that proposition. Rather, each case confirms that TRIA "provides for federal court jurisdiction over execution and attachment proceedings involving the assets of a foreign sovereign, however, *only* where 'a *valid* judgment has been entered' against the sovereign." *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 133 (2d Cir. 2019) (quoting *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 52 (2d Cir. 2010)) (first emphasis added); *see* ECF 310-1 at 12 (same). Indeed, in each of the cases cited in the R&R, the plaintiffs invoking TRIA had first

6

obtained "a valid judgment" against a state sponsor of terrorism by overcoming the judgment debtor's immunity "under section 1605A or 1605(a)(7)." TRIA § 201(a); *see Bennett v. Islamic Republic of Iran*, 825 F.3d 949 (9th Cir. 2016) (involving invocation of TRIA to satisfy judgment against Iran); *Weinstein*, 609 F.3d 43 (same); *Hausler v. Republic of Cuba*, 2010 WL 11442514 (S.D. Fla. Oct. 14, 2010) (same as to Cuba); *Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006) (same); *Hill v. Republic of Iraq*, 2003 WL 21057173 (D.D.C. Mar. 11, 2003) (same as to Iraq); *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107 (2d Cir. 2016) (same as to Iran).

The R&R's failure to correctly interpret the FSIA's jurisdictional and execution immunity provisions also leads it to erroneously find a conflict between TRIA's "notwithstanding" clause and the jurisdictional immunity provisions of the FSIA and then to hold that TRIA preempts the FSIA's jurisdictional immunity provisions. *See* R&R 5. That reading of TRIA's notwithstanding clause works "a broad expansion of a provision that is focused on attachment immunity only." ECF 310-1 at 19; *see also Ministry of Def. et c. v. Elahi*, 556 U.S. 366, 386 (2009) (explaining that TRIA's "notwithstanding" clause was intended "to eliminate the effect of any Presidential waiver issued under 28 U.S.C. § 1610(f) prior to the date of the TRIA's enactment"). "Moreover," as the United States has observed, "even to the extent that [TRIA] could be read as preempting conflicting laws, the United States is not aware of authority holding that a 'notwithstanding' clause would *create* subject-matter jurisdiction that would not otherwise exist." ECF 310-1 at 19 (emphasis supplied) (citation omitted).

In any event, no such conflict exists. As demonstrated by the cases on which the R&R relies, TRIA merely "expands exceptions to execution immunity where the FSIA's jurisdictional requirements have already been satisfied." ECF 310-1 at 12. TRIA thus "'provides jurisdiction for execution and attachment proceedings to satisfy a judgment for which there was original jurisdiction under the FSIA.'" *Id.* at 12–13 (quoting *Vera*, 946 F.3d at 133). As such, to invoke TRIA, Plaintiffs first "must establish an exception to jurisdictional immunity as set out in 28 U.S.C. §§ 1605 to 1607 that would be applicable to PDVSA," specifically, § 1605A. ECF 310-1 at 11. But Plaintiffs have not overcome PDVSA's jurisdictional immunity and, therefore, have failed to establish this Court's subject-matter jurisdiction.

7

## II. PLAINTIFFS FAILED TO ESTABLISH THIS COURT'S PERSONAL JURISDICTION OVER PDVSA

The R&R agrees with the parties that Plaintiffs were required to serve their motion seeking to hold PDVSA liable for their default judgments in accordance with § 1608(b) of the FSIA and that Plaintiffs' purported service of the motion failed to comply with the FSIA and the Hague Service Convention. *See* R&R 7–9; 28 U.S.C. § 1330(b). But the R&R erroneously concludes that, notwithstanding Plaintiffs' deficient service, Plaintiffs established personal jurisdiction over PDVSA on the purported basis that PDVSA "received actual notice," rendering "any technical deficiencies [] moot." R&R 8–9. But any "actual notice" PDVSA may have had is insufficient to effect service on PDVSA under the FSIA, and even if the deficiencies in Plaintiffs' service could be excused, PDVSA lacks sufficient minimum contacts with Florida to satisfy due process.

