UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:21-cv-20706-DPG

MEUDY ALBÁN OSIO in her personal
capacity and in her capacity as the
personal representative of the Estate of
FERNANDO ALBERTO ALBÁN,
FERNANDO ALBÁN OSIO, and MARIA
FERNANDA ALBÁN OSIO,

     Plaintiffs,

vs.

NICOLAS MADURO MOROS;
FUERZAS ARMADA REVOLUCIONARIAS
DE COLUMBA ("FARC"); THE CARTEL OF
THE SUNS A.K.A. CARTEL DE LOS SOLES;
VLADIMIR PADRINO LOPEZ; MAIKEL
JOSE MORENO PEREZ; NESTOR LUIS
REVEROL TORRES; and TAREK WILLIAM
SAAB,

     Defendants,

vs.

VITOL INC.,

     Garnishee.

_____/

**NON-PARTY GARNISHEE VITOL INC.'S
MOTION TO DISMISS AND/OR DISSOLVE WRIT OF
GARNISHMENT AND INCORPORATED MEMORANDUM OF LAW**

Non-Party Garnishee, Vitol Inc., pursuant to Federal Rules of Civil Procedure 12(b)(2) and

12(b)(6), hereby moves to dismiss and/or dissolve the Writ of Garnishment obtained by Plaintiffs,

Meudy Albán Osio, in her personal capacity and in her capacity as the personal representative of

the Estate of Fernando Alberto Albán, Fernando Albán Osio and Maria Fernanda Osio (the "Osio

Plaintiffs") and directed to Vitol Inc. (the "Writ") (D.E. 492), on the grounds that this Court lacks

jurisdiction over Vitol Inc. and the property within scope of the Writ, and the Writ, at least as it

relates to certain entities/property interests the Osio Plaintiffs may assert to be within the scope of

the Writ, is fatally deficient or otherwise of no legal effect.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................... 1

PROCEDURAL BACKGROUND........................................................................... 2

FACTUAL BACKGROUND................................................................................... 2

MEMORANDUM OF LAW .................................................................................... 4

  I.   THIS COURT LACKS JURISDICTION OVER NON-PARTY GARNISHEE
      VITOL INC............................................................................................................ 4

      A.   THE OSIO PLAINTIFFS MUST ESTABLISH JURISDICTION AS TO EACH
           OF THE PROPERTY INTERESTS IT SEEKS TO GARNISH ............................ 4

      B.   NON-PARTY GARNISHEE VITOL INC. IS NOT SUBJECT TO GENERAL
           JURISDICTION IN FLORIDA ......................................................................... 6

      C.   NON-PARTY GARNISHEE VITOL INC. IS NOT SUBJECT TO SPECIFIC
           JURISDICTION IN FLORIDA AS TO THIS PROCEEDING ............................ 9

         1.   THE OSIO PLAINTIFFS CANNOT SATISFY THE SPECIFIC
               JURISDICTION PROVISIONS OF FLORIDA'S LONG-ARM
               STATUTE.................................................................................................. 9

         2.   THE OSIO PLAINTIFFS' CAUSE OF ACTION DOES NOT ARISE
               FROM
               ANY ACTIVITY WITH A NEXUS TO FLORIDA................................ 10

         3.   NON-PARTY GARNISHEE VITOL INC. DID NOT PURPOSEFULLY
               AVAIL ITSELF OF FLORIDA PRIVILEGES IN CONNECTION WITH
               THE LDC BLOCKED ACCOUNT........................................................... 11

      D.   THE BURDEN IS ON THE OSIO PLAINTIFFS TO PRESENT EVIDENCE
           SUPPORTING THE ASSERTION OF PERSONAL JURISDICTION AS TO
           NON-PARTY GARNISHEE VITOL INC. ........................................................ 13

  II.  ALTERNATIVELY, THE WRIT MUST BE DISMISSED AND/OR DISSOLVED TO
      THE EXTENT IT SEEKS ATTACHMENT OF CONTINGENT PROPERTY
      INTERESTS; PROPERTY OVER WHICH NON-PARTY GARNISHEE VITOL INC.
      HAS NO POSSESSION, CUSTODY, OR CONTROL; OR PROPERTY RELATING
      TO AN ENTITY FOR WHICH THERE HAS BEEN NO TRIA-RELATED FINDING
      OF AGENCY OR INSTRUMENTALITY ....................................................... 13

      A.   THE ONLY BLOCKED PROPERTY IN NON-PARTY GARNISHEE VITOL
           INC.'S POSSESSION, CUSTODY OR CONTROL IS CONTINGENT AND
           UNCOLLECTIBLE, AND THEREFORE NOT PROPERLY GARNISHABLE 13

      B.   THE LDC BLOCKED ACCOUNT IS NOT PROPERLY GARNISHABLE VIA
           NON-PARTY GARNISHEE VITOL INC......................................................... 15

      C.   THE WRIT CAN ONLY EXTEND TO ENTITIES FOR WHICH THERE IS AN
           AGENCY OR INSTRUMENTALITY FINDING ................................................ 16

