UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20706-GAYLES/TORRES

MEUDY ALBÁN OSIO, et al.,

    *Plaintiffs,*

v.

NICOLAS MADURO MOROS, et al.,

    *Defendants.*
_____/

**ORDER ON MOTION FOR WRITS OF GARNISHMENT *NUNC PRO TUNC***

This cause comes before the Court on Plaintiffs' *ex parte* Motion for Writs of Garnishment, [D.E. 537] and Plaintiffs' Motion for an Expedited Ruling. [D.E. 616]. Petroleos de Venezula, S.A. ("PDVSA") and JPMorgan Chase Bank, N.A. filed responses to the Motion for Expedited Ruling [D.E. 647, 651], to which Plaintiffs replied. [D.E. 663, 664]. The motions, therefore, are ripe for disposition. After careful review of the briefing and relevant authorities, and for the reasons set forth below, Plaintiffs' Motions are **GRANTED in part** and **DENIED in part**.[1]

---

[1] On November 8, 2024, the Honorable Darrin P. Gayles referred all post-judgment matters to the Undersigned Magistrate Judge for disposition. [D.E. 233].

1

## I.   BACKGROUND

This lawsuit stems from Defendants' kidnapping, torture, and murder of Plaintiffs' decedent, Fernando Alberto Alban. On August 4, 2023, final default judgment was entered in Plaintiffs' favor on all eight counts of their complaint [D.E. 1] for a total judgment of $217,000,000.00 which has yet to be satisfied.

Plaintiffs' pending motion, therefore, seeks writs of garnishment pursuant to Florida law and the Terrorism Risk Insurance Act ("TRIA") as to funds ("the Blocked Funds") that ostensibly belong to PetroCedeño, S.A. ("PetroCedeño")—an alleged agency or instrumentality of Defendants. The Garnishees of the Blocked Funds, according to Plaintiffs, are Valero Energy Corporation, Valero Marketing & Supply Company, and JPMorgan Chase Bank, N.A.

## II.   ANALYSIS

First, we will determine whether Plaintiffs satisfy Florida law's garnishment requirements, before assessing whether the subject funds may properly be garnished under the TRIA. Then, we will determine whether Plaintiffs' writ should be backdated.

### A. *Florida Law*

Under Federal Rule of Civil Procedure 69(a)(1), "[t]he procedure on execution … must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Consequently, here, Florida law governs the writ of garnishment process and the TRIA governs whether the Court may issue a writ of garnishment upon property that Office of Foreign Asset Control ("OFAC") has

blocked. *See Marron v. Moros*, No. 21-23190-CIV, 2023 WL 6356969, at *4 (S.D. Fla. Sept. 29, 2023) ("This means that Florida law provides the rules of procedure governing execution, and TRIA provides the substantive provisions that allow for executing on assets that OFAC has blocked.").

In Florida, "[e]very person or entity who has sued to recover a debt or has recovered judgment in any court against any person or entity has a right to a writ of garnishment …." Fla. Stat. § 77.01. The primary requirement under Florida law, at this stage of the proceedings, is that the judgment debtor "file a motion … stating the amount of the judgment." § 77.03. The remainder of Florida's requirements are imposed after the garnishment process begins. *See, e.g.,* §§ 77.04; 77.041(2); 77.055.

Here, because Plaintiffs have filed a motion for writs of garnishment that specifies the amount of Plaintiffs' judgment, Florida law's requirements are satisfied.

### B. *TRIA Requirements*

Next, we will assess whether these writs may issue under the TRIA. Under Section 201(a) of the TRIA, victims of international terrorism are permitted to execute upon "the blocked property not only of the defendant terrorist/judgment debtor, but also the defendant's agency or instrumentality." *Marron*, 2023 WL 6356969, at *8. Indeed, "[a]s relevant here, § 201(a) of the [TRIA], codified as a note to 28 U.S.C. § 1610, provides that '[n]otwithstanding any other provision of law ... the blocked assets of [a] terrorist party [against which a judgment is obtained] (including the blocked assets of any agency or instrumentality of that terrorist party) shall be

3

subject to execution or attachment.'" *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1346 (11th Cir. 2022) (*Stansell V*).

There are four requirements "to execute on or attach the assets of a third party who is alleged to be an agency or instrumentality of a terrorist party." *Id*. at 1347. First, the movant must prove that "he obtained a judgment against a terrorist party for a claim based on an act of terrorism." *Id*. Second, the movant must prove "the amount sought to be executed … does not exceed the compensatory damages awarded to the movant." *Id*. Third, the third party's asset must be "blocked." *Id*. Lastly, the third party must be "an agency or instrumentality of the terrorist party." *Id*. (citing *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713 (11th Cir. 2014) (*Stansell II*)).

