**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:21-CV-20706-DPG**

MEUDY ALBÁN OSIO, *et al.*,

Judgment Creditors / Plaintiffs,

v.

NICOLAS MADURO MOROS, *et al.*,

Judgment Debtors / Defendants.

---

**DEUTSCHE BANK TRUST COMPANY AMERICAS' ANSWER TO WRIT OF GARNISHMENT**

Deutsche Bank Trust Company Americas ("DBTCA") answers the September 17, 2026, Writ of Garnishment (the "Writ") [D.E. 986] as follows:

**Background**

1. Plaintiffs served the Writ on DBTCA on September 17, 2026, which they obtained as part of their efforts to enforce the default judgment they obtained against defendants Nicolas Maduro Moros ("Maduro") and others (together, the "Judgment Debtors") under the Anti-Terrorism Act, 18 U.S.C. § 2333 (the "Osio Judgment"). *See* D.E. 91. The Osio Judgment was entered by the Court on August 7, 2023. D.E. 91.

2. DBTCA, which is not a party to any of the underlying proceedings or a competing claimant, answers the Writ to the best of its current knowledge and belief and states:

3. DBTCA is a financial institution holding funds in four accounts in New York, nos. ****335, ****343, ****327, and ****995 (the "DBTCA Blocked Accounts"), that DBTCA has blocked under Executive Order 13692 and the sanctions regulations administered by the U.S.

Department of the Treasury's Office of Foreign Assets Control ("OFAC"), based on the potential interest of China National Electronics Import and Export Corporation ("CEIEC").

4. There are four wire transfers underlying the DBTCA Blocked Accounts.

5. The first transfer was initiated by Astro Clean Technology Corporation at the originating bank of Taiwan Business Bank, in the amount of USD $8,577.08.

6. The second transfer was initiated by ALNISF Electrical Company at the originating bank of the National Bank of Kuwait, in the amount of USD $10,878.00.

7. The third transfer was initiated by The Commander of the Air Force, Sri Lanka Air Force at the originating bank of the People's Bank Co., in the amount of USD $6,263.36.

8. The beneficiaries of the three above wire transfers were China National Electronics Import and Export Corporation or, for the transfer involving ALNISF, China National Electronics Imp and Exp Ningbo Co LTD at accounts at Bank of China.

9. One wire transfer underlying the DBTCA Blocked Accounts was initiated by CEIEC through the originating bank, Bank of China, in the amount of USD $12,880.14. The beneficiary of this transfer was Camilo Lelis and Lamarca Consulting LDA at Banco BPI.

10. DBTCA does not have a contractual or other relationship with CEIEC with respect to these funds and is not a competing claimant for the funds.

11. OFAC administers the sanctions regulations that are the basis for blocking these accounts. DBTCA can unblock the DBTCA Blocked Accounts and release the funds only if and when it is legally authorized to do so consistent with OFAC regulations, state garnishment laws, and the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107297, codified as a note to 28 U.S.C. § 1610.

12. DBTCA understands that this Court issued the Writ subject to post-judgment collection proceedings sought under Section 201 of the TRIA, which entitles the Plaintiffs to recover blocked assets of any agency or instrumentality of terrorists, terrorist organizations, and state sponsors of terrorism. However, DBTCA is not privy to Plaintiffs' motion seeking the Writ and therefore does not currently know on what basis Plaintiffs obtained the Writ.

**Answer to the Writ**

13. Based on a review of readily available information, DBTCA answers to the best of its information and belief as follows:

14. At the time of this Answer, at the time of the service of the Writ, and at all times between those dates, DBTCA has held assets in the DBTCA Blocked Accounts in New York, subject to the restrictions of OFAC sanctions regulations. As of October 1, 2026, the DBTCA Blocked Accounts contained total assets in the amount of approximately $42,365.90.[1]

15. At the time of the service of the Writ in this action or at the time of this Answer, or at any time between those dates, aside from the balance in the DBTCA Blocked Accounts, DBTCA did not have in its possession or control any deposit, account, or tangible or intangible personal property of CEIEC.

16. DBTCA does not know of anyone indebted to CEIEC or of anyone who may have any of CEIEC's property in its possession or control. To the extent that any property is held outside the territorial limits of the United States or in which the transactions were effectuated outside the territorial limits of the United States, such transactions may be subject to the General Data Protection Regulation ("GDPR") and other foreign privacy statutes.

[1] The exact balance in the DBTCA Blocked Accounts changes over time as a result of being held in interest-bearing accounts in accordance with OFAC requirements.

