**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 1:21-cv-20706-GAYLES/TORRES**

MEUDY ALBÁN OSIO in her personal capacity
And in her capacity as the personal representative
of the Estate of FERNANDO ALBERTO ALBÁN,
FERNANDO ALBÁN OSIO, and MARIA
FERNANDA ALBÁN OSIO,

Plaintiffs / Judgment Creditors,

v.

NICOLAS MADURO MOROS,
FUERZAS ARMADA REVOLUCIONARIAS
DE COLUMBIA ("FARC"); THE CARTEL OF
THE SUNS A.K.A. CARTEL DE LOS SOLES;
VLADIMIR PADRINO LOPEZ; MAIKEL
JOSE MORENO PEREZ; NESTOR LUIS
REVEROL TORRES; and TAREK WILLIAM
SAAB,

Defendants / Judgment Debtors.
_______________________________/

**JUDGMENT CREDITORS' REPLY TO ANSWER AND AFFIRMATIVE DEFENSES OF GARNISHEE CITIBANK, N.A. TO WRIT OF GARNISHMENT REGARDING CHINA NATIONAL ELECTRONICS IMPORT & EXPORT CORPORATION (ECF NO. 1007)**

Pursuant to Fla. Stat. § 77.061, the Albán Osio Judgment Creditors ("Judgment Creditors") reply to the Answer and Affirmative Defenses (ECF No. 1007) (the "Answer") of Garnishee Citibank, N.A. ("Citi") to the Writ of Garnishment regarding China National Electronics Import & Export Corporation ("CEIEC") (ECF No. 975) (the "Writ"), served September 2, 2026. Judgment Creditors are not satisfied with the Answer, deny its allegations that CEIEC may lack a property interest in the blocked funds, and deny each affirmative defense.

Citi's Answer establishes the dispositive fact. Citi "has identified $6,767.55 in blocked funds in United States accounts for which CEIEC was the intended beneficiary," consisting of three transactions of $235.32, $652.23, and $5,880.00. ECF No. 1007 ¶ 1. Citi identifies five persons and entities as having or appearing to have an ownership interest in those funds—PayPal

Pte. Ltd.; Keysight Technologies Singapore (Sales) Pte. Ltd.; Ping An Bank Co., Ltd.; Bank of China; and Huang Yinxi—and asks to be discharged and awarded its fees. *Id.* ¶¶ 2–4.

Citi then asserts nine affirmative defenses. They are the same nine defenses, in substantially the same language, that Citi asserted in its Answers concerning the Sarria Diaz funds (ECF No. 880) and the Banco de Venezuela funds (ECF No. 912), to which Judgment Creditors replied at ECF Nos. 905 and 926. They assert, on behalf of CEIEC and the five persons and entities Citi identifies, defenses that a garnishee has no standing to raise. And they do not account for the order issuing the Writ, in which this Court found that Judgment Creditors "made a prima facie showing that CEIEC is an agency or instrumentality of the Judgment Debtor." ECF No. 974 at 1–2. The affirmative defenses should be overruled.

**ARGUMENT**

**I. Citi's Affirmative Defenses Exceed the Ministerial Role of a Garnishee.**

Under Federal Rule of Civil Procedure 69(a)(1), Florida law governs the garnishment process, and TRIA governs whether blocked property is subject to execution. ECF No. 974 at 3. Florida assigns a garnishee a narrow, ministerial role: to state whether it is indebted to the defendant or holds the defendant's property, Fla. Stat. § 77.04, and to state the names and addresses, if known, of "any other persons having or appearing to have an ownership interest in the involved property," *id.* § 77.06(2). The right to move to dissolve the writ belongs to "[t]he defendant and any other person having an ownership interest in the property, as disclosed by the garnishee's answer," *id.* § 77.07(2), and a third person who claims the garnished property may assert that claim, *id.* § 77.16. Neither right belongs to the garnishee.