### A. Plaintiffs Failed Even to Attempt Proper Service on PDVSA

The R&R relies solely on the fact that PDVSA purportedly "received actual notice" of the enforcement proceedings, dismissing plaintiffs' service violations as mere "technical non-compliance." R&R 9. But the R&R does not explain that PDVSA learned of this enforcement action only *after* Plaintiffs had obtained the July 1 Order and a number of the writs and *despite*, not because of, Plaintiffs' purported service. And, more importantly, the R&R erroneously relies on a series of cases that were decided well before the Supreme Court's decision in *Republic of Sudan v. Harrison*, 578 U.S. 1, 19 (2019), and on other decisions (including from the Eleventh Circuit) making clear that "actual notice alone [i]s not enough to allow the court personal jurisdiction over" a foreign sovereign, *Prewitt Ent. v. OPEC*, 353 F.3d 916, 924 n.14 (11th Cir. 2003). *See Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015) ("[W]hen serving a foreign sovereign, strict adherence to the terms of 1608(a) is required" and that neither "substantial compliance, nor actual notice" will suffice.) (quotation marks and citation omitted). Although PDVSA discussed *Sudan* and *Prewitt* in its pleadings below (*see, e.g.*, ECF 355 at 5), the R&R does not even mention them, much less attempt to reconcile them with its recommendation.

The Supreme Court has explained that the FSIA's service rules, "which apply to a category of cases with sensitive diplomatic implications," "clearly fall into th[e] category" of cases "in which the rule of law demands adherence to strict requirements." *Sudan*, 578 U.S. at 19 (holding that Sudan was not properly served under FSIA § 1608(a)(3) when a service packet that names the

8

foreign minister is mailed to the foreign state's embassy in the United States instead of the foreign minister's office in the minister's home country).

Likewise, in *Harris Corp. v. Nat'l Iranian Radio & Television*, the Eleventh Circuit "admonish[ed] those seeking to invoke the FSIA to follow the service provisions it contains." 691 F.3d 1344, 1352 n.16 (11th Cir. 1982); *see* R&R 9–11 (citing same). The Eleventh Circuit explained that "Congress has carefully established a flexible framework so that American plaintiffs will have a variety of acceptable methods of service, even when relations with the foreign country in question are strained; at the same time, the framework is designed to insure that foreign defendants will get notice." *Id.* The Eleventh Circuit added that "[t]here is no excuse for departure from the dictates of the [FSIA]." *Id.* And the very case on which the R&R relies (*Ezemarval, LLC v. El Instituto Postal Dominicano*) confirms that effective service requires not only actual notice but also "substantial compliance." 2022 WL 18465685, at *4 (S.D. Fla. Dec. 16, 2022); *see* R&R 11 (citing same); *see also Magness v. Russian Fed'n*, 247 F.3d 609, 618 (5th Cir. 2001) (holding plaintiffs failed to demonstrate substantial compliance when they did not prove they had included "a 'notice of suit' in the service documents that allegedly were served" under § 1608(b)(3) and had failed to show that the purported service provided actual notice, notwithstanding Russia's presence at a TRO hearing). As the Eleventh Circuit noted in *Prewitt*, while "receipt of actual notice is an important factor in considering whether service of process is adequate[,] . . . it [i]s not enough to allow the court personal jurisdiction over the defendant"; service must also be "in substantial compliance with the formal requirements of the Federal Rules." 353 F.3d at 924 n.14.

The R&R thus errs when it places the burden of establishing prejudice on PDVSA to negate Plaintiffs' purported service. R&R 11. This is particularly true where Plaintiffs did not even attempt proper service, opting instead to serve the Florida Secretary of State, a method the R&R acknowledges "may lack footing under the FSIA." R&R 12 n.3. This is far from mere technical noncompliance, particularly in light of the fact that Plaintiffs' purported service had no reasonable hope of providing PDVSA with actual notice. The R&R provides no sound basis to excuse Plaintiffs' failure to even attempt substantial compliance with the FSIA here. *See Prewitt*, 353 F.3d at 924 n.14.