CONCLUSION..................................................................................................... 16

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*APR Energy, LLC v. Pakistan Power Resources*,
    LLC, 2009 WL 425975 (M.D. Fla. 2009)...................................................................5

*Bristol-Myers Squibb Co. v. Super. Ct.*,
    582 U.S. 255 (2017)....................................................................................................5

*Carmouche v. Tamborlee Mgmt., Inc.*,
    789 F.3d 1201 (11th Cir. 2015) .................................................................................6

*Casa Express Corp. v. Bolivarian Repub. Of Venezuela*,
    No. 21-CV-23103, 2024 WL 1756363 (S.D. Fla. Apr. 24, 2024) ...........................12

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...........................................................................................6, 7, 8, 9

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*,
    592 U.S. 351 (2021)...........................................................................................11, 12

*Frida Kahlo Corp. v. Pinedo*,
    No. 18-21826-CIV, 2021 WL 4147876 (S.D. Fla. Sept. 13, 2021) ........................13

*Hattaway v. McMillian*,
    859 F. Supp 560 (N.D. Fla. 1994).............................................................................14

*Herederos de Roberto Gomez Cabrera LLC v. Teck Res. Ltd.*,
    43 F.4th 1303 (11th Cir. 2022) ..............................................................................7, 8

*Hinkle v. Cirrus Design Corp.*,
    775 Fed. Appx. 545 (11th Cir. 2019)....................................................................9, 11

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*,
    421 F.3d 1162 (11th Cir. 2005) .................................................................................9

*Internet Solutions Corp. v. Marshall*,
    557 F.3d 1293 (11th Cir. 2009) ...............................................................................13

*Jastrjembskaia v. inCruises, LLC*,
    No. 23-12601, 2024 WL 5244786 (11th Cir. Dec. 30, 2024)................................6, 8

*Jet Charter Serv., Inc. v. Koeck*,
    907 F.2d 1110 (11th Cir. 1990) .................................................................................4

*Jiménez v. Palacios*,
  No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288 (Del. Ch. Aug. 2, 2019) ............................3

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) .................................................................................12

*Madara v. Hall*,
  916 F.2d 1510 (11th Cir. 1990) ...................................................................................4

*Morris Flancbaum v. Tyson Grp., Inc.*,
  No. 21-CV-81270, 2021 WL 9563812 (S.D. Fla. Dec. 9, 2021) .........................................12

*Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*,
  701 F.2d 889 (11th Cir. 1983) .....................................................................................4

*Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*,
  792 F.2d 989 (11th Cir. 1986) ...................................................................................12

*Stansell v. Revolutionary Armed Forces of Colom. (FARC)*,
  149 F. Supp. 3d 1337 (M.D. Fla. 2015) .....................................................................5, 6

*Tomlin v. Anderson*,
  413 So. 2d 79 (Fla. 5th DCA 1982) ........................................................................13, 14

*U.S. Rubber Co. v. Poage*,
  297 F.2d 670 (5th Cir. 1962) .......................................................................................5

*United States ex rel. v. Mortgage Invs. Corp.*,
  987 F.3d 1340, 1355 (11th Cir. 2021)) .........................................................................8

*Venetian Salami Co. v. Parthenais*,
  554 So. 2d 499 (Fla. 1989) ..........................................................................................4

*Waite v. All Acquisition Corp.*,
  901 F.3d 1307 (11th Cir. 2018) ...................................................................................8

*West Florida Grocery Co. v. Teutonia Fire Insurance Co.*,
  77 So. 209 (Fla. 1917).................................................................................................14

*Wholesale Direct 2 You v. Switchmate Home, LLC*,
  No. 23-62273-CIV, 2024 WL 3757274 (S.D. Fla. June 12, 2024).........................................13

**Statutes**

28 U.S.C. § 1610.........................................................................................................1

Fla. Stat. § 48.193 ..............................................................................................*passim*

Fla. Stat. § 77.01 .......................................................................................................13

Fla. Stat. § 77.083 ......................................................................................................14

Fla. Stat. § 772.13 ......................................................................................................5, 6

TRIA § 201 .................................................................................................................1

Tex. Civ. Prac. & Rem. Code § 16.004 ......................................................................14

**Other Authorities**

31 C.F.R. § 591.309 ....................................................................................................3

31 C.F.R. § 591.310 ....................................................................................................3

31 C.F.R. § 591.405 ....................................................................................................3

## **INTRODUCTION**

On or about May 29, 2025, the Osio Plaintiffs obtained the Writ based on allegations set forth in an Ex Parte Motion for Issuance of Writ of Garnishment (the "Motion"), seeking indebtedness owed by Vitol Inc. to Petroleos de Venezuela S.A. ("PdVSA"), based on a finding that PdVSA is an agent or instrumentality of a Judgment Debtor in this action as required by Section 201 of the Terrorism Risk Insurance Act of 2002, Pub. Law No. 107-297 (codified following 28 U.S.C. § 1610) ("TRIA"). (D.E. 489).   Both the Writ and Motion lack any jurisdictional allegations as to Vitol Inc., a Delaware corporation with its principal place of business in Texas and no meaningful connection to the State of Florida, or as to or any garnishable property allegedly in Vitol Inc.'s possession, custody or control.