We will address in turn the four requirements.

### *1. Judgment Obtained*

First, we must determine whether Plaintiffs obtained a judgment against a terrorist party for an act of terrorism. *Id*. Specifically, Plaintiffs must demonstrate that Defendants are a "terrorist organization" who committed "terrorist activity" under 8 U.S.C. § 1182(a)(3)(B)(iii). Terrorist activity includes "assassination" and/or "the use of any … weapon or dangerous device … with intent to endanger … the safety of one or more individuals." § 1182(a)(3)(B)(iii)(V)(b).

Here, as the Court found in its since-adopted Report and Recommendation on Plaintiffs' summary judgment motion, the Defendant-cartel is a group of two or more persons; is responsible for killing Mr. Alban; and is responsible for using weapons or

4

dangerous devices in the torture of Mr. Alban. Thus, under TRIA § 201, Defendants are a "terrorist organization" who engaged in "terrorist activity." Additionally, it cannot be disputed that Plaintiffs obtained a judgment based on these terrorist acts. [D.E. 59]. Thus, the first requirement is met.

### 2. Amount Sought

Here, Plaintiffs' compensatory damage award is $216,000,000.00, and Plaintiffs represent that the entire principal remains outstanding. The total amount of the Blocked Funds, meanwhile, is $166,818,471.76. This requirement is therefore satisfied.

### 3. Blocked Assets

Whether an asset is blocked "can be definitively established by the fact that OFAC has taken action against the alleged agency or instrumentality under TWEA or the IEEPA." *Stansell II*, 771 F.3d at 726. Here, Plaintiffs rely on Executive Order 13884, which blocked "all property and interest in property of the Government of Venezuela," which includes PDVSA. *See* Exec. Order No. 13884, 84 FR 38843 (2019).[2] Because the subject funds purportedly belong to PetroCedeño, and because PetroCedeño is purportedly a subsidiary of Petroleos de Venezuela, S.A. ("PDVSA"), Plaintiffs have made a sufficient showing that the sought after account is blocked for purposes of the TRIA.

---

[2] https://www.federalregister.gov/documents/2019/08/07/2019-17052/blocking-property-of-the-government-of-venezuela

### *4. Agency or Instrumentality*

Lastly, we must determine whether Plaintiffs have made at least a "factual proffer" that PetroCedeño, S.A. is an agency or instrumentality of Defendants. In the Eleventh Circuit, "[a] third party who provides material support to a terrorist at any point in time constitutes an agency or instrumentality, even if they purportedly stopped aiding the terrorist." *Marron*, 2023 WL 6356969, at *13 (citing *Stansell V*, 45 F.4th at 1350). Further, "[t]he Eleventh Circuit endorsed a broad definition of agency, which includes any party that provides material support to a terrorist party, whether financial (e.g. money laundering), technological, or the provision of goods or services." *Id.* (citing *Stansell II*, 771 F.3d at 724, n.6).

Here, Plaintiffs argue that PetroCedeño "has been central, and today remains central, to Maduro's money laundering apparatus and has been at the forefront of criminal conduct designed to enrich Maduro and the other Judgment Debtors." [D.E. 537 at 6]. In support, Plaintiffs rely largely on the affidavit of Douglas C. Farah, a recognized Subject Matter Expert for the Department of Defense on the illegal conduct of Mr. Maduro and the Defendant-cartel among other relevant matters. Plaintiffs aver, with support from Mr. Farah, that PetroCedeño's former head of procurement "received millions of dollars in bribes in exchange for assisting certain contractors …to gain improper advantages." [*Id.* at 7]. PetroCedeño's general counsel, meanwhile, also purportedly "received millions of dollars in bribes in exchange for directing contracts … in accordance with instructions from senior PDVSA officials."

6

[*Id.*]. Those contractors, who were chosen as a result of the bribes after being hand picked by PDVSA, were used to carry out Maduro's orders to his benefit.

Plaintiffs further represent that PetroCedeño's current president "is a career PDVSA official and regime loyalist," [*id.* at 9], and that "Maduro's choices for PDVSA and its subsidiaries including PetroCedeño are part of a pattern of regime corruption that reinforces the conclusion that … PetroCedeño … operates to support Maduro's illegitimate criminal operations and authoritarian control of Venezuela." [*Id.* at 10].

In light of the facts and evidence presented, we find that—for the purposes of issuing a writ of garnishment—Plaintiffs have satisfied the fourth requirement of making a "factual proffer" that PetroCedeño's assets are collectible under the TRIA. *See Stansell II*, 771 F.3d at 729 (finding that, at the writ issuance stage, a district court must determine "that the property owner is … an agency or instrumentality of the judgment debtor terrorist party," and the "district court did that here, after Plaintiffs made factual proffers on those issues").