17. At the time of the Answer, the following entities may have an interest in the DBTCA Blocked Accounts:

a) OFAC, c/o Chief Counsel, Office of Foreign Assets Control, U.S. Department of the Treasury, Treasury Annex, 1500 Pennsylvania Avenue NW, Washington DC, 20220;

b) Bank of China, Head Office No. 1 Fu Xing Meng Nei Da Jie, Beijing 100818 China

c) Bank of China, Number 2 Chao Yang Men Nei Da Jie, Dong Cheng District, Beijing 100010 China

d) CEIEC, No. 17 Fuxing Road, China/Beijing Haidian 100036

e) CEIEC, Calle Orinoco, Torre Nordic, Piso 6, Las Mercedes, Caracas, 1060, Venezuela

f) China National Electronics Import and Export Corporation, New Circle Building No 17, Beijing 100036 China

g) China National Electronics Import and Export Corporation, New CEIEC Building, No. 17 Fuxing Road, Haidian District, Beijing China

h) China National Electronics Imp and Exp Ningbo Co Ltd, 25-26F International Convention and Exhibition Centre No 168 China

i) Banco BPI, Largo Jean Monnet NR. 1-8th Floor 1269-067 Lisbon, Portugal

j) Camilo Lelis and Lamarca Consulting LDA, Rua Joao De Ruao N 12 1 Piso Escr, PT/Coimbra

k) The Commander of the Air Force, Sri Lanka Air Force, 140 Sir Chittampalam A Gardiner MW, Colombo 02 Sri Lanka

l) Peoples Bank Co Foreign Branch, Mich Building Bristol Street, Colombo 1 Sri Lanka

m) ALNISF Electrical Company, ID No: 67303, Street: NA, Blk: 6, Area: Kublah Kuwait

n) National Bank of Kuwait, PO Box 95 MNGR Banking Division, SAFAT 13001 Kuwait

o) Astro Clean Technology Corporation, 1,2F., No. 51, Lane 780, Boai St., Chupei City, Hsinchu Hsien, 302 Taiwan

p) Taiwan Business Bank 30 Tacheng Street, P.O.B. 109, Taipei, Taiwan

18. As of the date of this filing, DBTCA does not know if OFAC objects to the release of the DBTCA Blocked Accounts' funds to the Plaintiffs in response to the Writ. Similarly, DBTCA is not aware that there has been a determination by any authority that Maduro or the Judgment Debtors have a direct or indirect interest in the DBTCA Blocked Accounts.

19. DBTCA is not a party to the underlying proceedings and makes no claim to the funds in the DBTCA Blocked Accounts. As a disinterested stakeholder, DBTCA does not seek to impede any particular party's recovery of the funds in the DBTCA Blocked Accounts. But any directive to DBTCA to turn over the funds must be in accordance with governing law and proper procedures.

20. To the extent that the Court determines that DBTCA is required to turn over the funds in the DBTCA Blocked Accounts without an OFAC license, and upon a judicial determination that the funds in the DBTCA Blocked Accounts must be turned over to the Plaintiffs subject to the TRIA, DBTCA requests that any order compelling the turnover of the garnished funds in the DBTCA Blocked Accounts include a specific determination that the funds

reported in this Answer have been identified as blocked assets, that Plaintiffs are entitled to the funds as a result of the Osio Judgment they obtained against the Judgment Debtors, that the funds must be turned over by DBTCA to the Plaintiffs subject to the TRIA, and that no OFAC license is required to turn over the garnished funds to the Plaintiffs.

21. DBTCA further requests that, upon compliance with any order requiring DBTCA to turn over the funds in the DBTCA Blocked Accounts in accordance with the TRIA, that the Court enter an Order releasing and discharging DBTCA from any and all liability under the Writ for full compliance with the Writ.

22. DBTCA is obligated to pay its undersigned attorneys a reasonable fee and requests the Court to award DBTCA reasonable attorney's fees for expenses incurred by it in obtaining legal representation in this action in accordance with applicable law. DBTCA has engaged Clifford Chance US LLP and King & Spalding LLP to represent it in these garnishment proceedings. DBTCA demands the statutory partial deposit from the Clerk of the Court to be payable to Clifford Chance US LLP as compensation to be applied toward DBTCA's reasonable attorney's fees. DBTCA also seeks the award of the remainder of its fees pursuant to Fla. Stat. § 77.28.

**FIRST AFFIRMATIVE DEFENSE**

23. Relief should be denied in the event that Plaintiffs have failed to state a claim to the DBTCA Blocked Accounts, in whole or in part. Neither Plaintiffs nor any other parties can execute on the DBTCA Blocked Accounts under TRIA § 201(a) without first meeting their burden of proof as to all of the requirements for turnover under § 201(a), and without violating any applicable provisions of the Foreign Sovereign Immunities Act (the "FSIA") or the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations. Those requirements for execution under TRIA § 201(a) include, but are not limited to, that the Plaintiffs

prove that they "obtained a judgment against a terrorist party for a claim based on an act of terrorism"; that the assets of the entity whose assets are allegedly subject to execution are "blocked"; and that that entity is "an agency or instrumentality of the terrorist party." *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1346 (11th Cir. 2022). DBTCA understands that whether CEIEC or any of its subsidiaries is an "agency or instrumentality" of any of the Judgment Debtors, and whether Plaintiffs may issue Writs for its assets, is an open question.

24. Though one of the beneficiaries, China National Electronics Imp and Exp Ningbo Co Ltd, may be affiliated with CEIEC, DBTCA lacks sufficient information to determine whether the corporate relationship between CEIEC and China National Electronics Imp and Exp Ningbo Co Ltd is sufficient to render property associated with China National Electronics Imp and Exp Ningbo Co Ltd subject to execution or garnishment as property of CEIEC. To the extent Plaintiffs contend that such property is subject to the Writ, Plaintiffs must establish the factual and legal basis for treating such property as property of CEIEC.

25. DBTCA also understands that one of the wire transfers may involve a foreign governmental military entity. To the extent Plaintiffs contend that such property is subject to the Writ, Plaintiffs must establish that any property associated with that transfer is properly subject to execution and turnover, notwithstanding any ownership, notice, jurisdictional, or immunity issues.

26. Any turnover of some or all of the funds in the DBTCA Blocked Accounts must also conform with garnishment principles under Florida law or New York law. The funds in the DBTCA Blocked Accounts, having been blocked in accordance with OFAC sanctions regulations, cannot be transferred to Plaintiffs or anyone else except pursuant to either a license

issued by OFAC that permits such a transfer, or a final judgment under TRIA § 201(a) (or FSIA § 1610(g)) following a judicial determination that Plaintiffs, or any other party with a claim to the DBTCA Blocked Accounts, have met their burden of proof on all elements of a claim under § 201(a) and that no OFAC license requirement shall apply.

**SECOND AFFIRMATIVE DEFENSE**

27. One element of a claim under TRIA § 201(a) is that the blocked asset on which a judgment creditor seeks to execute is the property of the judgment debtors – here, Maduro and the Judgment Debtors – or of an agency or instrumentality of the judgment debtors. DBTCA understands that there has not been a final determination in this matter that CEIEC or any of its subsidiaries, including China National Electronics Imp and Exp Ningbo Co Ltd, is an agency or instrumentality of any Judgment Debtor. A prima facie showing that CEIEC is an agency or instrumentality of a Judgment Debtor does not amount to a finding on the merits. *See* D.E. 974 at 1–2. Even if CEIEC or any of its subsidiaries were an agency or instrumentality of one or more Judgment Debtor, Plaintiffs cannot execute on the DBTCA Blocked Accounts unless they establish that the DBTCA Blocked Accounts are in fact the property of CEIEC.

**THIRD AFFIRMATIVE DEFENSE**

28. The situs of the DBTCA Blocked Accounts is in New York, and New York law may properly govern the garnishment of these funds. Under New York law, CEIEC may not have a property interest in the funds in the DBTCA Blocked Accounts. Even if Florida law should apply, under the recently amended Fla. Stat. § 772.13, it would need to be determined that CEIEC was the originator or "intended beneficiary" of the blocked funds, which is a prerequisite in order to deem the funds to be owned by it and subject to execution and garnishment. The Court must have *in rem* jurisdiction over the DBTCA Blocked Accounts.

**FOURTH AFFIRMATIVE DEFENSE**

29. Since the time they obtained a default judgment against Maduro and the Judgment Debtors, and by the time of any potential turnover, Plaintiffs may have recovered substantial sums of money enforcing the judgment. Because Plaintiffs cannot recover more than the compensatory damages component of their judgment, Plaintiffs must show, before any of the funds in the DBTCA Blocked Accounts may be turned over to them, that any such turnover does not result in their recovering more money than they are entitled to under their judgment.

**FIFTH AFFIRMATIVE DEFENSE**

30. If the Court ultimately enters a turnover order directing DBTCA, as garnishee, to transfer the funds in the DBTCA Blocked Accounts to Plaintiffs, then that order should contain standard provisions that protect DBTCA from the risk of exposure to double or multiple liability in the event the order is ever challenged by other parties.

31. Those standard provisions are fourfold and consist of (i) a release and discharge of DBTCA upon its transfer of the funds in the DBTCA Blocked Accounts, (ii) a bar on future litigation involving the DBTCA Blocked Accounts, (iii) the vacating of the Writ and any other restraints on the DBTCA Blocked Accounts, and (iv) a deferral of DBTCA's transfer of the blocked funds until after the turnover order has become final and no longer subject to appeal.

**SIXTH AFFIRMATIVE DEFENSE**

32. DBTCA objects to the garnishment or execution of the property in the DBTCA Blocked Accounts to the extent any potential adverse claimant has an ownership or other beneficial interest in the blocked property which may be superior to the rights of the Plaintiffs and is not given proper notice of these proceedings and an opportunity to be heard before the Court enters a judgment that may terminate their rights in the DBTCA Blocked Accounts. DBTCA cannot definitively determine at this time what potential adverse claimants have such an

interest, and therefore does not name them as third-party defendants at this time. Notice of these garnishment proceedings and the right to dissolve the Writ must be given to any relevant potential adverse claimant in accordance with the Federal Rules of Civil Procedure, the Hague Convention, and any other applicable rules governing service, which may include the entities listed in ¶ 17, and any of the Judgment Debtors Plaintiff is alleging has an interest in the funds given that property rights might differ depending on whether New York or Florida law applies.

33. DBTCA in all events reserves the right to amend its Answer and, if and when appropriate, to bring a third-party complaint in interpleader against any persons or entities found to have a potential claim to the DBTCA Blocked Accounts.

**SEVENTH AFFIRMATIVE DEFENSE**

34. DBTCA does not know of assets held by non-U.S. entities outside of the United States, but such assets would not be subject to garnishment under the Writ and would be outside the extraterritorial jurisdiction of the Court. Enforcement of the Writ as to accounts outside the United States and as to entities not named in the Writ would contravene principles of international comity and would offend the due process rights of entities that have not been served with process.

***

WHEREFORE, DBTCA, having answered the Writ, respectfully requests that the Court:

(i) Decide whether the DBTCA Blocked Accounts are subject to the Writ of Garnishment and subject to execution under TRIA § 201(a);

(ii) Determine that service of this Answer on the Plaintiffs constitutes good and sufficient service under any applicable provision of law;

(iii) Determine that the Court has subject matter jurisdiction and *in rem* jurisdiction over the DBTCA Blocked Accounts to the extent necessary to determine the parties' respective rights with respect to the DBTCA Blocked Accounts;

(iv) Determine (1) whether Plaintiffs have met their obligation under that Fla. Stat. § 77.055 to provide the entities named in ¶ 17, and any of the Judgment Debtors with a potential interest in the funds with notice of this proceeding and a copy of this Answer, the Writ, and the motion papers on which the Writ was issued, and (2) whether those entities have received actual notice of this proceeding and an opportunity to assert a claim to the DBTCA Blocked Accounts or otherwise respond to the Writ;

(v) Release and discharge DBTCA from any and all liability under the Writ and to Plaintiffs and all other persons and entities with respect to the funds in the DBTCA Blocked Accounts to the extent those funds are ordered to be turned over to the Plaintiffs or to any other person or entity;

(vi) Permanently restrain and enjoin Plaintiffs, and all other persons and entities, from instituting or prosecuting any proceeding, in any jurisdiction, as to any of the funds in the DBTCA Blocked Accounts that DBTCA is ordered to turn over to any party;

(vii) Defer DBTCA's obligation to transfer any funds from the DBTCA Blocked Accounts, pursuant to a turnover order, until after any such order is final and no longer subject to appeal;

(viii) Award DBTCA its costs and attorney's fees subject to Fla. Stat. § 77.28;

(ix) Direct Plaintiffs to pay the $100 statutory garnishment fee to Clifford Chance US LLP; and

(x) grant such other and further relief as the Court deems just and proper.

Dated: October 7, 2026

Respectfully submitted,

*/s/ Brian P. Miller*
Brian P. Miller
Florida Bar No. 0980633
**KING & SPALDING LLP**
200 S. Biscayne Blvd., Suite 4700
Miami, FL 33131
Telephone: (305) 462-6000
Facsimile: (305) 462-6100
bmiller@kslaw.com

*Counsel for Deutsche Bank Trust Company Americas*

Peter J. Isajiw (*admitted pro hac vice*)
New York Bar No. 4151239
**CLIFFORD CHANCE US LLP**
Two Manhattan West 375 9th Avenue
New York, NY 10001
(212) 878-3253
peter.isajiw@cliffordchance.com

*Counsel for Deutsche Bank Trust Company Americas*