Florida garnishment proceedings "are statutory in nature and require strict adherence to the provisions of the statute." *Zivitz v. Zivitz*, 16 So. 3d 841, 847 (Fla. 2d DCA 2009); *see Regions Bank v. Hyman*, 91 F. Supp. 3d 1234, 1241 (M.D. Fla. 2015). "The statutory right to move to dissolve the writ is granted only to the defendant and any other person having an ownership interest in the property, as disclosed by the garnishee's answer." *Navon, Kopelman & O'Donnell, P.A. v. Synnex Info. Techs., Inc.*, 720 So. 2d 1167, 1168 (Fla. 4th DCA 1998) (emphasis omitted). Citi has discharged its statutory function by disclosing what it holds and whom it believes to be interested. Its demands for particular forms of service, an evidentiary hearing, Rule 19 joinder, and sovereign-immunity, treaty, and property-interest determinations on behalf of CEIEC, PayPal Pte. Ltd., Keysight Technologies Singapore (Sales) Pte. Ltd., Ping An Bank Co., Ltd., Bank of China, and

Huang Yinxi go beyond that function. Each of those parties may assert its own interest under Chapter 77. Citi may not assert it for them.

## II. Fla. Stat. § 772.13(6) Governs, and Citi's Own Answer Identifies CEIEC as the Intended Beneficiary of the Blocked Funds (Ninth and Eighth Affirmative Defenses).

### A. Citi's Article 4A authorities do not govern this Florida proceeding.

Citi's Ninth Affirmative Defense contends that a blocked wire held by an intermediary bank "is subject to execution only if an electronic funds transfer or wire transfer was made directly to the bank," citing "§ 674.502 Fla. Stat." ECF No. 1007 at 5. Section 674.502 is in Chapter 674, Florida's enactment of U.C.C. Article 4 ("Bank Deposits and Collections"). Captioned "[p]resentment of 'on arrival' drafts," it addresses when a collecting bank must present a draft that calls for presentment on the arrival of goods. It does not address funds transfers or creditor process. Florida's enactment of U.C.C. Article 4A is Chapter 670 ("Funds Transfers"), and its provision on "[c]reditor process served on receiving bank" is § 670.502. If that is the provision Citi intended, it is the very provision the Florida Legislature has displaced for terrorism judgments, as shown below. The remaining authorities Citi cites—*Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1002 (2d Cir. 2014), and *Hausler v. JPMorgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014)—applied *New York* law to wires blocked at a bank to which no terrorist party or instrumentality had transmitted the funds directly. Neither binds this Court in a Florida execution proceeding under Rule 69(a). And the D.C. Circuit has declined to apply Article 4A to OFAC-blocked transfers under TRIA § 201, holding that, "[a]s applied in this case, the objectives of U.C.C. § 4A-402 and OFAC's blocking are incompatible." *Estate of Levin v. Wells Fargo Bank, N.A.*, 45 F.4th 416, 422 (D.C. Cir. 2022).

### B. Section 772.13(6)(a)5 overrides the intermediary-bank rule and deems the funds CEIEC's property.

The Florida Legislature has displaced the intermediary-bank rule for terrorism judgments. Section 772.13(6)(a)5, enacted by ch. 2025-74, Laws of Florida (effective May 22, 2025), provides:

> Notwithstanding s. 670.502(4), when an electronic funds transfer is not completed within 5 banking days and is canceled pursuant to s. 670.211(4) because a United States intermediary financial institution has blocked the transaction in compliance with a United

> States sanctions program, and a terrorist party or any agency or instrumentality thereof was either the originator or the intended beneficiary, then the blocked funds shall be deemed owned by the terrorist party or its agency or instrumentality and shall be subject to execution and garnishment.

Section 670.502(4) is Florida's counterpart to U.C.C. § 4A-502(d); both provide that creditor process with respect to a payment pursuant to a funds transfer "may be served only on the beneficiary's bank." The Legislature overrode § 670.502(4) by name. The amendment applies to proceedings "served, pending, or filed before, on, or after July 1, 2025." Fla. Stat. § 772.13(6)(b). Citi does not contend otherwise; its Ninth Affirmative Defense is expressly conditioned on the premise that "laws other than § 772.13 Fla. Stat. are applicable." ECF No. 1007 at 5. They are not. The Writ issued to enforce a judgment entered on, among other claims, Judgment Creditors' claims under the Florida Anti-Terrorism Act, § 772.13 itself. *See* ECF No. 56 at 17–18, *adopted*, ECF No. 58; ECF No. 89 § III.C.1, *adopted*, ECF No. 90.

Citi's own Answer satisfies the statute's condition. Citi describes itself as "an intermediary bank," ECF No. 1007 at 5, and identifies the funds it holds as "blocked funds in United States accounts for which CEIEC was the intended beneficiary," *id.* ¶ 1. Citi's closing objection—that relief "may be barred if CEIEC is neither the originator nor the intended beneficiary of the transaction pursuant to § 772.13 Fla. Stat.," *id.* at 5—therefore describes no transaction Citi has disclosed. To the extent the blocked funds derive from funds transfers, as the Ninth Affirmative Defense supposes, § 772.13(6)(a)5 deems them owned by CEIEC and "subject to execution and garnishment." To the extent they do not, Article 4A has no application at all, and the funds are blocked property in which CEIEC, as their intended recipient, holds an interest. Either way, Citi's statement that it "had no accounts belonging to" CEIEC, *id.* ¶ 1, is beside the point. The Writ reaches blocked property in which CEIEC has an interest, not only accounts titled in its name, and Citi has identified these funds in response to it.

### C. The extraterritoriality, foreign-privacy, and comity objections are inapplicable.

Citi's Eighth Affirmative Defense invokes the GDPR and other foreign privacy statutes, international comity, the due-process rights of "entities that have not been served with process," and the separate-entity rule, "[t]o the extent that any blocked property is held outside the territorial limits of the United States." ECF No. 1007 at 4–5. Citi identifies no such property. The funds it

holds are "blocked funds in United States accounts." *Id.* ¶ 1. In any event, Fla. Stat. § 772.13(6)(a)3 provides that writs of garnishment "apply to intangible assets wherever located, without territorial limitation"; that "[t]he situs of any intangible assets held or maintained by or in the possession, custody, or control of a person or entity so served shall be deemed to be in this state"; and that service of the writ "shall provide the court with in rem jurisdiction over any intangible assets regardless of the location of the assets." Citi was served with the Writ and has answered it. No foreign privacy statute bars a United States court from ordering execution upon blocked assets in the United States. And Citi's separate-entity objection is directed only to property "held by non-U.S. entities that are not referenced in this Answer," *id.* at 5—property that is not at issue. Judgment Creditors have served the persons and entities Citi does identify, at the addresses Citi discloses, with the notice Chapter 77 requires, as discussed in Part IV.

## III. The FSIA Does Not Bar Execution, and TRIA Overrides It in Any Event (Fifth Affirmative Defense).

Citi's Fifth Affirmative Defense asserts that, "[t]o the extent applicable," any execution must comply with the FSIA, including by showing that "these proceedings, and the proceedings resulting in the issuance of the Writ, fall within one of the established exceptions" to FSIA immunity. ECF No. 1007 at 4. The FSIA is not applicable. CEIEC is "a wholly-owned subsidiary of China Electronics Corporation." ECF No. 974 at 6. To be an "agency or instrumentality of a foreign state," an entity must be one "which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." 28 U.S.C. § 1603(b)(2). "[O]nly direct ownership of a majority of shares by the foreign state satisfies the statutory requirement." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). CEIEC's shares are owned by its corporate parent, not directly by a foreign state, and Citi pleads no facts suggesting that CEIEC is an organ of a foreign state.

Even if CEIEC were an instrumentality of a foreign state, it could not invoke FSIA immunity against this Writ. TRIA § 201(a) makes the blocked assets of a terrorist party, "including the blocked assets of any agency or instrumentality of that terrorist party," subject to execution "[n]otwithstanding any other provision of law." That clause displaces FSIA immunity from attachment and execution. *See Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49–50 (2d Cir. 2010). This Court has so held in these proceedings, in addressing a challenge by Petróleos de Venezuela, S.A.: TRIA, not the FSIA, confers subject-matter jurisdiction over Judgment

Creditors' post-judgment proceedings. ECF No. 401 § II.A (R. & R.), *adopted in relevant part*, ECF No. 583 at 3. And Citi, a garnishee, has no standing to assert an immunity that CEIEC itself has not invoked.

## IV. Chapter 77 Governs Notice, and the Disclosed Third Parties Are Not Indispensable (First and Fourth Affirmative Defenses).

Citi demands that "CEIEC and any interested third parties" receive notice "consistent with the Federal Rules of Civil Procedure, the Hague Service Convention, InterAmerican Convention, or any other applicable treaty or law regarding notice and service of process," and that an evidentiary hearing be convened. ECF No. 1007 at 2–3. Rule 4 governs service of a summons in an action. It does not govern notice to persons with a potential interest in garnished property, which Chapter 77 addresses directly. Judgment Creditors provided the requisite notice to CEIEC by mail, at its Caracas and Beijing addresses, with the Writ and its incorporated notice to defendant and with the ex parte motion for the Writ, as Fla. Stat. § 77.041 requires. ECF No. 981. Judgment Creditors then served by mail a copy of Citi's Answer, the Writ, and the notice required by Fla. Stat. § 77.055 on CEIEC at the same addresses and on PayPal Pte. Ltd., Keysight Technologies Singapore (Sales) Pte. Ltd., Ping An Bank Co., Ltd., and Bank of China at the addresses Citi discloses, and filed a certificate of that service. ECF No. 1008; *see* ECF No. 1007 ¶ 2. Citi lists Huang Yinxi's address as "unknown." ECF No. 1007 ¶ 2(e). If Citi identifies an address, Judgment Creditors will serve the same papers there. This Court has previously held that notice given in this manner satisfies § 77.055. *See* ECF No. 121 at 3–4 (R. & R.), *adopted*, ECF No. 125. The Hague Service Convention applies only where a judicial document must be transmitted abroad for service; where service is valid and complete domestically, "our inquiry ends and the Convention has no further implications." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988). Upon notice, a person with a disclosed ownership interest may move to dissolve the Writ, Fla. Stat. § 77.07(2), and a third person claiming the property may assert that claim, *id.* § 77.16. Parties whose assets are subject to TRIA execution "are entitled to notice and an opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets," *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 726 (11th Cir. 2014), and Chapter 77 supplies both.

For the same reason, PayPal Pte. Ltd., Keysight Technologies Singapore (Sales) Pte. Ltd., Ping An Bank Co., Ltd., Bank of China, and Huang Yinxi are not required parties under Rule 19.

Chapter 77 itself supplies the procedure by which persons disclosed in a garnishee's answer protect their interests: notice under § 77.055, a motion to dissolve under § 77.07(2), and a claim to the property under § 77.16. Citi itself recognizes that what those persons are owed is notice and an opportunity to be heard. ECF No. 1007 at 4 ("These third parties have the right to receive notice of these proceedings and an opportunity to be heard . . . ."). Each of them whose address Citi disclosed has been served, and each may appear. To the extent an evidentiary hearing is warranted on any disputed question, it will occur at the turnover stage; the need for one is not a defense to the Writ.

## V. This Court Has Already Found a Prima Facie Showing That CEIEC Is an Agency or Instrumentality of the Judgment Debtors (Second and Third Affirmative Defenses).

Citi asserts that, "[t]o the best of Citi's knowledge, CEIEC has not been finally determined to be an agency or instrumentality of the Judgment Debtors," and that no determination has been made that CEIEC possesses "the requisite interest" in the blocked property under 31 C.F.R. Part 591. ECF No. 1007 at 3. These are merits questions for the turnover motion, not defenses available to a garnishee. Citi is correct that the determination is not yet final, but that is how TRIA execution proceeds: the writ issues on a prima facie showing, and parties whose assets are subject to execution then receive "notice and an opportunity to be heard in order to rebut the allegations." *Stansell*, 771 F.3d at 726. The first step has been taken. On Judgment Creditors' motion, this Court reviewed each TRIA element and concluded that Judgment Creditors had "made a prima facie showing that CEIEC is an agency or instrumentality of the Judgment Debtor." ECF No. 974 at 1–2; *see id.* at 3–8.

First, the property is blocked. On November 30, 2020, OFAC designated CEIEC under Executive Order 13692, as amended, "for supporting the illegitimate Maduro regime's efforts to undermine democracy in Venezuela, including its efforts to restrict internet service and conduct digital surveillance and cyber operations against political opponents." U.S. Dep't of the Treasury, Press Release SM1194 (Nov. 30, 2020). Whether an asset is blocked "can be definitively established by the fact that OFAC has taken action against the alleged agency or instrumentality under TWEA or the IEEPA." *Stansell*, 771 F.3d at 726. Executive Order 13692 was issued under

IEEPA, and CEIEC's property and interests in property are blocked. This Court so found. ECF No. 974 at 5–6. Citi's Answer identifies the funds it holds as "blocked funds." ECF No. 1007 ¶ 1.[1]

Second, the agency-or-instrumentality question is for this Court, not OFAC. OFAC designates persons under sanctions programs; whether a person is an agency or instrumentality of a terrorist party is a separate determination for the court under TRIA § 201(a). *See Stansell*, 771 F.3d at 730–32. This Court has applied the governing standard, under which a third party that provides material support—"financial (e.g. money laundering), technological, or the provision of goods or services"—to a terrorist party "at any point in time," directly or indirectly, is its agency or instrumentality. ECF No. 974 at 6 (quoting *Marron v. Moros*, 2023 WL 6356969, at *13 (S.D. Fla. Sept. 29, 2023), and citing *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1350–51 (11th Cir. 2022)). Nicolás Maduro Moros is a Judgment Debtor, ECF No. 91; OFAC designated CEIEC for supporting his regime's efforts to "conduct digital surveillance and cyber operations against political opponents," ECF No. 974 at 7 (quoting Press Release SM1194); and this Court found that the kidnapping and murder of Mr. Albán, "a politically active and outspoken critic of the Maduro regime," "was designed to deter other opposition members from speaking out against the Venezuelan government." ECF No. 56 at 4, 18, *adopted*, ECF No. 58. Judgment Creditors will complete the showing on their turnover motion. Section 2333(e), which Citi cites, ECF No. 1007 at 3, 5, imposes no contrary requirement. It provides that, for purposes of TRIA § 201, in an action in which a national of the United States has obtained a judgment against a terrorist party under § 2333, the term "blocked asset" includes assets of that party "seized or frozen" under the Kingpin Act. 18 U.S.C. § 2333(e). It adds to the assets subject to TRIA; it does not restrict them.

Third, the requisite interest exists. Citi identifies CEIEC as the intended beneficiary of the blocked funds. ECF No. 1007 ¶ 1. To the extent those funds derive from funds transfers, § 772.13(6)(a)5 deems them owned by CEIEC. More broadly, under the Venezuela Sanctions Regulations an "interest" in property "means an interest of any nature whatsoever, direct or indirect," 31 C.F.R. § 591.305, and the intended beneficiary of a blocked payment holds such an interest.

[1] This Court recorded that CEIEC "remains on the SDN List to date." ECF No. 974 at 7.

## VI. 18 U.S.C. § 2337 and the Vienna Conventions Are Inapplicable (Sixth and Seventh Affirmative Defenses).

Citi's Sixth Affirmative Defense asserts that any execution "must comply with the ATA including, but not limited to, 28 U.S.C. § 2337." ECF No. 1007 at 4. Citi's prayer for relief cites "the ATA, 18 U.S.C. § 2337," *id.* at 6 ¶ b, so the reference to Title 28 appears to be a typographical error, and Judgment Creditors respond to 18 U.S.C. § 2337. That section provides that "[n]o action shall be maintained under section 2333 of this title against" the United States or its agencies, officers, or employees, or against "a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof acting within his or her official capacity or under color of legal authority." 18 U.S.C. § 2337. It does not bar execution here, for three reasons.

*First*, § 2337 limits who may be named as a defendant in an "action . . . under section 2333." This action has proceeded to final judgment against the Judgment Debtors. ECF Nos. 73, 91. The Writ is a postjudgment proceeding in aid of execution under TRIA § 201(a), Federal Rule of Civil Procedure 69(a), and Chapter 77. It is not an action maintained against CEIEC under section 2333.

*Second*, CEIEC is not "an agency of a foreign state." Chapter 113B of Title 18 does not define that term, *see* 18 U.S.C. § 2331, and Citi offers no reason to read it more broadly than the FSIA's analogous definition of an "agency or instrumentality of a foreign state," 28 U.S.C. § 1603(b), under which CEIEC does not qualify for the reasons given in Part III. Citi pleads no facts about CEIEC's ownership or governmental status at all.

*Third*, to the extent § 2337 could be read to limit execution upon blocked assets, TRIA § 201(a) subjects the blocked assets of a terrorist party's agencies and instrumentalities to execution "[n]otwithstanding any other provision of law."

Citi's Seventh Affirmative Defense objects to execution until a court determines that the blocked property is not subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations, or is property as to which no Presidential waiver under TRIA § 201(b) can be made. ECF No. 1007 at 4. That determination can be made on the face of Citi's Answer. The funds are "blocked funds in United States accounts for which CEIEC was the intended beneficiary," *id.* ¶ 1, and Citi does not suggest that they are diplomatic or consular property. A waiver under § 201(b), in turn, may issue only "upon determining on an asset-by-asset basis that a waiver is necessary in the national security interest," and only as to "property subject

to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations." TRIA § 201(b)(1). Because the funds are not such property, no waiver can be made as to them, and Citi identifies none.

## VII. The Judgment Is for Compensatory Damages, and Citi's Requests for Discharge and Fees Should Be Calibrated to Its Statutory Role.

Citi asks the Court to determine that the judgment is "solely for compensatory, not punitive, damages." ECF No. 1007 at 6 ¶ e. It is. Each item of damages in the Final Default Judgment is designated compensatory, and the Court awarded "[z]ero dollars ($0.00) in punitive damages." ECF No. 91 ¶¶ 1–6. The judgment "remains unsatisfied." ECF No. 974 at 2. Treble damages under the ATA are compensatory, not punitive, for purposes of TRIA § 201(a). *See Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, Nos. 16 Misc. 405 (LGS) (SN), 18 Misc. 545 (LGS) (SN), 2022 WL 17830551 (S.D.N.Y. Dec. 21, 2022).

Judgment Creditors do not oppose the entry, at the turnover stage, of standard provisions releasing and discharging Citi from liability upon its turnover of the blocked funds pursuant to a Court order, nor do they dispute that Fla. Stat. § 77.28 entitles a garnishee to the statutory $100 payment. But § 77.28 compensates a garnishee for "obtaining representation in response to the writ." It does not compensate a garnishee for asserting, on behalf of third parties who have their own remedies under Chapter 77, affirmative defenses.

## CONCLUSION

By Citi's own account, it holds blocked funds of which CEIEC—an entity this Court has already found, on a prima facie basis, to be an agency or instrumentality of the Judgment Debtors—was the intended beneficiary. Florida law, not New York's Article 4A, governs the reach of the Writ, and under Fla. Stat. § 772.13(6)(a)5 the funds are deemed CEIEC's property. Chapter 77, not Rule 4, governs notice. Judgment Creditors respectfully request that the Court overrule Citi's affirmative defenses, decline to dissolve the Writ, and permit these proceedings to advance to a motion for a Final TRIA Turnover Judgment, together with such other relief as the Court deems just and proper.

Respectfully submitted on October 11, 2026.

*/s/ Jaime D. Guttman*
Fla. Bar No. 44076
*jaime@scale.law*
Scale Law Partners, LLC
777 Brickell Avenue, Suite 500
Miami, FL 33131
(786) 273-9033 (Main)

*Counsel for Plaintiffs / Judgment Creditors*

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing document on October 11, 2026, through CM/ECF, which automatically and electronically delivered notice of filing to counsel of record for all parties that have appeared.

*/s/ Jaime D. Guttman*