On the other hand, Plaintiffs have not shown that they will suffer prejudice if they are required to comply with the FSIA. As the Supreme Court explained in *Sudan*, Plaintiffs have other avenues with which to attempt service. 578 U.S. at 19. For example, Article 14 of the Convention

9

provides that, should "[d]ifficulties arise," service may be effected "through diplomatic channels," as was done in a similar action. *See* ECF 355 at 5 (citing Ltr. To Hon. S. Netburn, *Stansell v. FARC*, No. 16-mc-405 (S.D.N.Y. June 16, 2023), ECF 525-1 (noting service effected through diplomatic channels on "the Presidential Commissioner for Foreign Relations," an "accredited representative" of the U.S.-recognized National Assembly of Venezuela).

> **B.** **Plaintiffs Failed to Establish that PDVSA Has Sufficient Contacts with Florida to Satisfy Due Process**

Even if Plaintiffs had established statutory personal jurisdiction under the FSIA, due process requires Plaintiffs to show that PDVSA possesses "certain minimum contacts with [the forum] state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (internal quotation marks and citation omitted). Plaintiffs cannot satisfy this showing by attempting to attribute to PDVSA the unlawful and unauthorized misuse of its assets by the illegitimate, unrecognized Maduro regime.

The R&R dismisses these fundamental principles by improperly placing the burden on PDVSA to establish that the Court *does not have* personal jurisdiction. R&R 13. But the burden rests with Plaintiffs, and they must show that the Court does have personal jurisdiction. *See Goodyear Dunlop Tires Operations*, 564 U.S. at 923. The R&R erroneously finds that Plaintiffs have carried their burden by alleging that "PDVSA was used as a cog in Defendants' money laundering scheme" and that "PDVSA sent money from its accounts to various contractors in South Florida to perpetuate a money laundering and bribery scheme." R&R 13 (citing ECF 1 ¶ 101). But those allegations describe neither "suit-related conduct" nor "contacts that [PDVSA *it*]*self* create[d] with" Florida. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Moreover, Plaintiffs' attempts to attribute the Maduro regime's suit-related conduct to PDVSA would implicitly recognize Maduro's claim to control the government of Venezuela in contravention of the political-question doctrine. *See infra*, § III. The R&R makes no effort to address this argument in the context of PDVSA's due-process challenge. *See generally* R&R 12–14.

> **III.** **WHETHER PDVSA IS AN "AGENCY OR INSTRUMENTALITY" OF MADURO IS A NONJUSTICIABLE POLITICAL QUESTION**

The R&R does not disagree with PDVSA that deciding the identity of "'the legitimate political leadership of a foreign country'" presents a nonjusticiable political question. R&R 14

10

(quoting ECF 310 at 10). But the R&R erroneously concludes that OFAC's protective blocking of PDVSA's assets means the Executive Branch has already spoken and "presently identifies PDVSA as an agency or instrumentality," thereby resolving any political question. R&R 15. The Executive Branch has *never* opined that PDVSA is an "agency or instrumentality" of Maduro and the Cartel either as that term is used in the FSIA or TRIA. And the R&R's misreading of the Executive Branch's determinations confirms why this remains a nonjusticiable political question.

In response to the Maduro regime's unlawful conduct and to protect and preserve the assets of the Republic for the Venezuelan people, the 2015 National Assembly enacted the Statute to Govern a Transition to Democracy to Reestablish the Full Force and Effect of the Constitution of the Bolivarian Republic of Venezuela and created the Ad Hoc Board to manage PDVSA. *See* ECF 310-3 ¶ 4. In support of the Interim Government and the Ad Hoc Board of PDVSA, the United States protectively blocked PDVSA's assets to prevent the illegitimate Maduro regime from usurping PDVSA's assets and to "preserve th[o]se assets for the people of Venezuela." ECF 310-2 at 1. Contrary to the R&R's assertion, the Executive Branch's determination was not an open invitation for courts to take on the question of Venezuela's governance.

Plaintiffs ask the Court to allow them to enforce their judgment, which is against Maduro, members of his illegitimate regime, the Cartel, and the FARC, against PDVSA, an agency or instrumentality under the FSIA of the current government of Venezuela — recognized by the U.S. as the 2015 National Assembly. Plaintiffs, and the R&R, ignore that any connection between Defendants and PDVSA is the product of Maduro's illegal usurpation of the presidency of Venezuela and his regime's unlawful control of PDVSA's offices, assets, records, and employees in Venezuela. *See PDVSA US Litig. Tr. v. LukOil Pan Americas LLC*, 65 F.4th 556, 561–62 (11th Cir. 2023) (distinguishing PDVSA from the "Maduro entity" that "purports to speak for [PDVSA]"). Such enforcement action is incompatible with the Executive Branch's foreign policy, as PDVSA has been under the de jure control of the Ad Hoc Board, the entity established to oversee PDVSA's affairs by Venezuelan laws and decrees enacted by the U.S.-recognized government of Venezuela, since 2019. This distinction is especially important because, as noted below, the R&R fails to address the temporal constraints through which the Court must assess the agency or instrumentality question. *See infra*, § IV.B.

The R&R itself demonstrates exactly why this is a nonjusticiable political question. The R&R identifies PDVSA as an "agency or instrumentality" of a "terrorist party" — Maduro and the

11

Cartel — despite the fact that PDVSA is an "agency or instrumentality" of Venezuela, which has never been designated as a state sponsor of terrorism. R&R 14–15; *see* ECF 310-1 at 4 & n.2. This statement "makes the implied recognition of the [Maduro regime] over [Venezuela] inescapable." *In re Terrorist Attacks on September 11, 2001* ("*In re 9/11*"), 657 F. Supp. 3d 311, 355 (S.D.N.Y. 2023). And, to the extent the Court has any remaining doubt about the import of OFAC's blocking action, the Court should invite the views of the United States. *See* 28 U.S.C. § 517; ECF 310-1 at 1–4.

## IV. TRIA DOES NOT APPLY TO PDVSA

### A. TRIA Applies to Agencies or Instrumentalities of State Sponsors of Terrorism Only

TRIA does not apply to PDVSA, an agency or instrumentality of Venezuela, because TRIA applies only to agencies or instrumentalities of state sponsors of terrorism, and Venezuela is not a state sponsor of terrorism. The R&R rejected this argument on the sole ground that the Eleventh Circuit's decision in *Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713, 724 (11th Cir. 2014) (*Stansell II*), compels a contrary result. R&R 16. The R&R correctly held that PDVSA "is entitled to preserve this issue" for appellate review. *Id.* Although PDVSA acknowledges that this Court is bound by *Stansell II*, PDVSA maintains its position, which it preserves, as may be necessary, for further appellate review, that the legal rationale of *Stansell II* is incorrect, and that TRIA does not apply to PDVSA for several reasons.

TRIA provides that, under certain circumstances, a person who has a judgment against a terrorist party may satisfy that judgment with "the blocked assets of th[e] terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party)." 28 U.S.C. § 1610. The FSIA defines the term "agency or instrumentality" as any entity that

> (1) is a separate legal person, corporate or otherwise, and
>
> (2) is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).

It is the position of PDVSA and the United States that this definition applies to TRIA. Indeed, Section 1603(b) of the FSIA provides that the definitions in Section 1603(b) apply "[f]or

purposes of this chapter," wherein TRIA is codified as a note. *See* ECF 310-1 at 34. Despite this explicit language making clear that the definition applies to TRIA, the Eleventh Circuit held in *Stansell II* that Section 1603(b)'s definition of "agency or instrumentality" does not apply to TRIA. Instead of adopting the FSIA's definition, the court of appeals (and the R&R) adopted a broad definition that does not limit the term to agencies or instrumentalities of state sponsors of terrorism. That holding is incorrect.

The R&R's holding is incorrect not only because it contradicts the FSIA's explicit language but also because it is inconsistent with Congress's intent. The United States has advocated against applying the broader definition of "agency or instrumentality" in TRIA. Specifically, in *Caballero*, another judgment creditor of the FARC sought to execute his judgment upon assets belonging to PDVSA and certain of its subsidiaries. *See Caballero*, ECF 85-1. Like Plaintiffs here, Caballero's agency-or-instrumentality theory as to PDVSA's subsidiaries there was based solely on purported acts of the former Chávez and Maduro regimes. The United States advocated against applying the Second Circuit's definition of "agency or instrumentality" — which is derived from the Eleventh Circuit's definition — to agencies or instrumentalities of foreign states. ECF 310-1 at 31–35, 33 n.10. The United States expressed concerns that such a broad definition would "eliminate Congress's careful application of TRIA to state sponsors of terrorism" and "would allow state assets to be attached under a broad range of circumstances . . . without any state sponsor of terrorism requirement, in contravention of FSIA's targeted approach and the specific language of TRIA that references that targeted approach." *Id.* at 34–35; *see* U.S. Br. at 22, *Havlish v. Bin Laden*, 03-cv-09848 (S.D.N.Y.), ECF 563 (holding the definition of agency or instrumentality "may differ" when question is whether foreign state "can also act as an agency or instrumentality of a non-state entity").

Moreover, TRIA's legislative history makes clear that Congress intended the phrase "agency or instrumentality" in TRIA to mean the "agency or instrumentality of a foreign state" adjudged liable for a terrorism-related claim. *See generally Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 181–82 (2017) (examining the FSIA's language, history, and structure to determine applicable standard for subject-matter jurisdiction). In particular, TRIA was enacted to permit victims of terrorism who had successfully sued state sponsors of terrorism to satisfy their judgments against seized assets of agencies or instrumentalities of designated states without regard to their separate juridical status. 148 Cong.

13

Rec. 10312 (2002); *id.* at 23121 (stating TRIA was enacted "for purposes of enforcing a judgment against a terrorist state," and to clarify that the law "does not recognize any juridical distinction between a terrorist state and its agencies or instrumentalities"). Notably, the term "agency or instrumentality" was added to the text of draft § 201(a) at the same time as its companion language — "for which a terrorist party is not immune under section 1605A or 1605(a)(7)" — signifying that Congress intended for plaintiffs with judgments against state sponsors of terrorism to be able to satisfy their judgments against blocked property of that state's agencies or instrumentalities. *Compare* H.R. 3210 § 15(f), 107th Cong. (Nov. 19, 2001) (omitting reference to "agencies or instrumentalities"), *with* H.R. 3210 § 15(e), 107th Cong. (Nov. 29, 2001) (including quoted text). Further, the final enacted text of TRIA was drafted by Senator Harkin and adopted wholesale from a bill that Senator Harkin explained "only applie[d] to 'terrorist states.'" 148 Cong. Rec. 10352 (2002) (statement of Sen. Harkin); *see* S. 2134, 107th Cong. (Apr. 16, 2002) ("To allow American victims of state sponsored terrorism to receive compensation from blocked assets of those states."). Thus, the legislative history demonstrates the phrase "agency or instrumentality" in TRIA is the same as that used in § 1603(b) of the FSIA.

Additionally, the Supreme Court expressly rejected the notion that "agency or instrumentality" can be "given the meaning of 'any thing or person through which action is accomplished.'" *Samantar v. Yousuf*, 560 U.S. 305, 315 (2010) (cleaned up); *see also Cohen v. Empire Blue Cross & Blue Shield*, 176 F.3d 35, 41–42 (2d Cir. 1999) (holding that an "agent" is not an "agency" for purposes of Title 28); *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 259 (5th Cir. 2016) (holding "the term 'agent' should not to be confused with 'agency' in the phrase 'agency or instrumentality'"). And reading "agency or instrumentality" to be synonymous with something akin to a common law "agent" would be a radical departure from the meaning ascribed to the phrase throughout the U.S. Code, which always denotes a relationship between a government and a separate or inferior governmental body. *See, e.g.*, 28 U.S.C. § 530D(a)(1)(C)(i)-(ii) (referencing "the United States (including any agency or instrumentality thereof)").

Because the term "agency or instrumentality" under TRIA shares the meaning of the same term under § 1603(b), TRIA does not apply to PDVSA's assets here, where Plaintiffs do not hold a judgment against a state sponsor of terrorism and Venezuela has never been so designated.

14

### B. PDVSA is Not an "Agency or Instrumentality" of Maduro and the Cartel

The R&R does not disagree with PDVSA that Plaintiffs failed to offer any allegation or evidence that PDVSA was an "agency or instrumentality" of Maduro or the Cartel, *when the enforcement proceedings against PDVSA's assets began in 2024*. Nor does it explicitly address temporal time limits for assessing agency-or-instrumentality status. Instead, the R&R relies solely on a purported expert opinion of Douglas Farah (ECF 94-5) and OFAC's protective blocking of PDVSA's assets to support its recommendation. *See* R&R 16–17. Neither supports the R&R's conclusion. And the R&R is incorrect that PDVSA was required, but failed, to present any contrary evidence.

*First*, the R&R recommends that this Court rely on the Farah opinion but does not make any attempt to address its inadmissibility. Plaintiffs must show by "compelling, admissible evidence" that they are entitled to execute their default judgment upon PDVSA's blocked assets. *Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044 (D.C. Cir. 2014); *see* 28 U.S.C. § 1608(e). Yet, Plaintiffs and Farah have failed to do so here by failing to demonstrate that they have met their federal *Touhy* obligations. *See* 32 C.F.R. §§ 97.7, 97.9; 6 C.F.R. § 5.45. Those obligations require them to show that the government has authorized Farah to opine on matters he learned from his work with the U.S. Department of Defense and the U.S. Department of Homeland Security. *See id.*; *see also United States v. Rider*, 2023 WL 2072088, at *12 (E.D. Tex. Feb. 17, 2023) (explaining the compliance with these regulations is mandatory). Because Plaintiffs and Farah have failed to fulfill these obligations, the Court should not only decline to consider them here but should also strike them. *See, e.g.*, *McMahon v. Presidential Airways*, 2009 U.S. Dist. LEXIS 151315, at *12 (M.D. Fla. Nov. 5, 2009) (striking expert report obtained in violation of *Touhy* regulations and prohibiting testimony).

*Second*, to the extent OFAC designations receive some judicial deference, the OFAC designation here actually undercuts the R&R. The OFAC designation shows that OFAC protectively blocked PDVSA's assets so that it could prevent the Maduro regime from dissipating those assets. *See* ECF 310-2 at 1. Regardless, by relying so heavily on the designation, the R&R runs afoul of the Eleventh Circuit's warning that "it is not proper for [] district court[s] to rely solely on OFAC designation as creating an irrebuttable presumption of agency or instrumentality status." *Stansell II*, 771 F.3d at 731 n.13.

Moreover, whatever level of deference courts may give to OFAC designations, they must give complete deference to the Executive Branch's recognition decisions. This Court is required to treat only the actions of the U.S.-recognized Venezuelan government and the Ad Hoc Board as actions of the Venezuelan government and PDVSA, respectively, after January 2019, when the United States ceased recognition of the illegitimate Maduro regime and recognized the 2015 National Assembly and its former Interim Government as the only legitimate government of Venezuela. *Zivotofsky v. Kerry*, 576 U.S. 1, 19 (2015) (holding "recognition [is] the exclusive prerogative of the Executive"); *see In re 9/11*, 657 F. Supp. 3d at 333–36 (declining to find Afghanistan's Central Bank an agency or instrumentality of the Taliban because doing so would amount to judicial recognition of the Taliban). That determination is sufficient for the Court to reject Plaintiffs' claim that PDVSA is presently an "agency or instrumentality" of Maduro or the Cartel, a claim which, in any event, the Court lacks jurisdiction to decide. *See supra*, § III. PDVSA need not offer the Court any evidence to prove otherwise. And even if PDVSA were required to offer any such evidence, it has done so. *See* ECF 310-2–10. The R&R does not mention, much less consider, this evidence in weighing its "agency or instrumentality" recommendation.

### C. The Blocked Assets are Not Assets of a Judgment Debtor

The R&R does not disagree with PDVSA that Plaintiffs failed to show that the blocked assets Plaintiffs seek to attach are assets "of" Maduro or the Cartel. Instead, to support its recommendation, the R&R relies solely on *Stansell II* and *Stansell v. Lopez Bello*, 802 F. App'x 447 (11th Cir. 2020). *See* R&R 18-19. But that reliance is misplaced because neither case directly addresses whether TRIA requires that the judgment debtors have at least an ultimate beneficial ownership interest in the blocked assets to be attached.

The R&R also does not reconcile its recommendation with the plain text of the statute or the "common law execution principles" underlying it. As the United States explains in support of PDVSA's position in the substantially similar case in the Western District of New York, Plaintiffs must prove the assets it seeks to attach belong to the terrorist party. *See* ECF 310-1 at 29–31. TRIA's plain text requires Plaintiffs to prove that the assets are "blocked assets *of* that terrorist party (*including* the blocked assets of any agency or instrumentality of that terrorist party)." TRIA § 201(a) (emphasis added). The plain meaning of the emphasized language is that "a plaintiff can execute only against assets that are 'assets of,' i.e., property belonging to, the terrorist party." U.S.

16

Br. at 303, *In re 650 Fifth Ave. & Related Props.*, No. 17-3258 (2d Cir. Aug. 31, 2018), ECF No. 240; *In re 9/11*, 657 F. Supp. 3d at 332–33 (TRIA requires assets be "of" the judgment debtor.). The word "including" (instead of "and" or "or") underscores that "the terrorist party" must have at least an ultimate beneficial ownership interest in "the blocked assets." TRIA § 201(a). Here, because Plaintiffs indisputably failed to show that the assets they seek to attach are assets "of" Maduro or the Cartel, TRIA does not apply, and the R&R's recommendation should be rejected.

### D. Plaintiffs Failed to Comply with § 1610(c) of the FSIA

According to the R&R, § 1610(c) does not apply here because TRIA, not the FSIA, governs the Court's subject-matter jurisdiction. R&R 22-23. That recommendation is incorrect, and this Court should decline to adopt it, because the FSIA determines whether the Court has subject-matter jurisdiction over Plaintiffs' claims. *See supra* § I.

Moreover, even if TRIA conferred subject-matter jurisdiction, it does not preempt the procedural requirements of the FSIA. *See* Fed. R. Civ. P. 69(a)(1) ("The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, *but a federal statute governs to the extent it applies*." (emphasis added)); *United States. v. Holy Land Found. For Relief & Dev.*, 722 F.3d 677, 687 (5th Cir. 2013) (collecting cases) ("[TRIA's] 'notwithstanding' clause only applies when another provision of law conflicts with the TRIA."). As the United States explains, in TRIA proceedings "where the foreign state was not the judgment debtor, as here," service under the FSIA "is necessary to establishing personal jurisdiction" under § 1330(b) and "is also required before a default judgment can be enforced against a foreign state via the execution or attachment of state assets" under §1608(e) and 1610(c). ECF 310-1 at 24–25. Plaintiffs thus must comply with FSIA § 1610(c), which requires them to request an order from the Court to permit attachment or execution and to serve their default judgments on PDVSA. 28 U.S.C. § 1610(c); *see* 28 U.S.C. §§ 1608(b), (e). Because Plaintiffs have failed to comply with either obligation, this Court should dissolve the writs, vacate the turnover judgment, and deny the turnover motions. *See Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 297 (2d Cir. 2011).

## V. PLAINTIFF'S UNAUTHORIZED WRITS AS TO PDVSA'S SUBSIDIARIES SHOULD BE DISSOLVED WITH PREJUDICED

### A. Plaintiffs Should not be Permitted to Attempt to Cure their Unauthorized Writs

The R&R correctly concludes that that Plaintiffs' writs of garnishment upon accounts held by PDVSA subsidiaries Petrocedeño, Petromar, and Bariven are not authorized under TRIA. The R&R explains that Plaintiffs' assertions made in support of those writs are "conclusory" and insufficient to show that "any of the subsidiaries [is] an agency or instrumentality" of Maduro or the Cartel; that "PDVSA's corporate veil should be pierced"; "and/or" that "a subsidiary of any agency or instrumentality's assets are presumptively recoverable under the TRIA." R&R 20–21. The R&R therefore correctly recommends that the writs be dissolved and the associated turnover motions denied, but erroneously recommends that Plaintiffs be granted yet another opportunity to cure the deficiencies. *See* R&R 21. Plaintiffs had ample time to make the requisite showing and do not identify any obstacle that prevented them from timely doing so.

*First*, as courts have consistently recognized, a plaintiff cannot overcome the presumption of corporate separateness with "the bare allegation that one corporation dominated and controlled another." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 195 (2d Cir. 2010) (Leval, J., concurring), *aff'd*, 569 U.S. 108 (2013) (cleaned up); *see In re Birmingham Asbestos Litig.*, 997 F.3d 827, 829-30 (11th Cir. 1993) ("[T]he mere domination or control of a corporation by its stockholder cannot be enough to allow a piercing of the corporate veil."). Plaintiffs attempted to cure this deficiency with supplemental filings submitted *after* the R&R was issued. ECF 405. PDVSA has moved to strike those filings, and this Court should decline to consider them, because they are improper attempts to circumvent the court's rules against sur-replies. ECF 413.

*Second*, the subsidiaries' assets are not recoverable merely because the subsidiaries are wholly owned by PDVSA. R&R 20. To the contrary, these assets may not be attached under TRIA because they are not assets "of" any alleged agency or instrumentality. *See Levin v. JPMorgan Chase Bank, N.A.*, 751 F. App'x 143, 147 (2d Cir. 2018). Nothing in the Court's July 1 Order authorizes Plaintiffs to obtain writs as to assets of PDVSA's subsidiaries and the writs should be dissolved with prejudice.

18

**B.      The R&R Overlooks the Writ as to PetroMonagas that Plaintiffs Obtained After Briefing Was Complete**

The R&R acknowledges that PDVSA requested that the Court also dissolve the writ Plaintiff obtained as to PetroMonagas after briefing on PDVSA's Motion to Vacate was complete (ECF 380). R&R 3 & n.2. That writ is on all fours with the writs as to other PDVSA subsidiaries that the R&R correctly determined should be dissolved. However, the R&R does not address the writ nor explain why it, unlike the other writs as to PDVSA subsidiaries, should not be dissolved. *See generally id.* For this reason, the Court should reject the R&R's recommendation that Motion to Vacate be denied to the extent it seeks to dissolve the writ as to PetroMonagas and the writ should be dissolved with prejudice.

## CONCLUSION

For the foregoing reasons, this Court should (1) adopt the R&R to the extent it recommends (a) vacating the writs of garnishment for accounts held by Petrocedeño, Petromer, and Bariven (ECF 134, 165, 180) and (b) denying the pending turnover motions as to two of those garnished accounts (ECF 161, 256); (2) reject the remaining recommendations in the R&R; and (3) grant PDVSA's motion to (a) vacate the July 1, 2024 order (ECF 113), (b) dissolve the writs of garnishment (ECF 114, 134, 150, 165, 180, 198, 219, 237, 380), (c) vacate the November 14, 2024 turnover judgment (ECF 250), (d) deny the turnover motions (ECF 161, 256), and (e) dismiss this action as to PDVSA, its subsidiaries, and their respective property with prejudice.

Date: April 23, 2025

Respectfully submitted,

**WHITE & CASE LLP**

By: /s/ *Jaime A. Bianchi*
Jaime A. Bianchi
W. Dylan Fay
200 S Biscayne Blvd.
Miami, FL 33131
(305) 371-2700
jbianchi@whitecase.com
dylan.fay@whitecase.com

Claire A. DeLelle (*pro hac vice*)
Danielle S. Tarin (*pro hac vice* forthcoming)
Blair E. Trahan (*pro hac vice*)
Benedict S. Bernstein (*pro hac vice*)
701 Thirteenth Street N.W.
Washington, D.C. 20005
(202) 626-6485
claire.delelle@whitecase.com
danielle.tarin@whitecase.com
blair.trahan@whitecase.com
benedict.bernstein@whitecase.com

*Counsel for Petróleos de Venezuela, S.A.*