Neither Vitol Inc. nor any property interests the Osio Plaintiffs might argue to be within scope of the Writ have any relevant connection to the State of Florida.   Vitol Inc. has limited contacts with Florida—none of which are related or relevant to the Osio Plaintiffs' cause of action—and the only potentially relevant blocked property within Vitol's possession, custody or control is located in Texas.   Further, that blocked property is unresolved and unliquidated trade debt related to transactions that had no connection to Florida and that is contingent, insofar as it is subject to further negotiation between the parties involved in the underlying transactions (which negotiations have been paused during the pendency of applicable sanctions) (the "Blocked Trade Debt").   That inchoate blocked property is maintained on Vitol Inc.'s books in Texas. Because the underlying debts are contingent, and not absolute, the Blocked Trade Debt is not properly garnishable under Florida law.   Accordingly, the Writ should be dismissed and/or dissolved for lack of jurisdiction under Florida's long-arm statute (Fla. Stat. § 48.193) and the Due Process clause of the United States Constitution, and/or for failure to state a claim.

The Writ should otherwise be dismissed or dissolved for failure to state a claim to the extent the Osio Plaintiffs are seeking turnover from Vitol Inc. of blocked property over which it no longer has possession, custody or control, or blocked property of an entity for which there has yet to be an agent or instrumentality finding pursuant to TRIA.

## PROCEDURAL BACKGROUND

1.  On May 28, 2025, the Osio Plaintiffs filed the Motion.  (D.E. 489).

2.  On May 29, 2025, this Court granted the Motion and issued the Writ.

3.  On May 30, 2025, Vitol Inc. was served with a copy of the Writ.

## FACTUAL BACKGROUND[1]

4.  Vitol Inc. is a Delaware corporation with its principal place of business in Houston, Texas.  Evans Decl. ¶ 4.  Vitol Inc. is part of a global energy and commodity trading company made up of numerous corporate entities throughout the world (the "Vitol Group").  *Id.*

5.  Vitol Inc. does not have a physical presence in the State of Florida.  *See id.* at ¶¶ 5-8.  It is registered to do business in Florida for limited purposes.  *See id.* at ¶ 5.  The limited activities to which the registration related had been wound down prior to service of the Writ.  *See id.* Overall, Vitol Inc.'s contacts with the State of Florida are minimal and incidental to its business activities outside of Florida.  *See id.* at ¶¶ 9-13, 20.

6.  From the time the Writ was served to the present, the only blocked property Vitol Inc. has in its possession, custody or control is the Blocked Trade Debt, which consists entirely of unresolved and unliquidated trade debt that was still subject to further negotiation at the time it was blocked pursuant to Venezuela-related sanctions.  *See id.* at ¶ 21.  The debt was and remains

---

[1] In support of this Motion, Vitol Inc. has filed the Declaration of Richard J. Evans (the "Evans Declaration").

contingent, and due to the passage of time has become unrecoverable under the contracts to which it relates.  *See id.* at ¶¶ 21, 24-26.   Although the debt is contingent and uncollectible, the nature and scope of applicable sanctions still make it a "property interest" that has to be treated as blocked and that cannot be further negotiated—including to be zeroed out in Vitol Inc.'s accounting records, even though the debt is a functional nullity.  *See, e.g.*, 31 C.F.R. §§ 591.309 (defining "property" and "property interest" subject to blocking to include contingent liabilities); 591.310 (defining any "transfer" to which blocking prohibitions would apply to broadly include any alteration or other dealings in a blocked property interest, including "setting off of any obligation or credit"); 591.405 (prohibiting setoffs against blocked property).

7.     From the time the Writ was served to the present, the only other blocked property over which Vitol Inc. has previously had possession, custody or control are refunds it owed to LDC Supply International LLC ("LDC"),[2] which Vitol Inc. paid into a blocked account with JPMorgan Chase ("JPMC") pursuant to Venezuela General License 12 ("GL 12")[3] (the "LDC Blocked Account") in February 2019.  *See* Evans Decl. ¶¶ 27-34.  The funds were specifically placed into a blocked, segregated "For the Benefit Of" or "FBO" account for which LDC is the

---

[2] LDC is a wholly owned U.S. subsidiary of PDV Holding, Inc. ("PDV Holding"), a U.S. company. To Vitol Inc.'s knowledge and understanding, LDC and PDV Holding do not consider themselves to be owned or controlled, directly or indirectly, by the regime of Nicolás Maduro.  The U.S. government has recognized the National Assembly standing in opposition to the regime of Nicolás Maduro as the Government of Venezuela, and the National Assembly has appointed an Ad Hoc Board of PdVSA.  Under U.S. law, the PdVSA Ad Hoc Board is the recognized board that exercises voting authority over PDV Holding.  *See Jiménez v. Palacios*, No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288 (Del. Ch. Aug. 2, 2019), *aff'd* 237 A.3d 68 (Del. 2020).

[3] GL 12, now expired, was a license allowing for the wind-down of transactions involving PdVSA or entities PdVSA owned directly or indirectly, which went into effect on January 28, 2019. *See* Evans Decl. Ex. A. It authorized the wind-down of transactions involving PdVSA entities such as LDC, and in subpart (c) instructed that payments allowed under GL 12 that were for the direct or indirect benefit of a blocked person had to be paid into a blocked, segregated account maintained in the United States. *See id.*

sole beneficiary. *See id.* at ¶¶ 28, 34. Accordingly, at the time the Writ was served, Vitol Inc. no longer had possession, custody or control of the LDC Blocked Account. *See id.* at ¶¶ 33-34.

8.      To Vitol Inc.'s knowledge, the LDC Blocked Account is maintained at a JPMC branch in New York. *See id.* at ¶ 30.

## MEMORANDUM OF LAW

### I.      THIS COURT LACKS JURISDICTION OVER NON-PARTY GARNISHEE VITOL INC.

The Writ should be dismissed and/or dissolved because this Court lacks jurisdiction over Vitol Inc. and the blocked property in its possession, custody or control. In order for a federal court to obtain jurisdiction over a non-resident, such as Vitol Inc., a two-prong test must be satisfied: (i) there must be sufficient jurisdictional facts to bring the action within either the "general" or "specific" jurisdiction provisions of Florida's long-arm statute, and (ii) the non-resident must have sufficient minimum contacts with Florida to comport with due process. *See Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1113 (11th Cir. 1990); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989) (citation omitted). Florida's long-arm statute must be strictly construed, and both prongs of the above-stated test must be satisfied before this Court may exercise jurisdiction. *See Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 891 (11th Cir. 1983); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). As set forth herein, the Osio Plaintiffs have not satisfied either of the jurisdictional prongs as to Vitol Inc. or the property interests allegedly within scope of the Writ.

### A.      THE OSIO PLAINTIFFS MUST ESTABLISH JURISDICTION AS TO EACH OF THE PROPERTY INTERESTS IT SEEKS TO GARNISH

As Florida federal courts have recognized in comparable TRIA garnishment actions, "a garnishment proceeding 'is not an action *in personam*, nor is it, strictly speaking, a proceeding *in rem*. Partaking of the nature of both, it is frequently classified as a proceeding *quasi in rem*.'"

*Stansell v. Revolutionary Armed Forces of Colom. (FARC)*, 149 F. Supp. 3d 1337, 1339 (M.D. Fla. 2015) (quoting *U.S. Rubber Co. v. Poage*, 297 F.2d 670, 673 (5th Cir. 1962)).  Accordingly, the Court "must not only have personal jurisdiction over the garnishee, but also jurisdiction over the property or 'res' that is the subject of the writ of garnishment."  *Id.* (citing *APR Energy, LLC v. Pakistan Power Resources*, LLC, 2009 WL 425975, at * 2 (M.D. Fla. 2009)).  It follows by the dual nature of the *quasi in rem* jurisdiction applicable in a garnishment action such as this that where the garnishor is seeking to attach separate, unrelated sets of blocked assets from the garnishee, the Court must assess its jurisdictional reach as to each of the assets on their own individual merits.

Vitol Inc. assumes, but does not concede, for the sake of this Motion that recent amendments to Fla. Stat. § 772.13 expand the Court's jurisdictional reach such that it can assert *in rem* jurisdiction over intangible property within the possession, custody or control of a garnishee over which the Court has *in personam* jurisdiction.  Although this would arguably supply *in rem* jurisdiction as to any attachable intangible property in Vitol Inc.'s possession, custody or control in the event the Court concludes that it has general *in personam* jurisdiction over Vitol Inc., the same result does not follow in the same matter of course when dealing with specific jurisdiction.

Because specific jurisdiction under the Florida long-arm statute requires that the cause of action "arise from" one of nine categories of specific acts, and because the Osio Plaintiffs have not asserted *in personam* claims as to Vitol Inc. that are unrelated to the *res* they seek to garnish, the Court can only assert specific jurisdiction as to each of the claims in this *quasi in rem* proceeding if it determines that (i) Vitol Inc. has engaged in some action tied in some way to Florida (ii) within the scope of Fla. Stat. § 48.193(1)(a), that (iii) specifically relates to each of the property interests in scope of the Writ.  *See, e.g.*, *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017)

(noting that for specific jurisdiction to apply "there must be an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation") (internal citation and quotations omitted); *cf. Stansell*, 149 F. Supp. 3d at 1341 (discussing the reach of jurisdiction where there is no "interface" between *in personam* and *in rem* claims). This is true even under the broadest interpretation of section 772.13(6)(a)(3), as amended, because that provision must still be read in concert with section 48.193(1)(a) and principles of constitutional due process.

There is no basis in this matter for the Court to assert general jurisdiction over Vitol Inc., nor any basis to assert specific jurisdiction relative to any property interests the Osio Plaintiffs may argue are within the scope of the Writ consistent with the requirements of section 48.193 or constitutional due process, even with the benefit of section 772.13(6)(a)(3), as amended. The Writ should therefore be dismissed or dissolved.

## B. NON-PARTY GARNISHEE VITOL INC. IS NOT SUBJECT TO GENERAL JURISDICTION IN FLORIDA

The Court's analysis of general jurisdiction as to non-resident Vitol Inc. is governed by the reach of the general jurisdiction provision of Florida's long-arm statute, Fla. Stat. § 48.193(2), and the requirements of constitutional due process. *See, e.g., Jastrjembskaia v. inCruises, LLC*, No. 23-12601, 2024 WL 5244786, at *4-5 (11th Cir. Dec. 30, 2024). Under Florida's long-arm statute, an assertion of general jurisdiction as to Vitol Inc. would only be appropriate if the company "is engaged in substantial and not isolated activity within this state." Fla. Stat. § 48.193(2). Because this provision extends to the limits of personal jurisdiction under the Fourteenth Amendment, the Court's only inquiry is whether the exercise of general jurisdiction is within constitutional bounds as articulated by *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and its progeny. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015).

Pursuant to the *Daimler* standard, a non-resident corporation such as Vitol Inc. is only subject to general jurisdiction "'when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum,'" which is traditionally where the corporation is incorporated and where it maintains its principal place of business. *Herederos de Roberto Gomez Cabrera LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1311 (11th Cir. 2022) (quoting *Daimler*, 571 U.S. at 127).  The Osio Plaintiffs cannot satisfy this standard.

As attested in the Evans Declaration, Vitol Inc. does not:

- Own, lease, rent or use property in Florida;

- Have a mailing address or telephone listings in Florida;

- Have bank accounts in Florida;

- Target Florida-based or Florida-related business; or

- Perform work for any Florida-based person or entity that requires Vitol Inc. personnel to conduct work in Florida.

*See* Evans Decl. ¶¶ 6-12.  Although Vitol Inc. registered to do business in Florida for the limited purpose of maintaining refined products inventories at third-party storage facilities in the state, it does not maintain offices or business licenses in the state. *See id.* at ¶ 5.  Further, not only do these storage inventories not relate to any blocked property or the Writ, but the commercial activities relating to them had been fully wound down prior to service of the Writ. *See id.* at ¶ 5.  The last step in this wind down was cessation of the terminaling storage agreement Vitol Inc. had maintained with a third-party entity, which agreement expired by its own terms on May 31, 2025, with all related refined products inventories having been liquidated before that date. *See id.* Accordingly, "Vitol Inc. does not operate, conduct, engage in or otherwise carry on a business

venture in the State of Florida. Nor does Vitol Inc. have substantial and not isolated activity within the State of Florida." *See id.* at ¶ 20.

Although the Vitol Group, of which Vitol Inc. is a part, does have some limited business activities involving Florida, most are not carried out by Vitol Inc., but by other companies in the Vitol Group. *See id.* at ¶¶ 14-15. None of those companies are Vitol Inc. parents or subsidiaries, and none act or have acted in or in connection with Florida at Vitol Inc.'s direction or under its control, or as an agent or other representative of Vitol Inc. *See id.* at ¶ 14. Under controlling Eleventh Circuit precedent, the contacts of such corporate affiliates can only be attributed to Vitol Inc. for personal jurisdiction purposes when they involve subsidiaries or affiliates that are "'merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without *any semblance of individual identity*'" (*i.e.*, is a mere "alter ego"). *Herederos de Roberto Gomez Cabrera LLC*, 43 F.4th at 1312 (quoting *United States ex rel. v. Mortgage Invs. Corp.*, 987 F.3d 1340, 1355 (11th Cir. 2021)) (emphasis in original). The Osio Plaintiffs have not asserted and have no basis to assert that any Vitol Group entity operating in or in connection with Florida is a mere agent or instrumentality of Vitol Inc., and therefore cannot rely on their contacts in support of an assertion of personal jurisdiction as to Vitol Inc.

Vitol Inc. does not otherwise fit within any of the "limited set of affiliations" or "exceptional cases" courts interpreting *Daimler* have found to be sufficient to support assertion of general jurisdiction over a non-resident corporation. *See, e.g.*, *Jastrjembskaia*, 2024 WL 5244786, at *5-6; *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1321 (11th Cir. 2018).

### C. NON-PARTY GARNISHEE VITOL INC. IS NOT SUBJECT TO SPECIFIC JURISDICTION IN FLORIDA AS TO THIS PROCEEDING

#### 1. THE OSIO PLAINTIFFS CANNOT SATISFY THE SPECIFIC JURISDICTION PROVISIONS OF FLORIDA'S LONG-ARM STATUTE

As with general jurisdiction, the Court must first consider Florida's long-arm statute when determining whether it can assert specific jurisdiction over Vitol Inc.  *See Hinkle v. Cirrus Design Corp.*, 775 Fed. Appx. 545, 547 (11th Cir. 2019).  Notably, the specific jurisdiction provisions of the statute, Fla. Stat. § 48.193(1)(a), are limited in two key respects.  First, while the general constitutional standard for specific jurisdiction is that a suit "must aris[e] out of *or relat[e]* to the defendant's contacts with the forum," *Daimler*, 571 U.S. at 127 (emphasis added), section 48.193(1)(a) applies only to "causes of action *arising from*" the party's contacts with the forum. Further, it enumerates nine specific categories of action sufficient to support specific jurisdiction under the statute, at least one of which must be satisfied.

Of those nine categories, the only one that the Osio Plaintiffs could arguably allege as applicable in this case is subsection 1(a)(1), which provides for jurisdiction "for any cause of action arising from" a party's "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state."  As attested to in the Evans Declaration, Vitol Inc.'s contacts with Florida are exceedingly limited.  In weighing the factors considered most relevant to whether an entity is carrying on business in Florida for purposes of the long-arm statute, Vitol Inc. does not maintain an office in Florida, does not maintain a license to do business in Florida, and neither targets Florida counterparties nor considers Florida to be a material part of its business.  *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005).  Nowhere in their Motion or the Writ do the Osio Plaintiffs adequately assert that Vitol Inc. is conducting or otherwise carrying on business in Florida

consistent with section 48.193(1)(a)(1), nor how any of the property interests they believe are within the scope of the Writ, or the blocking of such property interests, arise from Vitol Inc.'s limited business activities in Florida.  Nor can they.

### 2. THE OSIO PLAINTIFFS' CAUSE OF ACTION DOES NOT ARISE FROM ANY ACTIVITY WITH A NEXUS TO FLORIDA

As attested to in the Evans Declaration, all blocked property over which Vitol Inc. currently has or previously had possession, custody or control relates to transactions between Vitol Inc. and other parties occurring wholly outside of and with no nexus to Florida of which Vitol Inc. is aware. *See* Evans Decl. ¶ 23.  Further, the only blocked property over which Vitol Inc. currently has possession, custody or control is the Blocked Trade Debt held on Vitol Inc.'s books and records located in Houston, Texas. *See id.* at ¶¶ 21-22, 24.  As similarly attested to in the Evans Declaration, the LDC Blocked Account likewise relates to transactions between Vitol Inc. and LDC occurring wholly outside of and with no nexus to Florida, and is currently maintained by JPMC in an account located in New York. *See id.* at ¶¶ 27-32.  Although Vitol Inc. did initially understand that the funds currently maintained in the LDC Blocked Account in New York were being transferred to a JPMC branch located in Tampa, Florida, Vitol Inc. had neither visibility into nor discretion over where the funds were to be deposited or maintained. *See id.* at ¶ 31.  When Vitol Inc. determined that it was obligated under applicable sanctions to make any payment to LDC pursuant to GL 12 into a blocked account for the benefit of LDC, it instructed JPMC to do so without reference to the ultimate location of the account that would hold those funds. *See id.* at ¶¶ 29, 31.  Vitol Inc. had no discretion over where the account would be maintained. *See id.* at ¶ 31.  Further, this payment had no relation to any business activity or other contact Vitol Inc. may have had with Florida. *See id.* at ¶ 32.  Vitol Inc. has no awareness as to whether these funds were

ever actually transferred to or through an account located in Florida; the only person that could answer that question is JPMC, the proper garnishee of the LDC Blocked Account. *See id.* at ¶ 31.

More importantly, any cause of action the Osio Plaintiffs may assert as to the LDC Blocked Account would not in any way arise out of Vitol Inc.'s payment into the JPMC account—if such payment actually did occur in or through Florida—or any other alleged jurisdictional contact Vitol Inc. may have with Florida, particularly given that the account is currently maintained in New York and any transfer of funds to New York would have occurred without Vitol Inc.'s awareness or involvement.

Because the Osio Plaintiffs cannot "demonstrate a 'direct affiliation, nexus, or substantial connection'" between Vitol Inc.'s involvement with the State of Florida and any potential cause of action as to the Blocked Trade Debt or the LDC Blocked Account, "specific jurisdiction is not proper." *Hinkle*, 775 Fed. Appx. at 550.

        3.       **NON-PARTY GARNISHEE VITOL INC. DID NOT PURPOSEFULLY AVAIL ITSELF OF FLORIDA PRIVILEGES IN CONNECTION WITH THE LDC BLOCKED ACCOUNT**

Even if the Court determines that Vitol Inc.'s payment of the blocked LDC funds into the JPMC account did have a nexus to Florida and is sufficient contact with Florida to satisfy the long-arm statute, the lack of discretion on Vitol Inc.'s part over where the payment was to be made implicates the second phase of the Court's specific jurisdiction analysis: whether application of the long-arm statute comports with due process. Core to that analysis is a determination as to whether Vitol Inc. purposefully availed itself of the benefits of Florida. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021). In the case of the LDC Blocked Account, Vitol Inc. did not.

First, as this is not an action sounding in tort, the traditional purposeful availment test applies, whereby the Court must assess whether a party's contacts with the state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013).  In order to satisfy this test, the party must have performed some deliberate affirmative act promoting business with the state that is "the defendant's own choice and not random, isolated, or fortuitous." *Ford Motor Co.*, 592 U.S. at 359 (internal quotations omitted).  A non-resident making a non-discretionary payment into a state at the direction of another party is not the type of deliberate creation of a substantial connection with the state necessary to support the exercise of personal jurisdiction. *See Morris Flancbaum v. Tyson Grp., Inc.*, No. 21-CV-81270, 2021 WL 9563812, at *3 (S.D. Fla. Dec. 9, 2021) (finding the exercise of personal jurisdiction under the Florida long-arm statute would not comport with due process where the non-resident defendant's only contacts with Florida were entry into a contract with Florida residents, disbursing funds to a Florida bank in connection with it, and sending representatives to the state for meetings); *see also Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 993-94 (11th Cir. 1986).

In summary, the Osio Plaintiffs cannot establish the connexity between Vitol Inc.'s limited contacts with Florida and the purpose of this garnishment action necessary to support an assertion of specific jurisdiction. *See generally Casa Express Corp. v. Bolivarian Repub. Of Venezuela*, No. 21-CV-23103, 2024 WL 1756363, at *9 (S.D. Fla. Apr. 24, 2024)

### D. THE BURDEN IS ON THE OSIO PLAINTIFFS TO PRESENT EVIDENCE SUPPORTING THE ASSERTION OF PERSONAL JURISDICTION AS TO NON-PARTY GARNISHEE VITOL INC.

Because Vitol Inc. has made both a facial and a factual attack challenging the assertion of personal jurisdiction in this case, as supported by a sworn declaration, the burden now shifts to the Osio Plaintiffs to produce evidence supporting jurisdiction beyond "merely rearticulating [their] allegations." *See Frida Kahlo Corp. v. Pinedo*, No. 18-21826-CIV, 2021 WL 4147876, at *2 (S.D. Fla. Sept. 13, 2021). "Once the defendant has presented sufficient evidence, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" *Id.* at *3 (quoting *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009)); *see also Wholesale Direct 2 You v. Switchmate Home, LLC*, No. 23-62273-CIV, 2024 WL 3757274, at *4-7 (S.D. Fla. June 12, 2024) (finding that plaintiffs failed to meet their evidentiary burdens in response to evidence submitted by defendants).

### II. ALTERNATIVELY, THE WRIT MUST BE DISMISSED AND/OR DISSOLVED TO THE EXTENT IT SEEKS ATTACHMENT OF CONTINGENT PROPERTY INTERESTS; PROPERTY OVER WHICH NON-PARTY GARNISHEE VITOL INC. HAS NO POSSESSION, CUSTODY OR CONTROL; OR PROPERTY RELATING TO AN ENTITY FOR WHICH THERE HAS BEEN NO TRIA-RELATED FINDING OF AGENCY OR INSTRUMENTALITY

### A. THE ONLY BLOCKED PROPERTY IN NON-PARTY GARNISHEE VITOL INC.'S POSSESSION, CUSTODY OR CONTROL IS CONTINGENT AND UNCOLLECTIBLE, AND THEREFORE NOT PROPERLY GARNISHABLE

The Florida garnishment statute, Fla. Stat. § 77.01, allows for garnishment of "any debt due to defendant by a third person." Florida courts have consistently interpreted this to mean that in order for a debt to be subject to garnishment, it "must be due absolute and without contingency." *Tomlin v. Anderson*, 413 So. 2d 79, 82 (Fla. 5th DCA 1982). "'If there is anything contingent or to be done by a person before the liability of another becomes fixed, there is not such an 'indebtedness due' as contemplated by the statute to which a writ of garnishment can apply.'" *Id.*

(quoting *West Florida Grocery Co. v. Teutonia Fire Insurance Co.*, 77 So. 209, 225-26 (Fla. 1917)).

In this case, the only blocked property in Vitol Inc.'s possession, custody or control is the Blocked Trade Debt, which consists entirely of unresolved and unliquidated trade debts held on Vitol Inc.'s books and records as blocked property interests. *See* Evans Decl. ¶ 21-22, 24. Vitol Inc. was required to do so pursuant to the expansive scope of the Venezuela Sanctions Regulations (31 C.F.R. Part 591) and related Executive Orders, as interpreted by OFAC. *See id.* at ¶ 24. These debts relate to contingent liabilities that Vitol Inc. and contractual counterparties were still negotiating the validity and value of at the time sanctions were imposed. *See id.* Those sanctions prohibited further negotiations amongst the parties and further dealings in the property interests, including actions internal to Vitol Inc. to net or write off blocked debt once it became uncollectible. *See id.* Because of the contingent nature of these property interests, they are not garnishable under Florida law.

Further, a garnishee in defending a garnishment suit can raise "any defenses he has or would have against the principal debtor." *Tomlin*, 413 So. 2d at 82. This is because in a garnishment, the judgment creditor steps into the shoes of the judgment debtor and can recover only what the debtor itself could recover from the garnishee. *Hattaway v. McMillian*, 859 F. Supp 560, 564 (N.D. Fla. 1994); *see also* Fla. Stat. § 77.083 ("No judgment…in excess of the amount of the liability of the garnishee to the defendant…shall be entered against the garnishee").

Any claims a blocked counterparty could theoretically make on the Vitol Inc. blocked trade debts—if they were not contingent—are now well outside the four-year statute of limitations applicable to breach of contract and collection of debt under Texas law. *See* Tex. Civ. Prac. & Rem. Code § 16.004 (applying a four-year limitations period to relevant causes of action, including

Case 1:21-cv-20706-DPG   Document 555   Entered on FLSD Docket 06/20/2025   Page 21 of 23

those for collection of a debt, running from the time the cause of action first accrues). As set forth in the Evans Declaration, the Blocked Trade Debt has been subject to blocking since no later than February 2020. Evans Decl. ¶ 26. More than four years has passed since these property interests became subject to blocking, and therefore under Texas law the debts are uncollectible. Because these debts are uncollectible as to the putative Judgment Debtors or their agents or instrumentalities, they are not subject to garnishment in this action.

The contingent and uncollectible nature of the Blocked Trade Debt maintained on Vitol Inc.'s books and records takes the debt outside the reach of garnishment under Florida law, and the Writ should accordingly be dismissed or dissolved.

## B. THE LDC BLOCKED ACCOUNT IS NOT PROPERLY GARNISHABLE VIA NON-PARTY GARNISHEE VITOL INC.

To the extent the Osio Plaintiffs seek to attach the LDC Blocked Account, the Writ must be dissolved because Vitol Inc. has no possession, custody or control of that blocked property. Vitol Inc. transferred funds into the LDC Blocked Account pursuant to GL 12 and considered the deposit of these funds to be payment to LDC on an outstanding receivable to which LDC would have immediate access if and when the applicable sanctions were lifted or LDC was able to obtain an unblocking license from OFAC. *See* Evans Decl. at ¶¶ 33-34. The LDC Blocked Account is a blocked, segregated "For the Benefit Of" or "FBO" account for which LDC is the sole beneficiary. *See id.* at ¶¶ 28, 34. Thus, when Vitol Inc. deposited funds in the LDC Blocked Account, it relinquished any legal interest it had in the funds, and LDC took legal possession of the account. *See id.* at ¶ 34. Because Vitol Inc. has no legal right to the funds in the LDC Blocked Account, it is not a proper garnishee, and the Writ must be dismissed or dissolved.

**C.   THE WRIT CAN ONLY EXTEND TO ENTITIES FOR WHICH THERE IS AN AGENCY OR INSTRUMENTALITY FINDING**

To the extent the Osio Plaintiffs seek to attach blocked property related to an entity for which there has been no finding of agency or instrumentality, as required under TRIA § 201 to make blocked property reachable via garnishment, the Writ is defective and should be dismissed or dissolved.  Vitol Inc. is not aware of, and the Osio Plaintiffs have made no showing as to, any agency or instrumentality beyond that reflected in the Motion.  (*See* D.E. 401 at pp. 20-21).

## <u>CONCLUSION</u>

For the foregoing reasons and authorities, the Court should dismiss and/or dissolve the Writ, and grant any further relief the Court deems just and proper.  Vitol Inc. reserves any and all other defenses it may have to the Writ, which may be asserted via answer or other responsive pleading at a later date.

Dated: June 20, 2025                    Respectfully submitted,

                                        **MCGUIREWOODS LLP**

                                        By: *<u>/s/ Sara F. Holladay</u>*
                                        Sara F. Holladay
                                        Florida Bar No. 0026225
                                        Bank of America Tower
                                        50 North Laura Street, Suite 3300
                                        Jacksonville, FL 32202
                                        T +1 904 798 2662
                                        F +1 904 360 6317
                                        <u>sholladay@mcguirewoods.com</u>
                                        <u>flservice@mcguirewoods.com</u>

                                        Alex J. Brackett (*pro hac* forthcoming)
                                        Virginia Bar No. 67981
                                        Gateway Plaza
                                        800 East Canal Street Richmond, VA 23219
                                        T: +1 804 775 4749
                                        F: +1 804 698 2089
                                        <u>abrackett@mcguirewoods.com</u>
                                        *Counsel for Non-Party Garnishee Vitol Inc.*

## **CERTIFICATE OF SERVICE**

        I hereby certify that a true and correct copy of the foregoing document has been filed via ECF on this 20th day of June, 2025, which will automatically serve the same on the following counsel of record:

        Alex C. Lakatos
        alakatos@mayerbrown.com
        Cloe M. Anderson
        cmanderson@mayerbrown.com
        Jonathan S. Klein
        jklein@mayerbrown.com
        Stephen M. Medlock
        smedlock@mayerbrown.com
        MAYER BROWN LLP
        1999 K Street NW
        Washington, D.C. 20006

        Jaime D. Guttman
        jaime@scale.law
        Scale Law Partners, LLC,
        777 Brickell Avenue
        Suite 500
        Miami, Florida 33131

        *Attorneys for Plaintiffs*

                                        */s/ Sara F. Holladay*
                                        Sara F. Holladay

17