To be clear, we do not squarely hold that PetroCedeño is an agency or instrumentality of Defendants under the TRIA. That concrete finding can be made only after PetroCedeño has had an opportunity to be heard on this issue, and can contest Plaintiffs' evidence at the turnover stage in the Southern District of New York (to where JPMorgan's interpleader proceedings on the Blocked Funds have been transferred). But, for the purposes of this preliminary proceeding to simply issue a writ of garnishment, we find Plaintiffs have satisfied their burden of making a factual

proffer that PetroCedeño is an agency or instrumentality under the TRIA. This fourth requirement, then, is also satisfied.

Consequently, Plaintiffs' Motion is granted to the extent that it seeks writs of garnishment, in accordance with the information provided in exhibits 3, 4, and 5 to this Motion. [D.E. 537].

### C. *Backdating Writ*

Next, Plaintiffs argue that this writ should be backdated to September 23, 2024. On that date, Plaintiffs initially served writs of garnishment for the Blocked Funds, but those were later vacated by this Court for Plaintiffs' failure to make a factual proffer that PetroCedeño is an agency or instrumentality of Defendants. *See* [D.E. 401] (adopted in relevant part by [D.E. 583]). Plaintiffs, now having made the proper showing to procure the writ, argue that to secure their priority against competing creditors, this writ should be issues nunc pro tunc.

But Plaintiffs provide no authority to permit the Court to backdate a writ of garnishment where the initial writ of garnishment was dissolved. Plaintiffs' only meaningful authority is *Tempur-Pedic N. Am., LLC v. SOS Furniture Co.*, No. 20-MC-22441-KMM, 2021 WL 2689388 (S.D. Fla. Mar. 8, 2021), *report and recommendation adopted*, 2021 WL 2682273 (S.D. Fla. June 29, 2021). There, the plaintiff, Tempur-Pedic, sought to determine which of several garnishers had priority in a garnishment proceeding. Temur-Pedic obtained its writ in October 2020, and London Investments (another creditor) procured a writ in July of 2020, and then an

8

amended writ in November 2020 to cure Florida-law procedural deficiencies that plagued its July 2020 writ.

Tempur-Pedic argued that those procedural deficiencies automatically voided London Investments' July 2020 writ, and therefore the proper priority date for London Investments' writ was November 2020—not July 2020. London Investments, meanwhile, argued that their July 2020 writ was never actually voided or dissolved; it remained intact, and therefore London Investments' writ for priority purposes should have been July 2020.

The Court agreed with London Investments. It reasoned that Tempur-Pedic failed to "adduce[ ] any evidence that London's writ was in fact dissolved" or voided, and that London Investments cured its procedural, non-substantive deficiencies without its July 2020 writ ever being voided or dissolved. *Id.* at *5. Consequently, because "London's July 2020 writ [was] presumptively valid absent proof" that the writ was voided or dissolved, the court rejected Tempur-Pedic's argument. *Id.*

Here, conversely, Plaintiffs' initial writ *was dissolved*. This Court recommended that the writs "should be dissolved," [D.E. 401 at 24] in a report and recommendation that Judge Gayles adopted in relevant part. [D.E. 583]. Indeed, Plaintiffs even concede in their briefing that their initial writ "remains dissolved." [D.E. 664 at 2]. There is no dispute, then, that Plaintiffs' initial writ—unlike the writ in *Tempur-Pedic*—was in fact dissolved. Accordingly, the facts in *Tempur-Pedic* are not only different than Plaintiffs' posture, but directly undermine the relief that Plaintiffs seek. There, the court held that because the earlier writ was *not* dissolved

9

or voided, the amended writ could be backdated to the earlier writ. Clearly, that holding does not help Plaintiffs here, because their earlier writ was in fact dissolved/voided.

Other than *Tempur-Pedic*, Plaintiffs tellingly provide no support that the Court has authority to backdate Plaintiffs' writs. Courts must ordinarily be precise about what they do and when they do it. Backdating any document runs counter to that principle. The Court, therefore, lacks the ability to retroactively issue the instant writs or otherwise leapfrog Plaintiffs' priority amongst other creditors. Accordingly, to the extent that Plaintiffs' Motion seeks to backdate the pending writ to the date of its initial writ, Plaintiffs' Motion is denied.

### III.   CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Writ of Garnishment [D.E. 537] is **GRANTED in part** and **DENIED in part**. The Clerk of Court shall issue the requested writs of garnishment, in the manner provided by Plaintiffs' Exhibits 3, 4, and 5 to the pending Motion. But to the extent Plaintiffs seek to backdate those writs, their Motion is denied.

**DONE and ORDERED** in Chambers at Miami, Florida this 4th day of September, 2025.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge